# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PIERCE MANUFACTURING INC. and
OSHKOSH CORPORATION,

     Plaintiffs,

v.                                                    Case No.:  8:18-cv-617-JSM-TGW

E-ONE, INC. and REV GROUP, INC.,

     Defendants.

_____

## PLAINTIFFS PIERCE MANUFACTURING INC. AND OSHKOSH CORPORATION'S MOTION TO STRIKE THE SEPTEMBER 25, 2019 "ERRATA" OF DEFENDANTS' EXPERT WITNESS DR. JOSEPH RAKOW

# TABLE OF CONTENTS

FACTUAL BACKGROUND ............................................................................ 2

I.    DR. RAKOW'S UNTIMELY NEW INVALIDITY OPINIONS AND
      PURPORTED CALCULATIONS ........................................................ 2

      A.    Dr. Rakow's Invalidity Expert Report Was Due July 26, 2019 ................ 2

      B.    Plaintiffs and Plaintiffs' Expert Timely Disclosed Numerous Criticisms
            of Dr. Rakow's Report ............................................................... 5

      C.    Dr. Rakow Submitted a "Corrected Opening Expert Report" .................... 7

      D.    Defendants' Expert Alan Saulsbury Confirmed That Calculations Were
            Required for Dr. Rakow's Analysis ................................................ 7

      E.    Dr. Rakow Submitted an Untimely "Errata" That Contained New,
            Previously Undisclosed Opinions and Analysis ......................... 9

ARGUMENT .......................................................................................... 11

I.    THE ERRATA CONTAINS UNTIMELY NEW OPINIONS, NOT
      CORRECTIONS OF TYPOGRAPHICAL ERRORS .......................... 12

      A.    The "Errata" Was Untimely And Served After the Deadline Set by the
            Court ...................................................................................... 12

      B.    The "Errata" Is Not Even a Proper Supplemental Report, As It Contains
            New Opinions ........................................................................ 13

II.   DEFENDANTS' UNTIMELY DISCLOSURE IS NOT SUBSTANTIALLY
      JUSTIFIED OR HARMLESS ........................................................... 16

      A.    The Late-Disclosed "Errata" is Not Substantially Justified .................... 16

      B.    The Belated "Errata" is Not Harmless ............................................. 17

III.  THE COURT SHOULD STRIKE THE "ERRATA" .......................... 19

CONCLUSION ...................................................................................... 23

LOCAL RULE 3.01(G) CERTIFICATION .................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

C<span style="font-variant:small-caps">ASES</span>

*Akeva L.L.C. v. Mizuno Corp.*,
212 F.R.D. 306 (M.D.N.C. 2002) .................................................................................14

*Cochran v. Brinkmann Corp.*,
2009 U.S. Dist. LEXIS 114895 (N.D. Ga. Dec. 9, 2009),
*aff'd* 381 F. App'x 968 (11th Cir. 2010)......................................................13, 14, 15, 16

*Companhia Energetica Potiguar v. Caterpillar Inc.*,
No. 14-cv-24277, 2016 U.S. Dist. LEXIS 72102
(S.D. Fla. June 2, 2016) .............................................................................................13

*Goins v. Carnival Corp.*,
No. 16-cv-21368, 2017 U.S. Dist. LEXIS 219151
(S.D. Fla. Mar. 2, 2017) ............................................................................................19

*Guevara v. NCL (Bahamas) Ltd.*,
920 F.3d 710 (11th Cir. 2019) ..................................................................................11

*Harris v. Fisher-Price, Inc.*,
No. 13-cv-00076, 2015 U.S. Dist. LEXIS 140952
(N.D. Ala. Oct. 16, 2015)...........................................................................................13

*Micro Chem., Inc. v. Lextron, Inc.*,
317 F.3d 1387 (Fed. Cir. 2003)..................................................................................15

*Mitchell v. Ford Motor Co.*,
318 F. App'x 821 (11th Cir. 2009) ............................................................................12

*Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*,
845 F. Supp. 2d 1241 (M.D. Fla. 2012)............................................................ *passim*

*Monsanto Co. v. Syngenta Seeds, Inc.*,
503 F.3d 1352 (Fed. Cir. 2007).....................................................................................3

*Reid v. Lockheed Martin Aero. Co.*,
205 F.R.D. 655 (N.D. Ga. 2001).................................................................................14

*Romero v. Drummond Co.*,
552 F.3d 1303 (11th Cir. 2008) ...........................................................................11, 13

*Sabal Trail Transmission, LLC v. 13.386 Acres in Lake Cty. Fla.*,
No. 5:16-cv-147, 2018 U.S. Dist. LEXIS 208633
(M.D. Fla. Dec. 11, 2018) ..............................................................................24

*Salvani v. Corizon Health, Inc.*,
No. 17-24567-Civ-SCOLA/TORRES, 2019 U.S. Dist. LEXIS 125729
(S.D. Fla. July 29, 2019) ................................................................................14

*Seascape Aquarium, Inc. v. Associated Diversified Servs., Inc.*,
No. 8:17-cv-2137, 2018 U.S. Dist. LEXIS 109041
(M.D. Fla. June 29, 2018) ...............................................................................21

*Sofillas v. Carnival Corp.*,
No. 14-23920-CIV-SCOLA/OTAZO-REYES,
2016 U.S. Dist. LEXIS 139448 (S.D. Fla. Aug. 23, 2016)....................................18, 23

*Tech Data Corp. v. AU Optronics Corp.*,
No. 8:11-cv-2454, 2015 U.S. Dist. LEXIS 193961
(M.D. Fla. Oct. 22, 2015)............................................................................15, 20, 21

*Whetstone Candy Co. v. Nestle USA, Inc.*,
No. 3:01-cv-415, 2003 WL 25686830 (M.D. Fla. June 2, 2003) ...............................14

**RULES**

Fed. R. Civ. P. 26 and 37 ...................................................................... *passim*

Fed. R. Civ. P. 37 .................................................................................. *passim*

