**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PIERCE MANUFACTURING, INC. and
OSHKOSH CORPORATION,

      Plaintiffs,

v.                                        Case No.:  8:18-cv-617-JSM-TGW

E-ONE, INC. and REV GROUP, INC.,

      Defendants.

---

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE (DOC. 230)**

**I.      INTRODUCTION**

Defendants E-One, Inc. and REV Group, Inc. hereby oppose Plaintiffs' motion to strike Dr. Rakow's expert opinions (Doc. 230).[1]

On September 25, 2019, prior to the close of expert discovery, Defendants served an errata to Dr. Rakow's opening expert report ("Errata"), correcting two obvious typographical errors. Defendants also served two short calculation documents (collectively "Mathematical Calculations") relating to Dr. Rakow's opinions in his opening report. These Mathematical Calculations support Dr. Rakow's original opinions and refer *only* to documents and evidence expressly considered and cited by Dr. Rakow in his opening report. The Mathematical Calculations were offered in response to arguments that Plaintiffs' technical expert, Dr. Kurfess, raised for the first time in his rebuttal expert report, including a new

---

[1] In this Opposition, Defendants cite to exhibits to Plaintiffs' motion to strike, including those filed under seal, by docket number. Defendants also cite exhibits to the Loffredo Declaration filed with this opposition.

claim construction argument that Plaintiffs failed to raise during the claim construction proceedings before this Court.

Although Defendants disagree that Dr. Rakow's Errata and Mathematical Calculations were untimely under Fed. R. Civ. P. 26(e) or imposed any prejudice on Plaintiffs, in order to reach a compromise and minimize any unnecessary burden on this Court, Defendants offered to make Dr. Rakow available for a continued deposition to cover these topics. Despite previously suggesting that they were amenable to this arrangement, Plaintiffs unexpectedly changed course a few days later and rejected Defendants' offer, choosing instead to file a motion to strike Dr. Rakow's opinions far in advance of trial.

For the reasons explained below, the Court should deny Plaintiffs' motion to strike Dr. Rakow's expert opinions. Defendants remain willing to provide Dr. Rakow for a continued deposition before trial—which is still more than *five months away*—to address the Errata and the Mathematical Calculations.

## II.     FACTUAL BACKGROUND

On September 25, 2019, the day before Dr. Rakow's scheduled deposition, Defendants served three documents. One is the Errata, which corrects two obvious typographical errors throughout one section of Dr. Rakow's opening expert report. Docs. 231-7, 231-10. The other documents are the Mathematical Calculations. One calculation (the "Water Tank Calculation") provides additional mathematical support for Dr. Rakow's original opinion that the prior-art Hinsdale Quint can support 200 additional gallons of water in the form of a 500-gallon water tank. *See* Ex. A at ; 376:8-22; Doc. 231-3, ¶¶ 87-98. The other calculation (the "Sideward Tip Load Calculation") responds to a new claim

construction argument disclosed for the first time in Dr. Kurfess's rebuttal report. Specifically, the Sideward Tip Load Calculation shows that the Hinsdale Quint can support a tip load of at least 750 pounds at the end of the aerial ladder assembly extended to a horizontal reach of at least 90 feet in the sideward position, *even though this is not required by any of the asserted claims*. Docs. 231-7, 231-8, 231-9.

### A.     The Errata

Dr. Rakow's Errata corrects two typographical errors in section XI of his opening report. Ex. A at 370:11-22. As Dr. Rakow explained, "throughout the section where we meant to reference the '915 patent, we have references to the '536 patent." *Id.* at 371:17-21. That is the first error. The second error that his Errata corrected was in ¶ 344 of his opening report, where he "had to change the word obvious to anticipated." *Id.* at 372:11-373:12. Dr. Rakow testified that the original heading of section XI in his opening report—**CLAIM 20 OF MOORE '915 IS ANTICIPATED BY THE 2014 PRIOR ART PIERCE QUINT FIRE APPARATUS**—was correct. *Id.* at 371:5-16.