L.R. 3.01(G)...............................................................................................25

Pursuant to Fed. R. Civ. P. 26 and 37 and the Court's Amended Case Management and Scheduling Order ("Amended Scheduling Order") (D.I. 160), Plaintiffs Pierce Manufacturing Inc. ("Pierce") and Oshkosh Corporation ("Oshkosh") (collectively, "Plaintiffs") respectfully move to strike the September 25, 2019 "errata" to the expert report of Dr. Joseph Rakow. Defendants E-One, Inc. ("E-One") and REV Group Inc. ("REV") (collectively, "Defendants") served this three-part "errata" at 9:09 pm on September 25, 2019—two months after the deadline for opening reports, one month after the deadline for rebuttal reports, and less than 12 hours before Dr. Rakow's deposition was set to begin. Defendants described these documents as "errata to Dr. Rakow's opening report, correcting certain typographical errors, and two calculation sheets relating to Dr. Rakow's opinions." But in actuality, the "errata" contained changed references to patents and claim numbers and it introduced new opinions and calculations that purportedly support Dr. Rakow's invalidity analysis.

Dr. Rakow admitted during his deposition that these documents consisted of brand-new opinions and calculations regarding Defendants' invalidity case that were not disclosed by the Court's July 26, 2019 deadline. Defendants were on notice of the deficiencies in their invalidity case for the past 11 months and nevertheless waited until all expert reports were submitted and every other expert was deposed to serve this "errata." Defendants' late disclosure of these new opinions and calculations is not justified and is prejudicial to Plaintiffs. Accordingly, Defendants' untimely disclosure should be stricken.

## FACTUAL BACKGROUND

I. **DR. RAKOW'S UNTIMELY NEW INVALIDITY OPINIONS AND PURPORTED CALCULATIONS**

A. **Dr. Rakow's Invalidity Expert Report Was Due July 26, 2019**

Plaintiffs allege that Defendants' Metro 100 Quint fire apparatus infringes claims 1-7, 11-17, and 20 of United States Patent No. 9,597,536 ("the 536 patent") and claims 1-7 and 11-17 of United States Patent No. 9,814,915 ("the 915 patent") (collectively, "the Patents-in-Suit").

Claims 1-7 and 11-17 of the 536 Patent claim, among other things, a quint configuration fire apparatus with a ladder that can extend 95 feet vertically and 90 feet horizontally that is configured to counterbalance a tip load of at least 750 pounds and that has a water tank configured to contain at least 500 gallons of water (Ex. 1 (536 Patent) at 14:20-15:19, 15:31-16:26). Thus, to establish invalidity of claims 1-7 and 11-17 of the 536 Patent, Defendants must prove by clear and convincing evidence that the prior art, alone or in combination, discloses all of the patented features, including a 500-gallon water tank.

In addition, claims 5 and 15 of each of the Patents-in-Suit are dependent claims, that depend from independent claims 1 and 11 respectively. Claims 1 and 11 each require that the ladder assembly be "configured to support a tip load of at least 750 pounds" and be able "to counterbalance a moment generated by the tip load with the ladder assembly extended to the horizontal reach of at least 90 feet" (Ex. 1 (536 Patent) at 14:43-50, 15:51-58; Ex. 2 (915 Patent) at 14:28-33, 15:34-40). The dependent claims further require that "the distal end of the ladder assembly is extensible to the horizontal reach of at least 90 feet when the ladder assembly is oriented in the sideward position" (Ex. 1 (536 Patent) at 15:5-10, 16:11-16; Ex. 2

(915 Patent) at 14:55-60, 16:3-8). To establish invalidity of claims 5 and 15 of each of the Patents-in-Suit, Defendants must prove by clear and convincing evidence that the prior art, alone or in combination, discloses a quint configuration fire apparatus that is configured to counterbalance the moment generated by a 750-pound tip load when the ladder is extended to at least 90 feet horizontally off the side of the truck.[1]

The Court's Amended Scheduling Order set a deadline for "Expert Reports on Issues Where the Party Bears the Burden of Proof" of July 26, 2019 (D.I. 43; D.I. 160). The Court also stated that "Rebuttal Expert Reports" were due on August 26, 2019 (*id.*).

As the party bearing the burden of proof on invalidity, on July 26, 2019, Defendants served the expert report of their technical expert, Dr. Rakow, regarding the purported invalidity of the Patents-in-Suit. In his 164-page report, Dr. Rakow opined that the Patents-in-Suit were anticipated or obvious in light of various prior art references, including a Rosenbauer Raptor apparatus sold to the Hinsdale Fire Department ("Hinsdale Rosenbauer").

Specifically, Dr. Rakow opined that the Hinsdale Rosenbauer, in combination with other references, renders obvious claims 1-7 and 11-17 of the 536 Patent (Ex. 3 (Rakow Corrected Rep.) at ¶¶ 85-143). While the challenged claims of the 536 Patent require that the apparatus have a 500-gallon water tank, the Hinsdale Rosenbauer only had a 300-gallon tank,

---

[1] To prove invalidity of a dependent claim, the challenger must also show invalidity of all elements of the independent claim from which the claim depends. *See Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1357 (Fed. Cir. 2007) ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers."). Claims 1 and 11, from which claims 5 and 15 depend, contain a 750-pound tip load requirement when the ladder is extended to a horizontal reach of 90 feet. Claims 5 and 15 require that the apparatus be able to support the 750-pound tip load when the ladder is extended to 90 feet horizontally off the side of the truck.

and modifying this tank to accommodate 500 gallons would add at least 1,668 pounds of weight to the truck (*id*. at ¶¶ 87; Ex. 4 (Kurfess Rebuttal Report) at ¶¶ 114-115). In his report though, Dr. Rakow never disclosed any opinions or calculations as to how the Hinsdale Rosenbauer would actually be modified to accommodate a larger tank or if its axles could support the additional weight (*id.* at ¶¶ 115-120). Nor did Dr. Rakow provide any opinions regarding how a designer would be able to make these modifications with any reasonable expectation of success (*id*. at ¶¶ 114, 121).