### B.     The Water Tank Calculation

Claims 1 and 20 of the '536 patent recite "wherein the water tank is configured to contain at least 500 gallons of water." Doc. 231-1. In his opening report, Dr. Rakow provided a detailed invalidity analysis of this element based on the Hinsdale Quint and other prior-art firetrucks. Specifically, Dr. Rakow explained that the Hinsdale Quint has a 300-gallon water tank but there were many prior art quint firetrucks with at least 500-gallon water tanks. Doc. 231-3, ¶¶ 87, 89. He further explained that before the alleged invention here, it was known to allow firetruck purchasers to select a water tank size as part of the customization process. *Id.*,

¶ 90. Dr. Rakow reasoned that a person of ordinary skill in the art ("POSITA") would understand that the Hinsdale Quint could accommodate a heavier water tank by reducing and/or shifting the weight of other components on the truck. *Id.*, ¶¶ 91-92.

In his rebuttal report, Dr. Kurfess argued for the first time that "███████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████" Doc. 231-4, ¶ 117. As Dr. Rakow testified, he prepared the Water Tank Calculation "in response to Dr. Kurfess' rebuttal report." Ex. A at 376:8-22. Dr. Rakow explained that "[it] was after I read Dr. Kurfess' report, where he didn't seem to understand the obviousness of -- of adding 200 gallons of water to that Hinsdale Rosenbauer truck, that I recognized that really, I should lay this out a little bit more explicitly for him." *Id.* at 267:12-18.

In providing his Water Tank Calculation, Dr. Rakow relied on information about the Hinsdale Quint previously produced during fact discovery and expressly cited and relied upon in his opening report. Doc. 231-8; Ex. A at 376:8-22. Dr. Rakow testified "the calculations just show how that information comes together." *Id.* at 110:4-11. He also testified that he "ended up pulling that information together in -- in an explicit calculation that . . . lays out what that [weight] capacity is and how there's plenty of capacity for an additional 200 gallons of water." *Id.* at 264:14-21. As he further explained, "[t]he information that -- that feeds into [the Water Tank Calculation] is all available. It's all -- it's all part of the file." *Id.* at 267:9-12.

4

## C.     The Sideward Tip Load Calculation

Claims 5 and 15 of the '536 and '915 patents each recite "wherein the distal end of the ladder assembly is extensible to the horizontal reach of at least 90 feet when the ladder assembly is oriented in the sideward position." Docs. 231-1, 231-2. These claims clearly do *not* require that the ladder be able to support 750 pounds in this sideward orientation but, instead, only require that the ladder be "*extensible* to the horizontal reach of at least 90 feet" in this orientation. Plaintiffs never requested any alternative construction of this limitation, thereby conceding that it has its ordinary meaning.

In his opening report, based on the plain language of claims 5 and 15, Dr. Rakow opined that the Hinsdale Quint satisfies dependent claims 5 and 15 because its ladder was successfully extended horizontally to at least 90 feet off the side of the truck without the truck tipping over. Ex. A at 109:5-15. He opined that this proves the distal end of the ladder assembly of the Hinsdale Quint] is extensible to the horizontal reach of at least 90 feet when the ladder assembly is oriented in the sideward position. *See* Doc. 231-3, ¶ 108.

In response to Dr. Rakow's testing, focusing on claim 5, Dr. Kurfess argued for the first time in his rebuttal report that "█████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████" Doc. 231-4, ¶ 124. This argument is based on a new and previously undisclosed construction of claims 5 and 15. Plaintiffs never raised this argument during the claim construction proceedings and never identified claims 5 and 15 as requiring construction by the Court. *See* Docs. 107, 144.

Although Dr. Rakow did not physically apply a 750-pound weight to the Hinsdale Quint ladder in the sideward position, he collected information when the ladder was extended to 90 feet in this position. Ex. A at 109:5-15; Doc. 231-9 (including photographs collected during Dr. Rakow's inspection and produced during fact discovery). To respond to Dr. Kurfess's new claim construction argument, Dr. Rakow used the information he had already collected to prepare the Sideward Tip Load Calculation. He testified that the Sideward Tip Load Calculation was motivated by and "generated in response to Dr. Kurfess' rebuttal report." Ex. A at 375:15-16; *see also id.* at 143:4-14.

Like his Water Tank Calculation, Dr. Rakow's Sideward Tip Load Calculation relies on previously collected and produced information on the Hinsdale Quint. His "calculation just simply shows how do you take that existing information and put it together." *Id.* at 144:10-13; *see also id.* at 110:4-11, 141:8-12, 142:7-18. He testified "we have the information from my inspection of the loading of the outriggers, right, which feeds into this calculation." *Id.* at 146:5-8; *see also id.* at 109:5-15. The Sideward Tip Load Calculation, using the previously produced outrigger data Dr. Rakow collected at this inspection, shows the Hinsdale Quint can support a tip load of at least 750 pounds when the ladder assembly is in the sideward position and extended to a horizontal reach of at least 90 feet. Doc. 231-9.