Instead, Dr. Rakow opined that a person having ordinary skill in the art ("PHOSITA") would know that larger tanks are desirable, that a PHOSITA would recognize that he or she would have to lighten other components on the truck, and that weight would have to be shifted on the truck (Ex. 3 (Rakow Corrected Rep.) at ¶¶ 87-98). He never identified what actual components would be lightened or by how much; he only asserted that they *could* be lightened (*id.*). Dr. Rakow also did not identify the weight capacity of the axles on the Hinsdale Rosenbauer or whether these axles could support the weight of the water tank and the modified components (*id.*).

Dr. Rakow also did not disclose any opinions or calculations that would establish that the ladder assembly on the Hinsdale Rosenbauer could counterbalance a tip load of 750 pounds when the ladder assembly was extended 90 feet horizontally off the side of the apparatus. Instead, his report focused only on his opinion that the ladder can be extended 90 feet horizontally off the side of the truck (*id*. at ¶¶ 107-111, 138-139, 248-249, 263-264). Dr. Rakow, however, never provided any opinion whatsoever that the Hinsdale Rosenbauer can counterbalance a 750-pound tip load in that orientation (*see id*.). Indeed, he admitted during

4

his deposition that he never measured how much weight could be supported in the sideward position (Ex. 11 (Rakow Depo. Tr.) at 108:15-22).

### B. Plaintiffs and Plaintiffs' Expert Timely Disclosed Numerous Criticisms of Dr. Rakow's Report

In accordance with the Amended Scheduling Order, Plaintiffs' technical expert, Dr. Thomas Kurfess, timely issued his rebuttal expert report on August 26, 2019, responding to the opinions contained in Dr. Rakow's report on invalidity (*see* Ex. 4 (Kurfess Rebuttal Report)). Dr. Kurfess opined that Dr. Rakow's invalidity theories were unsupported and conclusory. For example, Dr. Kurfess criticized Dr. Rakow's opinion that it would have been obvious to add a 500-gallon water tank to the Hinsdale Rosenbauer without doing any analysis or calculations to determine whether the axles of the Hinsdale Rosenbauer could support the additional weight required by the larger tank, or alternatively which components of the combined truck could be reduced in weight to offset the larger tank and by how much (*id.* at ¶¶ 113, 115-116, 120-121). Dr. Kurfess also criticized Dr. Rakow for failing to identify where on the apparatus the larger water tank could be placed (*id.* at ¶¶ 118-119).

Additionally, Dr. Kurfess pointed out that Dr. Rakow did not attempt to establish that the Hinsdale Rosenbauer could counterbalance a 750-pound tip load at 90 feet of horizontal reach when the ladder is oriented to extend off the side as required by claims 5 and 15 of each of the Patents-in-Suit. As noted above, Defendants never tested the apparatus in this configuration and Dr. Rakow did not perform any type of analysis or calculations to support his conclusion (*id.* at ¶¶ 124-128). Moreover, Dr. Kurfess pointed out numerous typographical, cross reference, and citation errors that called into question Dr. Rakow's opinion (*see, e.g.*, *id.* at ¶¶ 130, n.4, 210, 217-218).

Defendants then deposed Dr. Kurfess on September 15, 2019. Dr. Kurfess testified, consistent with his expert report, that Dr. Rakow failed to perform any calculations to establish that the Hinsdale Rosenbauer could support a 500-gallon water tank or counterbalance a 750-pound load applied to the end of the ladder when it was extended horizontally to 90 feet off the side of the apparatus (Ex. 12 (Kurfess Depo. Tr.) at 236:19-243:2 (testifying that while Dr. Rakow said it was possible to put a 500-gallon tank on the Hinsdale Rosenbauer truck, his report failed to explain how the weight on the truck would be reduced to accommodate the water tank's weight or perform any calculations to show it could actually be done); *id*. at 210:5-212:21 (testifying about Dr. Rakow's failure to perform calculations to determine if the components on the Hinsdale Rosenbauer could support a 750-pound load)).

These critiques are not new. Plaintiffs have been making similar objections to Defendants' conclusory analysis for nearly a year. On September 21, 2018, E-One served an interrogatory on Pierce regarding Pierce's contentions as to why the Patents-in-Suit were valid over the prior art identified by Defendants. Pierce responded to that interrogatory on October 22, 2018, and among other things, stated that "Defendants fail to provide meaningful reasons to combine the references and ignore the inherent difficulty with simply adding or subtracting various elements without analyzing what effect changing the configuration of the fire apparatus would have on the weight of the truck and whether or not the additional weight could be supported on a single rear axle or if the components could be configured in such a way as to counterbalance a moment generated by a tip load when the ladder is in a horizontal orientation, among many other issues" (Ex. 5 (Oct. 22, 2018 Interrogatory Resps.) at 5-6). This same language was then included in Pierce's supplemental interrogatory responses on May 31, 2019

and July 15, 2019 (Pivnick Decl. ¶ 8). Thus, Pierce put Defendants on notice at least as early as October 22, 2018 that it believed that Defendants must provide analysis and/or mathematical calculations to support these arguments.

### C.      Dr. Rakow Submitted a "Corrected Opening Expert Report"

Three days after Dr. Kurfess submitted his rebuttal report, on August 29, 2019, Defendants issued a "Corrected Opening Expert Report of Dr. Joseph Rakow" regarding invalidity. This "corrected" report fixed some erroneous cross-references and typographical errors but did not address the fundamental flaws in Dr. Rakow's expert report on invalidity or make any substantive changes to his opinions or calculations. Plaintiffs do not challenge this "corrected" report since it only fixed typographical and cross-reference errors and did not introduce any new opinions, analysis, or calculations.[2]

### D.      Defendants' Expert Alan Saulsbury Confirmed That Calculations Were Required for Dr. Rakow's Analysis

On September 13, 2019, Plaintiffs deposed another of Defendants' experts, Alan Saulsbury. Mr. Saulsbury is a former designer of fire apparatus and a purported expert on various fire apparatus. During his deposition, Mr. Saulsbury detailed the extensive calculations required to determine how much weight, and relatedly, the distribution of that weight, an apparatus could support when adding or subtracting components on a truck or when trying to counterbalance a load at maximum horizontal reach. According to Mr. Saulsbury, ████████ ████████████████████████████████████████████████████ ████████████████ (Ex. 6 (Saulsbury Depo. Tr.) at 149:14-15).