The case history shows that Dr. Kurfess applied his new construction only *after* Defendants discovered and the parties inspected the Hinsdale Quint. During the claim construction proceedings, neither Plaintiffs nor Defendants asked the Court to construe the "sideward" limitation of claims 5 and 15. *See* Docs. 107, 144, 148 (not identifying claims 5

6

or 15). And when the Court issued its Claim Construction Order on February 22, 2019, it did not construe that limitation. Doc. 158.

Defendants and Dr. Rakow inspected the Hinsdale Quint on April 30, 2019, and Plaintiffs and Dr. Kurfess inspected it on May 10, 2019. *See* Doc. 167-12, ¶¶ 8-13. During Plaintiffs' inspection, Rosenbauer offered to let Plaintiffs apply their 750-pound weight to the end of the ladder in the sideward horizontal position while extended 90 feet. *Id.*, ¶ 13. But, as Dr. Kurfess acknowledged, *Plaintiffs rejected that offer*. *See id.*; Ex. G at 148:20-150:2; Ex. B ("███████████████████████████"). Thus, Plaintiffs had an opportunity to observe the Hinsdale Quint support 750 pounds at greater than 90 feet in the sideward position, but they purposely declined to observe it—apparently for tactical reasons.

Three days after their inspection of the Hinsdale Quint, Plaintiffs supplemented their infringement contentions and for the first time when analyzing claims 5 and 15 included an image of E-One's accused Metro 100 Quint allegedly supporting a weight with the ladder extended horizontally off the side.[2] Ex. C at p. 148. In Plaintiffs' earlier infringement contentions served on March 25, 2019, *before* the Hinsdale Quint inspection, Plaintiffs analyzed claims 5 and 15 but did not include the same image. Ex. D at p. 119-133.[3] And in Plaintiffs' discovery requests seeking admissions to support infringement, Plaintiffs only asked E-One to "[a]dmit that the distal end of the ladder assembly of the Metro 100 Quint

---

[2] Plaintiffs also supplemented their response to Interrogatory No. 17 on May 31, 2019—after the Hinsdale Quint inspections—to argue "████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████" Ex. F at p. 21. Their supplemental response to Interrogatory No. 17 ████████████████████████████████.

[3] Plaintiffs' March 25, 2019 claim chart only included the image of the Metro 100 Quint with the ladder extended to the side and supporting weight for the analysis of claims 4 and 14 to show the ladder could in fact be placed in a sideward position. Claims 4 and 14 do not require any weight on the ladder.

fire apparatus is extensible to the horizontal reach of at least 90 feet when the ladder assembly is oriented in the sideward position," with no requirement to also support a 750-pound tip load. Ex. E (Request Nos. 40 and 44). Thus, Plaintiffs' new claim construction for claims 5 and 15 was clearly triggered by their inspection of the prior art Hinsdale Quint.

Moreover, Plaintiffs' construction is not based on the actual language of claims 5 or 15. Those claims require that "the distal end of the ladder assembly is extensible to the horizontal reach of at least 90 feet when the ladder assembly is oriented in the sideward position." Docs. 231-1, 231-2. They do not mention the 750-pound tip load. *Id.* And there is nothing to suggest that, because claims 5 and 15 depend ultimately from independent claims 1 and 11, respectively, the 750-pound tip load requirement is incorporated into the "sideward position" limitation. Independent claims 1 and 11 introduce the horizontal reach limitation without reference to the 750-pound tip load. *Id.* And the language those independent claims use to introduce the "horizontal reach" limitation ("*wherein the ladder assembly is extensible to* provide a *horizontal reach of at least 90 feet*") closely tracks the language of claims 5 and 15 ("*wherein* the distal end of *the ladder assembly is extensible to* the *horizontal reach of at least 90 feet*"). *Id.* The plain and ordinary meaning of "the horizontal reach of at least 90 feet" in claims 5 and 15 is therefore separate from the 750-pound tip load limitation. Based on the timing of this new construction—after the Hinsdale Quint inspections—a reasonable conclusion is that Plaintiffs and Dr. Kurfess developed this new claim construction in an attempt to preserve the validity of claims 5 and 15.