---

[2] References in this motion to Dr. Rakow's invalidity expert report are to his August 29, 2019 corrected expert report.

Specifically, Mr. Saulsbury testified that an aerial engineer would require information about the apparatus to determine whether it could support additional components. This includes, for example, the gross vehicle weight rating, gross axle weight rating, and weights and centers of gravity of major components including the aerial device, chassis, pump, water tank, body, hose, equipment load, and number of people in the cab (*id*. at 149:10-150:17, 155:2-12). To add weight to that apparatus (i.e., additional components such as a larger water tank), Mr. Saulsbury explained that an aerial engineer then would need to calculate the amount of weight that the added components applied on each axle, while staying within the prescribed weight limits for the axles individually and collectively, and also determine the center of gravity and the mass supplied by each of the changed components to see if the axles could support the added weight and whether the components would be properly positioned to counterbalance a tip load (*id*. at 181:19-182:18). Mr. Saulsbury confirmed that the same calculations would be involved if one wanted to modify the ladder to provide a longer reach (*id.* at 208:21-209:6).

While Mr. Saulsbury was clear that analyzing the weight added by new components (and relatedly, the distribution of that weight) required extensive calculations, he did not perform any such calculations to determine if Dr. Rakow's proposed modifications to the water tank could be accomplished or if the Hinsdale Rosenbauer ladder could support 750 pounds in a sideward position (*id*. at 155:15-17 (███████████████████████████████████ ███████████████████████████████████ )). As described above, Dr. Rakow did not include these calculations in any of his reports either. Instead, Dr. Rakow relied on Mr. Saulsbury's report—which, as noted, did not contain the calculations that Mr. Saulsbury

admitted would be absolutely necessary to perform (*see, e.g.*, Ex. 3 (Rakow Corrected Rep.) at ¶¶ 95-98 (relying on Mr. Saulsbury's report to opine that it would have been obvious to a person of skill in the art to modify the Hinsdale Rosenbauer apparatus to add a 500-gallon water tank)).

E. **Dr. Rakow Submitted an Untimely "Errata" That Contained New, Previously Undisclosed Opinions and Analysis**

Nearly two weeks after Mr. Saulsbury's and Dr. Kurfess's depositions—and at 9:09 pm on the night before Dr. Rakow's deposition was set to take place—Defendants sent an "errata" to Dr. Rakow's invalidity expert report consisting of three different documents (Ex. 7 (Sept. 25, 2019 Email from M. Yohannes)). Defendants described these documents as "errata to Dr. Rakow's opening report, correcting certain typographical errors, and two calculation sheets relating to Dr. Rakow's opinions" (*id.*).

These "errata" documents contained new opinions endeavoring to fill in the gaps in Dr. Rakow's analysis that were originally highlighted in Plaintiffs' October 22, 2018 discovery responses and were further exposed by Dr. Kurfess's rebuttal report and discussed during Dr. Kurfess's and Mr. Saulsbury's depositions. Notably, Defendants provided two new documents that purported to contain new opinions and calculations related to the Hinsdale Rosenbauer apparatus (Ex. 8 (New Water Tank Calculations) (providing calculations for adding a 500-gallon water tank to the Hinsdale Rosenbauer apparatus); Ex. 9 (New Ladder Calculations) (providing calculation of the tip load for the Hinsdale Rosenbauer apparatus when the ladder is off to the side)). The third document in the "errata" appears to be a replacement section for an entire argument on why claim 20 of the 915 Patent was allegedly anticipated by a prior art reference (Ex. 10 (Opening Report Errata)). In his report, Dr. Kurfess had criticized this section

of Dr. Rakow's report because at the time, it referred to different claims and different prior art references, thereby failing to establish clear and convincing evidence for these reasons alone (Ex. 4 (Kurfess Rebuttal Rep.) at ¶¶ 217-218).

On September 26, 2019, less than 12 hours after Defendants served Dr. Rakow's three-part "errata," Plaintiffs deposed Dr. Rakow. The last day of expert discovery was September 27, 2019. Because the "errata" was untimely, included new substantive opinions and calculations, and was served the night before the deposition, Plaintiffs could not and did not substantively question Dr. Rakow on the substance of his new opinions. Plaintiffs informed opposing counsel at Dr. Rakow's deposition that they objected to the untimely service and would move to strike the "errata" (Ex. 11 (Rakow Depo. Tr.) at 25:11-22, 377:3-2).

Moreover, during his deposition, Dr. Rakow confirmed that the errata contained new analysis and data that was not previously disclosed. For example, Dr. Rakow admitted that he never attempted to hang 750 pounds on the ladder when it was extended 90 feet off the side of the truck. (Ex. 11 (Rakow Depo. Tr.) at 108:15-22). He further admitted that the calculations included in his "errata" were based upon information that he gathered during an April 30, 2019 inspection of the Hinsdale Rosenbauer and documents that were produced during discovery in the case, but that he did not include any of the calculations in his July 26, 2019 report, or his August 29, 2019 corrected report (*id.* at 108:15-22, 109:20-110:20, 373:18-374:14). Through Dr. Rakow's deposition testimony, it became apparent that—after Dr. Kurfess's and Mr. Saulsbury's depositions and Dr. Kurfess's rebuttal report—Defendants realized Dr. Rakow's report was missing fundamental opinions and calculations that were not obvious to a person skilled in the art.

## ARGUMENT

Under Rule 26(e), a party may correct or supplement expert disclosures "in a *timely* manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," or as ordered by the court. Fed. R. Civ. P. 26(e)(1)(A)-(B) (emphasis added); *see also Guevara v. NCL (Bahamas) Ltd*., 920 F.3d 710, 718 (11th Cir. 2019). Here, the Court ordered that Defendants' invalidity disclosures be made no later than July 26, 2019 (D.I. 43; D.I. 160). Dr. Rakow's September 25, 2019 "errata" is, therefore, not "timely." *See Romero v. Drummond Co*., 552 F.3d 1303, 1324 (11th Cir. 2008) (holding that waiting to make expert disclosures until the Court's deadline in the Scheduling Order means "that there might be no opportunity to supplement the disclosure").