### III.   LEGAL AUTHORITY

"For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). Disclosures under Rule 26(a)(3) are due "at least 30 days before trial," unless the Court orders otherwise. Fed. R. Civ. P. 26(a)(3)(B). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "A failure to timely make the required disclosures is harmless when there is no prejudice to the party entitled to receive the disclosure." *Hewitt v. Liberty Mut. Group, Inc.*, 268 F.R.D. 681, 683 (M.D. Fla. 2010).

"Even if the Court finds that a party's failure to disclose evidence is neither substantially justified or harmless, the sanction of exclusion is not mandatory." *Tampa Bay Water v. HDR Eng'g, Inc.*, Case. No. 8:08-cv-2446-T-27TBM, 2011 U.S. Dist. LEXIS 88212, *11 (M.D. Fla. Aug. 9, 2011) (internal quotation omitted). "[T[he Court vastly prefers to decide cases on their merits." *Demasi v. U.S.*, Case No. 3:09-cv-888-J-32JRK, 2010 U.S. Dist. LEXIS 142800, *6 (M.D. Fla. Nov. 4, 2010). Absent "bad faith or gamesmanship on the eve of trial, many courts are loathe to invoke the strong medicine of precluding expert testimony." *McClain v. Metabolife Int'l, Inc.*, 193 F. Supp. 2d 1252, 1259 (N.D. Ala. 2002).

## IV.     ARGUMENT

### A.      Defendants Timely Served Dr. Rakow's Errata and Mathematical Calculations Pursuant to Fed. Cir. R. 26(a)(3)(B)

Plaintiffs contend that Dr. Rakow's Errata and Mathematical Calculations were untimely served. But Plaintiffs cannot dispute that the Errata and Mathematical Calculations constitute "additions or changes" to Dr. Rakow's opening report and that these additions or changes were served within 30 days of Dr. Kurfess's rebuttal report, *before* the September 27, 2019 close of expert discovery, and more than 30 days before trial. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii); Docs. 43, 160. Under Federal Rule 26(a)(3)(B), these additions or changes to Dr. Rakow's opening expert report were therefore timely served. *Cf. Dzielak v. Whirlpool Corp.*, No. 2:12-cv-0089 (KM)(JBC), 2017 U.S. Dist. LEXIS 39232, *85-90 (D.N.J. Mar. 17, 2017) (concluding an expert's rebuttal and supplemental reports were timely served where the rebuttal report was submitted within 30-days after the opposing expert's rebuttal report and addressed a new opinion from the opposing expert).

"Any additions or changes to [the] information [in the expert's report or given during the expert's deposition] must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2); *see also Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019). The default deadline for pretrial disclosures is "at least 30 days before trial," Fed. R. Civ. P. 26(a)(3)(B), which in this case is scheduled for April 2020. Doc. 43 at 5. Defendants therefore served Dr. Rakow's Errata and Mathematical Calculations well before the default deadline set forth in Rule 26(a)(3)(B). *See Fletcher v. Great Am. Ins. Co.*, No. 3:09-cv-324-J-25JRK, 2010 U.S. Dist. LEXIS 149636, at *10-14

(M.D. Fla. Sept. 7, 2010) (citing Fed. R. Civ. P. 26(a)(3)(B) and finding the supplemental report was timely disclosed).

If the Court decides, however, that the Case Management and Scheduling Order (Docs. 43, 160) modified the deadline under Rule 26(a)(3)(B) such that Dr. Rakow's Errata and Mathematical Calculations were due earlier than 30 days before trial, the Court should not strike them for the reasons provided below.

> **B.**      **Defendants' Service of Dr. Rakow's Errata and Mathematical Calculations on September 25, 2019, Was Substantially Justified.**

Dr. Rakow's Errata corrected obvious typographical errors in his opening report. As he testified, the Errata "just simply corrects some typos that were in section 11 [of my opening report], starting on page 116." Ex. A at 370:11-22. His Errata corrects two basic typographical errors: "throughout the section where we meant to reference the '915 patent, we have references to the '536 patent," *id.* at 371:17-21; and in ¶ 344 of his opening report "we had to change the word obvious to anticipated." *Id.* at 372:11-373:12.