Moreover, the belated "errata" does not merely correct misleading information as contemplated under Rule 26(e). Rather, it admittedly contains new opinions, analysis, and calculations that Dr. Rakow could have performed and disclosed prior to his July 26, 2019 report yet chose not to include in that report (Ex. 11 (Rakow Depo. Tr.) at 109:20-110:20 (admitting that his calculations were based upon information he collected in April 2019)). In short, the "errata" contravenes Rule 26(e).

A party who violates Rule 26(e) may be subject to sanctions under Rule 37(c)(1), which provides that "the party is not allowed to use that information. . .to supply evidence on a motion, at a hearing or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party," in this case, Defendants. *Mitchell v.*

*Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (citation omitted). As set forth below, Defendants' failure to timely disclose is neither substantially justified nor harmless. The only just remedy is for the Court to strike the "errata" and prevent Defendants from relying upon any of the information contained therein in any motion, during any hearing, or at trial.

## I.   THE ERRATA CONTAINS UNTIMELY NEW OPINIONS, NOT CORRECTIONS OF TYPOGRAPHICAL ERRORS

### A.   The "Errata" Was Untimely And Served After the Deadline Set by the Court

In accordance with Rule 26 and this Court's Amended Scheduling Order, Defendants were required to disclose a complete statement of all invalidity opinions that Dr. Rakow intended to "express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). Because Defendants bear the burden of proof on invalidity, these opinions and data had to be disclosed by July 26, 2019. Dr. Rakow's September 25, 2019 "errata" is, therefore, two months late and should be stricken.

Defendants never sought leave to submit these new opinions or explained what good cause existed for the late disclosure. They did not do so because there is no basis for the late disclosure and the delay in producing this information is highly prejudicial to Plaintiffs. As such, all three documents in the "errata" should be stricken and Defendants should be prevented from relying upon the opinions and calculations disclosed in the "errata" for any purpose. *Romero*, 552 F.3d at 1323-24 (finding that failure to provide sufficient expert disclosure by deadline set forth in scheduling order precluded later supplementation and also prevented party from relying upon the attempted supplemental disclosure at trial).

### B.     The "Errata" Is Not Even a Proper Supplemental Report, As It Contains New Opinions

While supplementation of expert reports is permitted under Rule 26—such as to correct misleading information—it should never be used to "bolster a defective or problematic expert witness report." *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-cv-24277, 2016 U.S. Dist. LEXIS 72102, at *16 (S.D. Fla. June 2, 2016); *see also Harris v. Fisher-Price, Inc.*, No. 13-cv-00076, 2015 U.S. Dist. LEXIS 140952, at *11-12 (N.D. Ala. Oct. 16, 2015). Further, supplemental reports are not a chance to redo a fatally flawed report or fix methodological mistakes. *Cochran v. Brinkmann Corp.*, 2009 U.S. Dist. LEXIS 114895, at *18-19 (N.D. Ga. Dec. 9, 2009), *aff'd* 381 F. App'x 968 (11th Cir. 2010) (finding that the late disclosing party's attempt to add new test results weeks after their disclosure deadline was "twisted" and "unfair"). In short, the provision exists to "impose[] a duty[,]" and not to grant the right to "produce information in a belated fashion." *Id.* at *19 (quoting *Reid v. Lockheed Martin Aero. Co.*, 205 F.R.D. 655, 662 (N.D. Ga. 2001)). Yet that is exactly what Defendants are trying to do here with Dr. Rakow's "errata."

In *Mobile Shelter*, for example, the court struck an expert's "second report" that was sent to the opposing party one day before the expert's deposition because the report contained new opinions and information absent from the expert's other reports. *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1250 (M.D. Fla. 2012). Allowing an expert to supplement his report is not appropriate "'whenever a party wants to bolster or submit additional expert opinions' because to permit such supplementation, 'would [wreak] havoc in docket control and amount to unlimited expert opinion preparation.'" *Salvani v. Corizon Health, Inc.*, No. 17-24567-Civ-SCOLA/TORRES, 2019 U.S. Dist. LEXIS 125729, at *12

13

(S.D. Fla. July 29, 2019) (quoting *Whetstone Candy Co. v. Nestle USA, Inc.*, No. 3:01-cv-415, 2003 WL 25686830, at *1 n.1 (M.D. Fla. June 2, 2003); *see also Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) (rejecting a party's second expert report, which featured a new test, because the expert failed to refer to that test in his initial report).

Time and again, the Eleventh Circuit's precedent holds that when Rule 26(e) is used as a tool to amend lacking expert testimony or circumvent deadlines, courts have broad discretion to exclude supplemental responses or "errata," even when those disclosures are timely, which Dr. Rakow's was not.[3] *Cochran*, 2009 U.S. Dist. LEXIS 114895, at *15 (holding that a supplemental report is "not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy").

Similarly, Defendants' attempt to supplement Dr. Rakow's lacking expert report introduces new expert opinions, and thus goes far beyond Rule 26(e)'s supplemental disclosure requirements. *See id*; *see also Tech Data Corp. v. AU Optronics Corp.*, No. 8:11-cv-2454, 2015 U.S. Dist. LEXIS 193961, at *19 (M.D. Fla. Oct. 22, 2015) (after comparing an expert's original report, where he stated "many" products were assembled by OEMs, to his supplemental report, where he stated 18 percent of products were assembled by OEMs, the court found that the estimation was a new opinion).

Comparing Dr. Rakow's corrected opening report to the "errata" reveals that Defendants sent the late-night supplement to correct serious deficiencies in Dr. Rakow's previously-served expert report. Dr. Rakow plainly admitted that his expert report did not

---

[3] Eleventh Circuit law applies, rather than Federal Circuit law, as these issues are not unique to patent law. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003).

contain the calculations submitted in the "errata." (Ex. 11 (Rakow Depo. Tr.) at 110:18-20

(█████████████████████████████████████████████████

█████████████████████████████████████)).