Dr. Rakow noted that the original heading of section XI in his opening report was correct. *Id.* at 371:5-16. That heading reads "**CLAIM 20 OF MOORE '915 IS ANTICIPATED BY THE 2014 PRIOR ART PIERCE QUINT FIRE APPARATUS**." Doc. 231-10 (emphases added). It was therefore evident from the original version of his opening report that this section related to the '915 patent (not the '536 patent) and invalidity based on anticipation (not obviousness). Dr. Rakow confirmed the changes made by the Errata "don't affect the substance of the opinion [in his opening report]." *Id.* at 373:7-12. Because his Errata corrected typographical errors, Defendants were substantially justified in serving it on September 25, 2019, before his deposition the next day. *See Pharm., Inc. v. Am.*

*Pharm. Partners, Inc.*, 2008 U.S. Dist. LEXIS 73293, *15 (E.D.N.Y. Sept. 24, 2008) (not

limiting reference to supplemental expert reports that corrected typographical errors).

Regarding the Mathematical Calculations, Dr. Rakow prepared those using

information produced in this case and expressly considered in his opening report and in

response to arguments raised for the first time in Dr. Kurfess's rebuttal report. Ex. A at

143:4-14, 373:18-376:22. The Water Tank Calculation supports Dr. Rakow's opinion that it

would have been obvious and feasible to increase the Hinsdale Quint's water tank capacity

from 300 to 500 gallons. Doc. 231-8; Ex. A at 375:17-376:22. The Sideward Tip Load

Calculation supports his opinion that the Hinsdale Quint meets the limitations of claims 5 and

15, and responds to Dr. Kurfess's new argument that those claims require the ladder

assembly to support at least 750 pounds in the sideward position, notwithstanding that the

actual language of those claims does not require this and Plaintiffs never raised this argument

during claim construction before the Court. Doc. 231-9; Ex. A at 374:3-14, 374:22-375:12.

Plaintiffs' counsel had an opportunity to depose Dr. Rakow about these additions and

changes to his opening report. For example, during his deposition, Dr. Rakow testified that

the Sideward Tip Load Calculation was responsive to questions Plaintiffs' counsel asked

during his deposition. Ex. A at 375:1-12; *see also id.* at 139:16-142:18 (responding to

Plaintiffs' counsel's question "can you also calculate how much of a load can be applied

before the truck will tip over"). To the extent Plaintiffs' counsel chose not to question Dr.

Rakow further about these additions and changes to his opening report during his lengthy[4]

---

[4] By agreement of the parties, Dr. Rakow's and Dr. Kurfess's expert depositions were extended one hour
beyond the 7 hours permitted by the Federal Rules. Thus, Plaintiffs had a full *8 hours* to question Dr. Rakow
about his expert reports as well as the Errata and Mathematical Calculations.

deposition, that was a tactical decision made intentionally by Plaintiffs' counsel, not an impediment caused by Defendants.

### C.    Disclosure of Dr. Rakow's Errata and Mathematical Calculations Was Not Unduly Prejudicial to Plaintiffs.

#### 1.    Defendants offered to continue Dr. Rakow's deposition to mitigate any harm to Plaintiffs.

During Dr. Rakow's deposition, Plaintiffs' counsel stated that they would ask for another deposition if the Court does not strike the materials served the day before: "So we will be moving to strike [Dr. Rakow's September 25, 2019 materials]. And to the extent the court does not, *we're going to be asking for another deposition of Dr. Rakow in order to actually be able to address them because they just were not produced in enough time to do that*." Ex. A at 25:16-22 (emphasis added). Four days after the deposition, on September 30, 2019, the parties met and conferred by telephone to discuss Plaintiffs' proposed motion to strike. Mot. at 24. During that meeting, Defendants agreed to make Dr. Rakow available for a continued deposition, as Plaintiffs' counsel requested (as alternative relief) during the deposition. Ex. 1, ¶ 2 (Loffredo Declaration filed with this Opposition). But Plaintiffs' counsel changed course and rejected that offer, choosing instead to file a motion to strike. *Id.* Surprisingly, Plaintiffs failed to mention in their motion to strike that Defendants had offered to continue Dr. Rakow's deposition to address the Errata and Mathematical Calculations.