In his opening report, Dr. Rakow assumed that it would have been obvious for a person of skill in the art to introduce additional components, like a 500-gallon water tank, to the Hinsdale Rosenbauer apparatus. Dr. Rakow did not consider the extensive calculations that would be required to add components, and instead relied only on Mr. Saulsbury's report (who also did not perform the requisite calculations) (Ex. 3 (Rakow Corrected Rep.) at ¶¶ 95-98). He similarly chose not to address the 750-pound tip load requirement when the ladder is extended to 90 feet horizontally off the side of the truck (*see* Ex. 4 (Kurfess Rebuttal Report) ¶ 124-128). Then, when asked during his deposition about the calculations in the "errata," Dr. Rakow stated that he performed the new calculations and sent them to Plaintiffs after reading Dr. Kurfess's report, having not originally assumed the calculations were necessary (Ex. 11 (Rakow Depo. Tr.) at 143:1-145:1). That admission alone renders Defendants' "errata" inadmissible because a supplemental report cannot correct an expert's omission or mistake that stems from his inadequate preparation. *See Cochran*, 2010 U.S. Dist. LEXIS 142998, at *15

While Defendants were aware of the criticisms of its invalidity case since at least October 2018, they are now attempting to use the "errata" to give Dr. Rakow more time to complete his calculations and offer new opinions. This is improper. *See id*. Rule 26(e) is not a weapon for parties to use in a last-ditch effort to correct wanting expert reports. *See id*. Accordingly, this Court should strike the "errata," because it is an improper and untimely attempt to supplement the serious deficiencies in Dr. Rakow's invalidity expert report.

## II.   DEFENDANTS' UNTIMELY DISCLOSURE IS NOT SUBSTANTIALLY JUSTIFIED OR HARMLESS

### A.   The Late-Disclosed "Errata" is Not Substantially Justified

Neither Defendants nor Dr. Rakow indicated why these calculations could not have been completed in time to be disclosed by the July 26, 2019 deadline in the Amended Scheduling Order. Dr. Rakow admitted that he had the necessary information by April 30, 2019 but never explains why he could not have timely completed the calculations (Ex. 11 (Rakow Depo. Tr.) at 108:15-22, 109:20-110:20). He even admits that he had all the information necessary to do the calculations prior to issuing his original report (*id*. at 140:8-143:14). His own counsel entered the "errata" as exhibits to his deposition but never questioned Dr. Rakow as to why the calculations could not have been completed prior to the July 26, 2019 disclosure deadline (*id.* at 370:4-377:2).

As early as October 2018, Plaintiffs stated their objection that Defendants invalidity arguments were insufficient because they were conclusory and "ignore the inherent difficulty with simply adding or subtracting various elements without analyzing what effect changing the configuration of the fire apparatus would have on the weight of the truck and whether or not the additional weight could be supported on a single rear axle or if the components could be configured in such a way as to counterbalance a moment generated by a tip load when the ladder is in a horizontal orientation, among many other issues" (Ex. 5 (Oct. 22, 2019 Interrogatory Responses) at 5-6). The only way to analyze the effect of changing the configuration of the fire apparatus was to perform mathematical measurements and calculations.

Defendants' own expert, Alan Saulsbury, upon whom Dr. Rakow claims to rely, confirmed that such reconfigurations would literally require hundreds of things to be considered (Ex. 6 (Saulsbury Depo. Tr.) at 206:21-207:10). Dr. Rakow claims he spoke with and relied upon Mr. Saulsbury's expertise in preparing his July 26, 2019 Report, yet prior to submitting that report, Dr. Rakow never bothered to do any of the calculations that Mr. Saulsbury stated would be necessary to determine if the reconfiguration to add the water tank was possible or if the Hinsdale Rosenbauer could counterbalance a 750-pound tip load when the ladder was extended 90 feet horizontally off the side of the truck. Proving invalidity is Defendants' burden, and must be shown by clear and convincing evidence, not conclusory statements without analysis. As the court in the *Soffilas* case stated, an errata or a supplemental report cannot be used to "cover failures of omission because the expert did an inadequate or incomplete preparation." *Sofillas v. Carnival Corp.*, No. 14-23920-CIV-SCOLA/OTAZO-REYES, 2016 U.S. Dist. LEXIS 139448, at *8 (S.D. Fla. Aug. 23, 2016) (citations omitted).

### B.    The Belated "Errata" is Not Harmless

Permitting Dr. Rakow to rely on the new opinions and calculations and corrections in the "errata" would be highly prejudicial to Plaintiffs. Defendants were required to provide their expert disclosures related to invalidity by the July 26, 2019 deadline ordered by this Court (D.I. 160). Yet it was not until two months later that Defendants disclosed never-before-seen opinions and calculations for adding a 500-gallon water tank to the Hinsdale Rosenbauer apparatus, and a separate set of never-before-seen opinions and calculations purportedly showing that the Hinsdale Rosenbauer could support a 750-pound load at a horizontal reach of 90 feet off the side of the truck. In fact, the "errata" was served just 12 hours before Dr.

Rakow's deposition was to begin, and two days before the close of the expert deposition period. *See Mobile Shelter*, 845 F. Supp. 2d at 1251 (observing that "late disclosures…on the eve of the expert's deposition, deprives the opposing party of the time needed to fully comprehend the expert's opinions and satisfactorily prepare an effective cross examination of the expert," and ultimately granting defendant's motion to exclude the expert's testimony); *Goins v. Carnival Corp.*, No. 16-cv-21368, 2017 U.S. Dist. LEXIS 219151, at *8 (S.D. Fla. Mar. 2, 2017) (finding that the expert's "addendum" that was submitted 24 hours before his deposition was inadmissible).