To the extent Plaintiffs could not have fully deposed Dr. Rakow on his Errata and Mathematical Calculations during his September 26, 2019 deposition, Plaintiffs could have alleviated any harm by accepting Defendants' offer to continue the deposition. *See Fletcher*, 2010 U.S. Dist. LEXIS 149636, at *16-17 (denying motion to strike supplemental expert

13

report and deciding "any undue prejudice that may have resulted from not having the opportunity to depose [the expert] is cured by deposing [him] regarding the Supplemental Report prior to the pretrial conference"); *Schmonsees v. Care Med. Equip., Inc.*, 3:09-CV-1004-J-34JBT, 2011 U.S. Dist. LEXIS 114894, *2-3 (M.D. Fla. Oct. 5, 2011) (denying motion to limit expert from testifying to supplemental opinions where plaintiff was able to re-depose the expert); *cf. Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*¸ No. 05-80183-CIV, 2006 U.S. Dist. LEXIS 97276,  at *9 (S.D. Fla. Oct. 18, 2006) (excluding a supplemental expert report because of the inability to depose the expert).

In *Fletcher*, the Court reopened expert discovery "for the sole purpose of permitting Plaintiff to depose [the expert] regarding the Supplemental Report." *Fletcher*, 2010 U.S. Dist. LEXIS 149636, at *20. And in *Schmonsees*, rather than exclude an expert's supplemental report, this Court ordered what Defendants offered Plaintiffs here: the option for a continued deposition. *See Schmonsees*, 2011 U.S. Dist. LEXIS 114894, *3. Although Plaintiffs rejected Defendants' reasonable offer to continue Dr. Rakow's deposition, choosing instead to burden this Court with a motion to strike, Defendants nevertheless remain willing to produce Dr. Rakow for a continued deposition on the narrow topics of the Errata and the Mathematical Calculations.

Plaintiffs' reliance on the Court's decision in *Sabal Trail Transmission, LLC v. 13,386 Acres in Lake Cty. Fla.*, No. 5:16-cv-147, 2018 U.S. Dist. LEXIS 208633, at *8, 10 (M.D. Fla. Dec. 11, 2018) is misplaced. Mot. at 23. In *Sabal*, the Court struck portions of an updated appraisal report that contained new information. *Id.* at *3, 10. In arguing against the motion to strike, Defendants "state[d] that because they made [the expert] available for

deposition after the disclosure of the updated appraisal report, any surprise or prejudice that may have occurred is curable." *Id.* at *6. The Court noted Defendants' "argument may have merit if there were more time before trial." *Id.* But because "Defendants provided [the updated report] to Plaintiff approximately one month prior to trial," *id.* at *2-3, and because at the time of the Court's order "trial [was] set to begin in less than a week," the Court granted the motion to strike. Here, in contrast, Defendants offered on September 30, 2019— *at least six months before trial scheduled for April 2020*—to make Dr. Rakow available for a continued deposition. Ex. 1, ¶ 2 (Loffredo Declaration). Even now, there are more than *five months* before trial during which a continued deposition can take place.

With no other explanation for why they are allegedly prejudiced, Plaintiffs ask the Court to strike Dr. Rakow's Errata and Mathematical Calculations. But Plaintiffs have identified no real harm, and if there is any, Plaintiffs could have easily mitigated it by accepting Defendants' offer to continue Dr. Rakow's deposition.[5]  Plaintiffs know the scope of Dr. Rakow's opinions such that there is no risk of surprise at trial. *See Schmonsees*, 2011 U.S. Dist. LEXIS 114894, at *3 ("[T]he risk of surprise at trial is one of the primary considerations in determining whether to exclude evidence under Rule 37(c)(1)."). For these reasons, disclosure of Dr. Rakow's Errata and Calculations was harmless to Plaintiffs, and the Court should deny Plaintiffs' motion to strike.

---

[5] Had Plaintiffs accepted Defendants' offer to continue Dr. Rakow's deposition, Defendants would have been amenable to continue that deposition within a week after expert discovery closed, jointly moving the Court for leave to do so if necessary. Defendants believe this would have fit into the case schedule without disruption.

### D.   Dr. Rakow's Errata and Calculations Are Not "New Opinions"

Contrary to Plaintiffs' assertion, Dr. Rakow never testified that the Errata and

Mathematical Calculations "consisted of brand-new opinions." Mot. at 1. For instance,

Plaintiffs argue that "Dr. Rakow never disclosed any opinions or calculations as to how the

Hinsdale Rosenbauer would actually be modified to accommodate a larger tank or if its axles

could support the additional weight." Mot. at 4. That is incorrect. In his opening report, Dr.