The Court's Amended Scheduling Order also set a deadline of August 26, 2019 for the disclosure of rebuttal expert reports. On that date, Plaintiffs timely disclosed the expert report of Dr. Kurfess in which he opined on the deficiencies in Dr. Rakow's report, including Dr. Rakow's failure to provide support for his opinions on the 500-gallon water tank and the ability to counterbalance a tip load of 750 pounds when the ladder is extended horizontally to 90 feet off the side of the truck (Ex. 4 (Kurfess Rebuttal Rep.) at ¶¶ 113-122, 124-128). Dr. Kurfess also opined about Dr. Rakow's failures to properly support his opinions on the alleged anticipation of claim 20 of the 915 Patent (*id*. at ¶¶ 210-221). Dr. Kurfess was then deposed on his opinions on September 15, 2019 (Ex. 12 (Kurfess Depo. Tr.) at 7:1-10).

By waiting to disclose the new opinions and calculations contained in Dr. Rakow's September 25, 2019 "errata," Defendants were able to get Plaintiffs to disclose all of their opinions on the validity of the Patents-in-Suit while preventing Plaintiffs from being able to review and respond to Dr. Rakow's new opinions and calculations. Defendants should not be bestowed a tactical advantage to essentially rewrite their expert's opening report after the fact.

Moreover, had these calculations been timely disclosed, Plaintiffs' expert, Dr. Kurfess, could have responded in his rebuttal expert report. In delaying until *after* Dr. Kurfess served his expert report, and *after* Dr. Kurfess was deposed, Defendants have precluded Plaintiffs' expert from responding to the purported opinions, calculations, and corrections included in the "errata." Leaving these supposed opinions, calculations, and corrections unrebutted is thus highly prejudicial to Plaintiffs.

## III.    THE COURT SHOULD STRIKE THE "ERRATA"

Dr. Rakow's September 25, 2019 "errata" contains untimely new opinions, the late disclosure of which is not substantially justified and is highly prejudicial to Plaintiffs. As a result, the "errata" should be stricken pursuant to Rule 37, and Defendants and Dr. Rakow should be prevented from relying upon any of the opinions, calculations, information, or data set forth in the "errata."

"In determining whether the failure to sufficiently disclose an expert witness is substantially justified or harmless, courts are guided by, *inter alia*, the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Tech Data*, 2015 U.S. Dist. LEXIS 193961, at *14; *Mobile Shelter*, 845 F. Supp. 2d at 1250-1251 (quotations omitted). Each of these considerations favors striking Dr. Rakow's "errata."

*First*, the "errata" is an unduly prejudicial surprise because it includes new opinions and calculations that Plaintiffs saw for the first time just a few hours before Dr. Rakow's

deposition, and two days before expert discovery closed. Courts have previously found supplemental reports to be unduly prejudicial surprises when they contain new information and are produced near or during case deadlines, as is the case with Dr. Rakow's "errata." *Tech Data*, 2015 U.S. Dist. LEXIS 193961, at *21; *cf. Seascape Aquarium, Inc. v. Associated Diversified Servs., Inc.*, No. 8:17-cv-2137, 2018 U.S. Dist. LEXIS 109041, at *9 (M.D. Fla. June 29, 2018) (allowing a new disclosure when the information was unknown to the expert during discovery and within the opposing party's control).

Further, Dr. Rakow frequently referred to the new calculations during his deposition. Plaintiffs did not and could not have meaningfully reviewed the supplemental report before the deposition and could not have consulted with Dr. Kurfess regarding his views of the new opinions. *Mobile Shelter*, 845 F. Supp. at 1251. Because Dr. Rakow's supplemental report contains calculations that amount to new opinions and was produced so close to his deposition, it would be unfairly prejudicial to permit Defendants to rely upon the three-document "errata."

*Second*, Plaintiffs cannot cure this surprise "errata." Dr. Rakow has already been deposed, the time for expert depositions has passed (as expert discovery closed on September 27, 2019), and dispositive motions and *Daubert* motions are due later this month. There is also a motion hearing in the case on October 18, 2019.

If Dr. Rakow is permitted to rely upon his "errata," then Plaintiffs will have to conduct an additional deposition of Dr. Rakow and then submit a rebuttal expert report by Dr. Kurfess and then make Dr. Kurfess available for deposition by Defendants. After all of that, Defendants may decide that Dr. Rakow's opinion remains deficient and decide to offer additional calculations or testing to further support his opinion and the cycle would start over again. Given

Defendants' disregard of the Court's Amended Scheduling Order, and the impending case deadlines, re-deposing Dr. Rakow would be difficult for both parties.

The *third* consideration in determining whether to exclude evidence under Rule 37(c) is the risk of surprise at trial. *Mobile Shelter*, 845 F. Supp. 2d at 1250. As noted, the deadline for dispositive and *Daubert* motions is rapidly approaching. Not only is it unlikely that Plaintiffs will be able to re-depose Dr. Rakow before the deadline, but Plaintiffs' expert, Dr. Kurfess, will also not have time to review and comment on Dr. Rakow's calculations before the deadline. Delaying the dispositive motion deadline by enough time to allow for all of this additional expert discovery is also not tenable as it would make it less likely that the dispositive and *Daubert* motions would be fully briefed and that the Court would have sufficient time to decide the motions before the time for filing the Joint Final Pretrial Statement. Had Dr. Rakow wanted to rely upon the information contained in his "errata," he should have included it in his original report.

*Fourth*, Dr. Rakow opined that the Hinsdale Rosenbauer rendered the claims of the Patents-in-Suit invalid in his corrected opening report. If the calculations bolstering those opinions were so important to Defendants, they would have been included in Dr. Rakow's opening report on July 26, 2019. They were not. Dr. Rakow has failed to explain why these calculations were not completed by the disclosure deadline even though he admitted that he had all the relevant information he needed before submitting his July 26, 2019 report (Ex. 11 (Rakow Depo. Tr.) at 108:15-22, 109:20-110:20, 141:4-142:22). His own counsel even neglected to question Dr. Rakow as to why the calculations could not have been completed by his July 26, 2019 report (*id.* at 370:4-377:2).