Rakow disclosed an option to "place the water tank before, or above, the pump in order to

shift weight allocation from the rear axle to the front axle," and he provided an example of a

2000 Rosenbauer firetruck with a water tank above the pump. Doc. 231-3, ¶¶ 92-93. He also

cited Defendants' fire industry expert, Alan Saulsbury, regarding increasing water tank

capacities to 500-gallons on a single-rear-axle chassis in the 1980 to 2000 era. *Id.*, ¶ 95. Dr.

Rakow further disclosed that the increased water load could be balanced "by reducing the

weight of other components (e.g., the engine)," as well as "the cab size and equipment

allowance, or designing the body or available compartmentation so that they reduce weight."

*Id.*, ¶ 97; *see In re Keller*, 642 F.2d 413, 425 (CCPA 1981) ("The test for obviousness is not

whether the features of a secondary reference may be bodily incorporated into the structure

of the primary reference.").

According to Plaintiffs, Dr. Rakow opined that to increase the water tank capacity a

POSITA "would have to lighten other components on the truck," but that "[h]e never

identified what actual components would be lightened or by how much." Mot. at 4. This is

also incorrect. As noted above, Dr. Rakow identified examples of structures for weight

reduction to accommodate the larger-capacity water tank (e.g., the engine, cab size, and

16

equipment allowance), as well as the option to design the body or available truck compartmentation to reduce weight. *Id.* ¶ 97. Moreover, Dr. Rakow did not opine that a POSITA would *have* to lighten other truck components to increase the water tank capacity. Instead, he disclosed that "[a] POSITA would recognize that to accommodate a heavier water tank, modification *could* be made to lighten other components." *Id.*, ¶ 91 (emphasis added).

Regarding the Sideward Tip Load Calculation, Plaintiffs argue that Dr. Rakow "admitted during his deposition that he never *measured* how much weight could be supported in the sideward position."[6]  Mot. at 5 (emphasis added). This is not entirely correct. Dr. Rakow testified that he did not actually hang the 750-lb. weight off the end of the ladder in its sideward orientation (because this is not required by claims 5 and 15), but he testified that he *did* extend the ladder in the sideward position to more than 90 feet and gather information about the resulting weight distribution on the outriggers to understand the truck's capabilities in that position. Ex. A at 109:1-19. This information allowed him to "measure," as shown in the Sideward Tip Load Calculation (Doc. 231-9), the amount of weight that could be supported in the sideward position as exceeding 750 pounds.

Plaintiffs contend "Dr. Rakow stated that he performed the new calculations and sent them to Plaintiffs after reading Dr. Kurfess's report, having not originally assumed the calculations were necessary." Mot. at 15. Plaintiffs improperly characterize this as an "omission or mistake that stems from his inadequate preparation." *Id.* Dr. Rakow testified, however, that the Mathematical Calculations are *not* necessary to support his invalidity

---

[6] Plaintiffs contend that, to show claims 5 and 15 are invalid, Defendants must prove "that the prior art, alone or in combination, discloses a quint configuration fire apparatus that is configured to counterbalance the moment generated by a 750-pound tip load when the ladder is extended to at least 90 feet horizontally *off the side of the truck*." Mot. at 3. That is incorrect and not required by the claims for the reasons discussed above.

analysis. *See, e.g.*, Ex. A at 144:14-145:1; Mot. at 22. He provided them to address arguments Dr. Kurfess raised for the first time in his rebuttal report, including an entirely new claim construction argument that Plaintiffs had never before raised in this case. *See* Ex. A at 143:1-14, 144:14-145:1, 373:14-376:22.

Plaintiffs rely on *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1250 (M.D. Fla. 2012) as an example of this Court striking "an expert's 'second report' that was sent to the opposing party one day before the expert's deposition because the report contained new opinions and information absent from the expert's other reports." Mot. at 13. The facts in *Mobile Shelter*, however, are quite different from the facts here. In *Mobile Shelter*, the Plaintiff's expert first submitted a less than one-page report presenting opinions solely on patent infringement, and which violated Fed. R. Civ. P. 26(a)(2)(B). *Mobile Shelter*, 845 F. Supp. 2d at 1249-50. The day before the expert's deposition, Plaintiff served his second report. *Id.* It offered no opinions on patent infringement and instead spanned nine pages of opinions on trade dress infringement, which was not mentioned in the first report. *Id.* at 1249-50. The Court also noted "Plaintiff's last minute expert disclosure was not an isolated incident . . . [and] Plaintiff's last minute filings and disclosures have greatly affected the orderly handling of this case." *Id.* at 1252.