Defendants knew about Plaintiffs' objections to the insufficiencies in Defendants' invalidity analysis that was subsequently incorporated into Dr. Rakow's report by October 2018, when Plaintiffs responded in their interrogatory that Defendants' invalidity opinions were conclusory and "ignore[d] the inherent difficulty with simply adding or subtracting various elements without analyzing what effect changing the configuration of the fire apparatus would have on the weight of the truck and whether or not the additional weight could be supported on a single rear axle or if the components could be configured in such a way as to counterbalance a moment generated by a tip load when the ladder is in a horizontal orientation, among many other issues" (Ex. 5 (Oct. 22, 2019 Interrogatory Responses) at 5-6).

Proving invalidity is Defendants' burden, and must be shown by clear and convincing evidence, not conclusory statements without analysis or supporting data. If the calculations were integral to Dr. Rakow's invalidity analysis, they should have been included in his July 26, 2019 report. Dr. Rakow admitted that the calculations were based upon information he gathered in his April 2019 inspection and documents produced in the case (Ex. 11 (Rakow Depo. Tr.) at 109:20-110:20; 373:18-374:14; 375:21-376:22). He should have had plenty of time to complete these calculations before his July 26, 2019 report. Instead, he affirmatively chose not to because he did not believe they were necessary (*id.* at 144:14-20). Thus, Dr. Rakow admits that, in his belief, the calculations are not important.

Instead, this is a classic case of Defendants trying to make up for Dr. Rakow's inadequate preparation of his invalidity opinion. An errata or a supplemental report cannot be used to "cover failures of omission because the expert did an inadequate or incomplete preparation." *Sofillas*, 2016 U.S. Dist. LEXIS 139448, at *8 (citations omitted). Defendants

failed to correct Dr. Rakow's omissions within the disclosure deadlines. If the new calculations were so important to the invalidity analysis, then they should have been timely produced, and Defendants should not be allowed to remedy their omissions in their "errata."

*Finally*, Defendants have failed to explain their failure to timely disclose this evidence. At no point did Defendants file a motion in the court to seek leave to supplement their expert reports, or provide any notice to Plaintiffs. Instead, they waited a month to respond to Dr. Kurfess' critiques under the guise of an "errata." Yet Dr. Rakow admitted that the calculations were based on information he obtained *five months* before the "errata" was served (Ex. 11 (Rakow Depo. Tr.) at 109:20-110:20). Counsel for Defendants also underscored their failure to timely disclose this evidence (*id.* at 378:13-16 (█████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████). Ultimately, there is no reason that Defendants did not disclose these calculations earlier. *See Sabal Trail Transmission, LLC v. 13.386 Acres in Lake Cty. Fla.*, No. 5:16-cv-147, 2018 U.S. Dist. LEXIS 208633, at *8, 10 (M.D. Fla. Dec. 11, 2018) (finding that defendants did not timely disclose the new information, and striking portions of the supplemental report based on "any data, conclusions, or opinions not previously disclosed.")

Considering all the elements above, Dr. Rakow's "errata" is an unfair prejudicial surprise and should be struck under Rule 37(c).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court strike the entirety of Dr. Rakow's September 25, 2019 "errata," attached hereto as Exhibits 8, 9, and 10,

and prevent Defendants and Dr. Rakow from relying upon any of the opinions, calculations, information, or data contained therein in any motion, at any hearing, or at trial.

## LOCAL RULE 3.01(G) CERTIFICATION

On September 30, 2019, counsel for Plaintiffs telephonically conferred with counsel for Defendants regarding Plaintiffs intent to strike Dr. Rakow's three-part "errata." Defendants oppose the requested relief.


DATED: October 3, 2019       s/ Steve D. Berlin

DAVID C. WILLIS, ESQUIRE
Florida Bar No. 0477435
E-mail:  dwillis@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 South Orange Avenue, Suite 1400
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
- and -

STEVE D. BERLIN, ESQUIRE
Florida Bar No. 823511
E-mail:  sberlin@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
100 North Tampa Street, Suite 2000
Tampa, FL  33602-5830
Phone: 813-472-7511
Fax:    813-221-4752

- and -

JOSHUA M. WEEKS, ESQUIRE
*Admitted Pro Hac Vice*
Georgia Bar No. 545063
E-mail:  Joshua.Weeks@alston.com
LINDSAY C. CHURCH, ESQUIRE
*Admitted Pro Hac Vice*
Georgia Bar No. 651190
E-mail:  Lindsay.Church@alston.com
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, Suite 4200
Atlanta, GA  30309-3424
Phone: 404-881-7000
Fax:     404-881-7777

- and -

TODD B. BENOFF, ESQUIRE
*Admitted Pro Hac Vice*
California Bar No. 192983
E-mail:  Todd.Benoff@alston.com
ALSTON & BIRD LLP
333 South Hope Street
16th Floor
Los Angeles, CA  90071-3004
Phone: 213-576-1000
Fax:     213-576-1100

- and -

THOMAS W. DAVISON, ESQUIRE
Florida Bar No. 55687
E-mail:  Tom.Davidson@alston.com
SCOTT J. PIVNICK, ESQUIRE
*Admitted Pro Hac Vice*
D.C. Bar No. 455195
E-mail:  Scott.Pivnick@alston.com
ALSTON & BIRD LLP
The Atlantic Building
950 F Street NW
Washington, DC  20004-1404
Phone: 202-239-3300
Fax:     202-239-3333

- and -

STEPHEN YANG, ESQUIRE
New York Bar No. 5123492
E-mail:  Stephen.Yang@alston.com
*Admitted Pro Hac Vice*
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016-1387
Phone: 212-210-9510
Fax:     212-210-9444


***Attorneys for Pierce Manufacturing Inc.
and Oshkosh Corporation***


### CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of October, 2019, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the

foregoing document and the notice of electronic filing by first-class mail to the following non-

CM/ECF participants:  None.

                                           s/Steve D. Berlin
                                           STEVE D. BERLIN, ESQUIRE
                                           Florida Bar No. 823511
                                           E-mail:  sberlin@rumberger.com
                                           RUMBERGER, KIRK & CALDWELL, P.A.
                                           100 North Tampa Street, Suite 2000
                                           Tampa, FL  33602-5830
                                           Phone: 813-223-4253
                                           Fax:    813-221-4752

                                           ***Attorneys for Pierce Manufacturing Inc. and Oshkosh Corporation***