Unlike in *Mobile Shelter*, Dr. Rakow's initial opening expert report was over 150 pages and covered multiple grounds of patent invalidity and unenforceability. The thirteen-page Errata served on September 25, 2019, corrected two obvious typographical errors in one section of his report. Doc. 231-10. Dr. Rakow's Water Tank Calculation is two pages. Doc. 231-8. His Sideward Tip Load Calculation is five pages, three of which are photographs of

18

the Hinsdale Quint that Defendants produced during fact discovery and that Dr. Rakow

considered and cited in his opening report. Doc. 231-9. Unlike the expert's supplemental

report in *Mobile Shelter*, Dr. Rakow's Errata and Mathematical Calculations relate directly to

his invalidity opinions presented in detail in his original expert report. *See* Ex. A at 370:4-

376:22. Also, Defendants in this case have not engaged in a pattern of last-minute filings or

disclosures to Plaintiffs, and Plaintiffs do not allege otherwise.

   Plaintiffs also rely on *Goins v. Carnival Corp.*, No. 16-cv-21368, 2017 U.S. Dist.

LEXIS 219151, at *8 (S.D. Fla. Mar. 2, 2017), in which the Court denied a motion for leave

to file addenda to expert reports where the addendum was submitted 24-hours before the

expert's deposition. Mot. at 18. That case is distinct, however, because the parties had

requested six extensions of time, and the Court had previously issued an order that "'no other

expert reports will be accepted, and no other deadlines, including the rebuttal report deadline,

will be extended.'"  *Goins*, 2017 U.S. Dist. LEXIS 219151, at *2-3 (quoting the Court's prior

order). Also distinct from the facts here, in *Tech Data Corp. v. AU Optronics Corp.*, this

Court compared an initial expert report that "merely estimated that 'many' of the LCD

products were assembled by OEMs that had purchased the LCD panel," with the

supplemental report, which "opined that amount is 18%." No. 8:11-cv-2454, 2015 U.S. Dist.

LEXIS 193961, at *19 (M.D. Fla. Oct. 22, 2015). The Court noted the supplemental report

adjusted the data from the initial report and that the expert offered "new conclusions based

upon [that] data." *Id.* at *18. Notably, Defendants sought summary judgment based on the

supplemental report data as "the only relevant evidence." *Id.* at *19 (internal quote omitted).

Here, in contrast, Dr. Rakow's invalidity conclusions do not depend on the data in his

September 25, 2019 Mathematical Calculations. With or without those documents, it is his

opinion that the asserted claims are invalid over the prior art, including the Hinsdale Quint.

## V.      CONCLUSION

For the reasons explained above, Defendants respectfully request that the Court deny

Plaintiffs' motion to strike.


Dated: October 24, 2019                             Respectfully submitted,

                                                    /s/ *David L. Luikart*

James R. Barney (*pro hac vice*)              David L. Luikart III
Susan Y. Tull (*pro hac vice*)                Florida Bar Number 021079
Justin E. Loffredo (*pro hac vice*)           dave.luikart@hwhlaw.com
Anthony J. Berlenbach (*pro hac vice*)        Tori C. Simmons
FINNEGAN, HENDERSON, FARABOW,                 Florida Bar No. 107081
  GARRETT & DUNNER, LLP                       tori.simmons@hwhlaw.com
901 New York Avenue, NW                       HILL, WARD & HENDERSON, P.A.
Washington, DC 20001-4413                     101 East Kennedy Blvd., Suite 3700
202-408-4000                                  Post Office Box 2231
james.barney@finnegan.com                     Tampa, Florida 33601
susan.tull@finnegan.com                       (813) 221-3900 (Telephone)
justin.loffredo@finnegan.com
anthony.berlenbach@finnegan.com
                                              *Counsel for E-One, Inc. and REV Group, Inc.*


## CERTIFICATE OF SERVICE

I HEREBY certify that on October 24, 2019, a true and correct copy of the foregoing

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE (DOC. 230) was

filed with the clerk of the Court by using the CM/ECF system. I further certify that I mailed

the foregoing document and the notice of electronic filing by first-class mail to the follow non-

CM/ECF participants: None.

                                              By:   /s/ *David L. Luikart*