**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PIERCE MANUFACTURING INC. and
OSHKOSH CORPORATION,

      Plaintiffs,

v.                                   Case No.:  8:18-cv-617-JSM-TGW

E-ONE, INC. and REV GROUP, INC.,

      Defendants.

_____

**PLAINTIFFS' *DAUBERT* MOTION TO EXCLUDE**
**THE TESTIMONY AND OPINIONS OF JOSEPH F. RAKOW, Ph.D.**

## **TABLE OF CONTENTS**

I.    RELEVANT BACKGROUND ................................................................. 1

    A.    The Patents-in-Suit.................................................................. 1

    B.    The Parties Have Already Construed the Claim Term "Coupled" ................. 2

    C.    Dr. Rakow's Opinions ............................................................. 3

        1.    Dr. Rakow Adopts a Different Definition of "Coupled" ..................... 4

        2.    Dr. Rakow's Invalidity Report Lacked Reliable Scientific Basis......... 6

        3.    Other Experts Identified Dr. Rakow's Failure to Validate (or Even Support) His Hypotheses ............................................. 7

II.   DR. RAKOW'S TESTIMONY AND OPINIONS ARE UNRELIABLE AND UNHELPFUL, AND SHOULD BE EXCLUDED...................................... 8

    A.    *Daubert* Does Not Allow Dr. Rakow to Invent New Definitions or Speculate ............................................................................ 9

    B.    Dr. Rakow's Testimony and Opinions are Based on an Incorrect Claim Construction, and are Therefore not Helpful. ................................. 10

    C.    Dr. Rakow's Testimony and Opinions are Unreliable.................................. 16

        1.    Dr. Rakow's Opening Report Fails to Disclose any Meaningful Analysis, Methodology, or the Requisite Calculations...................... 17

        2.    Dr. Rakow's "Errata" is Unreliable. ................................. 20

III.  CONCLUSION.................................................................... 23

IV.   LOCAL RULE 3.01(G) CERTIFICATION ............................................. 23

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Point of Care, Inc. v. Epocal, Inc.*,
   Civil Action No. CV-08-S-543-NE, 2012 U.S. Dist. LEXIS 196881
   (N.D. Ala. Jan. 18, 2012) ...................................................................................12, 13, 14

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014)........................................................................................16

*Banta Props., Inc. v. Arch Specialty Ins. Co.*,
   No. 10-61485-CIV, 2011 U.S. Dist. LEXIS 152930
   (S.D. Fla. Dec. 23, 2011) .................................................................................................22

*Bostick v. State Farm Mut. Auto. Ins. Co.*,
   321 F.R.D. 414 (M.D. Fla. 2017)....................................................................................10

*Cook v. Estate of Tessier*,
   402 F.3d 1092 (11th Cir. 2005) .......................................................................................10

*Cooper v. Marten Transport, Ltd.*,
   539 Fed. App'x 963 (11th Cir. 2013) ..............................................................................20

*Cordis Corp. v. Boston Sci. Corp.*,
   658 F.3d 1347 (Fed. Cir. 2011).......................................................................................10

*Cytologix Corp. v. Ventana Med. Sys.*,
   424 F.3d 1168 (Fed. Cir. 2005)......................................................................................13

*Daubert v. Merrell Dow Pharm.*,
   509 U.S. 579 (1993)................................................................................................ *passim*

*Hudgens v. Bell Helicopters/Textron*,
   328 F.3d 1329 (11th Cir.2003) .......................................................................................22

*In re Maxim Integrated Prod., Inc.*,
   No. 12-244, 2015 WL 5311264 (W.D. Pa. Sept. 11, 2015)........................................12, 14

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)........................................................................................................22

*Liquid Dynamics Corp. v. Vaughan Co.*,
   449 F.3d 1209 (Fed. Cir. 2006).......................................................................................13

*MarcTec, LLC v. Johnson & Johnson*,
   No. 07-cv-825-DRH, 2010 U.S. Dist. LEXIS 15789
   (S.D. Ill. Feb. 23, 2010) .......................................................................................13

*McClain v. Metabolife*,
   401 F.3d at 1245 .................................................................................................22

*Micro Chem., Inc. v. Lextron, Inc.*,
   317 F.3d 1387 (Fed. Cir. 2003)...........................................................................9

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91 (2011)................................................................................................3

*Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*,
   326 F.3d 1333 (11th Cir. 2003) .........................................................................10

*Rink v. Cheminova, Inc.*,
   400 F.3d 1286 (11th Cir. 2005) ...................................................................10, 20

*United States v. Abreu*,
   406 F.3d 1304 (11th Cir. 2005) ...........................................................................9

*United States v. Frazier*,
   387 F.3d 1244 (11th Cir. 2004) ..........................................................9, 10, 20, 21

**RULES**

Fed. R. Civ. P. 26(e) ..............................................................................................4, 8

Fed. R. Evid. 702 ................................................................................... *passim*

L.R. 3.01(G)..............................................................................................................23

Plaintiffs Pierce Manufacturing Inc. and Oshkosh Corporation (together, "Plaintiffs") respectfully move to exclude the testimony and opinions set forth in the July 26, 2019 and August 26, 2019 expert reports regarding the alleged invalidity and noninfringement of the patents-in-suit, of Dr. Joseph F. Rakow, expert witness of Defendants E-One, Inc. and REV Group Inc. (together, "Defendants").

Dr. Rakow's testimony and opinions in both of these reports rely on a newly-created claim construction inconsistent with the parties' agreed upon plain and ordinary meaning of that term.  For his report on validity, Dr. Rakow also failed to disclose information related to key methodology and calculations that formed the basis of his opinions.   Dr. Rakow's testimony and opinions therefore do not meet the standards of admissibility recognized under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and exclusion is both appropriate and necessary.

I.      **RELEVANT BACKGROUND**

A.      **The Patents-in-Suit**

In this patent infringement action, Plaintiffs assert that Defendants' Metro 100 Quint fire apparatus infringes U.S. Patent No. 9,597,536 (the "'536 patent") and U.S. Patent No. 9,814,915 (the "'915 patent") (together, the "patents-in-suit").[1]  The patents-in-suit are directed to and claim a quint configuration fire apparatus.  Specifically, independent claims 1 and 11 of each patent claim a quint configuration fire apparatus with numerous components such as single front and rear axles, water pumps, and tanks "coupled" to the chassis and a ladder

---

[1] Plaintiffs assert against Defendants' Metro 100 Quint claims 1-7, 1-7, 11-17, and 20 of the '536 patent, and claims 1-7 and 11-17 of the '915 patent.

1

assembly that is "configured to support a tip load of at least 750 pounds," "with the ladder assembly extended to the horizontal reach of at least 90 feet." *See* Ex. A ('536 patent) at 14:43-50, 15:51-58; Ex. B ('915 patent) at 14:28-33, 15:34-40. In addition, independent claims 1 and 11 of the '536 patent also require that the claimed fire apparatus have a water tank configured to contain at least 500 gallons of water. *See* Ex. A at 14:20-15:19, 15:31-16:26.

Dependent claims 5 and 15 of each patent further require that the apparatus be configured to support a tip load of at least 750 pounds when "the distal end of the ladder assembly is extensible to the horizontal reach of at least 90 feet when the ladder assembly is oriented in the sideward position." *See* Ex. A at 15:5-10, 16:11-16; Ex. B at 14:55-60, 16:3-8.

**B.    The Parties Have Already Construed the Claim Term "Coupled"**

Procedurally, the parties have disputed the meaning, or construction, of a number of claim terms, one set of which are "coupled," "coupling," and "rotatably coupling." *See* D.I. 107 at 14. These terms appear many times throughout the asserted claims, and describe the physical relationship between the components in the claimed fire apparatus. *See, e.g.*, Exs. A and B at claims 1, 4, 6, 10, 11, 14, 16; Ex. A at claim 20. Defendants proposed construing these terms, contending that their construction "may be relevant to at least invalidity to determine what must have been present in the prior art." D.I. 107 at 28. The dispute over the construction of these similar terms centered on the construction of "coupled," for which Plaintiffs proposed as meaning "directly or indirectly attached," and Defendants proposed as meaning "linked or joined." *Id.* Although the parties briefed the construction of these terms, Defendants conceded that there was no meaningful difference between the proposed constructions, D.I. 148 at 21, and the parties agreed to construe the term in accordance with its

plain and ordinary meaning, which comported with Plaintiffs' proposed construction for these terms as directly or indirectly attached.  *See* D.I. 154 at 2; Ex. C (Claim Construction Hr'g. Tr.) at 59:3-12.

## C.    Dr. Rakow's Opinions

Defendants claim that they do not infringe the patents, and the patents-in-suit are invalid.  To prevail, Defendants must prove invalidity of all asserted claims by clear and convincing evidence.  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).  As part of their efforts to establish invalidity, Defendants rely on the testimony of their expert witness Dr. Joseph F. Rakow, who submitted a report on July 26, 2019, in which he opined about the purported invalidity of all asserted claims of the patents-in-suit.  *See* Ex. D (Dr. Rakow's "opening report.").[2]  Even though Dr. Rakow's opening report was submitted on the last day by which a party may submit an expert report on issues where it bears the burden of proof, *see* D.I. 43, D.I. 160, Dr. Rakow's opening report was followed by a "corrected" report submitted over a month later on August 29, 2019, as well as an "errata" submitted on September 25, 2019 – two months after the deadline for expert reports on which a party bear the burden of proof, two weeks after Plaintiffs' experts' depositions during which these experts explained why Dr. Rakow's opening report was deficient, and less than 12 hours before Dr. Rakow's deposition – which in reality disclosed newly-developed substantive opinions and supporting calculations.

---

[2] While Dr. Rakow submitted his opening report on July 26, 2019, Exhibit D is the "corrected" opening report of Dr. Rakow submitted on August 29, 2019, in which Dr. Rakow fixed some erroneous cross-references and typographical errors.  References in this motion to Dr. Rakow's opening report are to his August 29, 2019 corrected opening report on invalidity.  References in this motion to Dr. Rakow's rebuttal report refer to his August 26, 2019 report on noninfringement.

*See* D.I. 230 at 9-10.[3]

Dr. Rakow also submitted a rebuttal report on the purported non-infringement of the Metro 100 Quints on August 26, 2019.  *See* Ex. H (Rakow Rebuttal Report).

### 1.     Dr. Rakow Adopts a Different Definition of "Coupled"

Dr. Rakow opined in his 164-page opening report that the patents-in-suit are invalid because they were anticipated by or obvious in light of a number of prior art references and products.  According to Dr. Rakow, this is because all limitations of these patents' asserted claims were present and disclosed in the prior art.  To establish that these claim limitations had already been disclosed in the prior art, Dr. Rakow analyzed each claim limitation against the prior art, but when he analyzed limitations reciting the term "coupled," Dr. Rakow did not apply the parties' agreed-upon plain and ordinary meaning construction for "coupled" of being directly or indirectly attached.  Instead, Dr. Rakow deemed two recited components as "coupled" if displacement of one component is "not independent" of displacement of the other component.  For example, when analyzing whether the claim term "a pump coupled to the chassis" had been disclosed by a prior art apparatus, the Hinsdale Rosenbauer Quint, Dr. Rakow opined that to be the case simply because:

> *As displacement of the pump is not independent of displacement of the chassis*, the Hinsdale Rosenbauer Quint includes "a pump coupled to the chassis."

*See* Ex. D at ¶ 56 (emphasis added).  Dr. Rakow applied this understanding of "coupled" for each of the prior art reference or product on which he relies, but he never explained how or

---

[3] This untimely "errata" for Dr. Rakow's opening report also violates at least Fed. R. Civ. P. 26(e) and this Court's orders, and is the subject of Plaintiffs' pending motion to strike.  *See* D.I. 230.

from where he came up with this definition.  Ex. D at ¶¶ 46, 56, 57, 60, 61, 62, 151, 157, 158, 160, 161, 162, 324, 329, 330, 336, 337.  Dr. Rakow's understanding for whether two recited components are "coupled" – if displacement of one is not independent of displacement of the other – is not the same as the parties' agreed-upon construction for "coupled."[4]

In fact, until Dr. Rakow submitted his opening report, the parties have always applied the agreed-upon construction for "coupled" throughout this case, which has been pending since early 2018.  Indeed, as of April 2019, when Defendants amended their invalidity contentions, they made clear that with respect to each asserted claim reciting the term "coupled," they had applied the parties' "agreed upon construction" to the term "coupled" in their analysis, and had applied that agreed-upon construction in determining whether the limitations recited in the asserted claims had been disclosed in the prior art.  *See, e.g.*, Ex. G at claims 1, 4, 6, 10, 11, 14, 16.  With Dr. Rakow's opening report, he and Defendants had, for the first time in this case, suggested that "coupled" has a different meaning than that to which the parties had agreed.

Dr. Rakow also submitted a Rebuttal Expert on August 26, 2019.  Ex. H.  In that report, Dr. Rakow never identifies the claim constructions he uses or specifically identifies how he is defining the word "coupled."  *See generally* Ex. H.  He does state, however, that "patent claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses."  *See id.* at ¶ 15.  Therefore, it is apparent that Dr. Rakow applied the same newly-disclosed understanding and definition of "coupled" in his noninfringement report as he did in

---

[4] Dr. Rakow has also not asserted that his definition of "coupled" is the plain and ordinary meaning of term.  The reason for this is simple.  A person of ordinary skill in the art would not view his definition of coupled as the plain and ordinary meeting.  *See* Ex. J at ¶¶ 75-76.

his invalidity report, which definition again is different from and inconsistent with the construction to which the parties had agreed.

### 2.     Dr. Rakow's Invalidity Report Lacked Reliable Scientific Basis

One of the prior art products Dr. Rakow opined on in his Opening Report is a Rosenbauer Raptor apparatus sold to the Hinsdale Fire Department (the "Hinsdale Rosenbauer"). According to Dr. Rakow, the Hinsdale Rosenbauer discloses or renders obvious all limitations of the asserted claims. Yet, whereas the asserted claims from both patents-in-suit require that the claimed fire apparatus has a ladder assembly that is "configured to support a tip load of at least 750 pounds" and be able "to counterbalance a moment generated by the tip load with the ladder assembly extended to the horizontal reach of at least 90 feet" (claims 1 and 11) and that "the distal end of the ladder assembly is extensible to the horizontal reach of at least 90 feet when the ladder assembly is oriented in the sideward position" (claims 5 and 15), Dr. Rakow's opening report disclosed only his *ipse dixit* opinion that the ladder can be extended 90 feet horizontally off the side of the truck. *See* Ex. D at ¶¶ 107-111, 138-139, 248-249, 263-264. Dr. Rakow never provided any opinion whatsoever that the Hinsdale Rosenbauer can counterbalance a 750-pound tip load in that orientation, *id.*, nor did he ever measure, let alone calculate, just how much weight could be supported in the sideward position. *See id.*; Ex. I (Rakow Dep. Tr.) at 103:9-16.

Moreover, whereas most of the asserted claims of the '536 patent also require that the claimed fire apparatus have a water tank configured to contain at least 500 gallons of water, Dr. Rakow never timely disclosed any analysis, calculations, or methodology, as to just how the Hinsdale Rosenbauer – which has only a 300-gallon tank – would actually be modified to

accommodate a larger tank or if its axles could support the additional 2,000 pounds of weight that the larger tank would add.  Nor did Dr. Rakow demonstrate how a person of ordinary skill in the art ("POSA") would be able to make these modifications with any reasonable expectation of success.  *See* Ex. J (Kurfess Rebuttal Report) at ¶¶ 114-121.  Rather, Dr. Rakow speculated simply and generally that a POSA *would* know that larger tanks are desirable, that a POSA *would* recognize that he or she *would* have to lighten other components on the truck, and that weight *would* have to be shifted on the truck.   *See* Ex. D at ¶¶ 87-98.

### 3.     Other Experts Identified Dr. Rakow's Failure to Validate (or Even Support) His Hypotheses

Plaintiffs' expert, Dr. Thomas Kurfess, timely responded to Dr. Rakow's opening report as conclusory and lacking support.  *See generally,* Ex. J.  For example, Dr. Kurfess criticized Dr. Rakow for opining it would have been obvious to add a 500-gallon water tank to the Hinsdale Rosenbauer without doing any analysis or calculations to determine whether such modification would indeed be physically possible.  *See* Ex. J at ¶¶ 113, 115-116, 120-121.  Dr. Kurfess also criticized Dr. Rakow for failing to identify where on the apparatus the larger water tank could even be placed.  *id*. at ¶¶ 118-119.  Dr. Kurfess further pointed out that Dr. Rakow did not attempt to establish that the Hinsdale Rosenbauer could counterbalance a 750-pound tip load at 90 feet of horizontal reach when the ladder is oriented to extend off the side, as required by claims 5 and 15 of each patent.  *Id*. at ¶¶ 124-128.   Additionally, Mr. Alan Saulsbury, a former fire apparatus designer and another expert witness for Defendants, confirmed during his deposition that the type of weight distribution and modifications identified by Dr. Rakow for the Hinsdale Rosenbauer required extensive and complex calculations that "would take days to put together."  *See* Ex. K (Saulsbury Dep. Tr.) at 149:14-

15; *see also* 149:10-150:17, 155:2-12, 181:19-182:18, 208:21-209:6.

One month after Dr. Kurfess submitted his report in response to Dr. Rakow's opening report, and almost two weeks after Dr. Kurfess's and Mr. Saulsbury's depositions, and less than 12 hours before his own deposition, Dr. Rakow tried to fix his mistakes.  He submitted an "errata" which, in addition to correcting typographical errors, added the calculations regarding the Hinsdale Rosenbauer previously missing from his opening report and his opinions.  *See* Exs. L, M (New Water Tank Calculations and New Ladder Calculations).  In other words, only after Dr. Kurfess and Mr. Saulsbury repeatedly criticized his opening report for failing to include these calculations, did Dr. Rakow then provide these calculations on the eve of his deposition.  Yet these criticisms were not new, Plaintiffs have been objecting to Defendants lack of calculations and analysis underlying their invalidity contentions since at least October 2018.  *See* Ex. N (Plaintiff Pierce's Oct. 22, 2018 interrogatory responses) at 5-6.

Because Dr. Rakow's "errata" violates at least Fed. R. Civ. P. 26(e) and this Court's orders, this late errata" cannot be considered as part of Dr. Rakow's opening report and must be stricken for the reasons articulated in Plaintiffs' pending motion to strike.  *See* D.I. 230. Nevertheless, Dr. Rakow's eleventh-hour attempt to add to his opening report the requisite but previously omitted analysis, even if allowed, also does not change the fact that Dr. Rakow's invalidity opinions are unreliable and not helpful to the factfinder.

## II.     DR. RAKOW'S TESTIMONY AND OPINIONS ARE UNRELIABLE AND UNHELPFUL, AND SHOULD BE EXCLUDED.

Dr. Rakow's invalidity and non-infringement testimony and opinions are premised on an incorrect claim construction that is inconsistent with the meaning agreed to by the parties, and do not provide the necessary basis and methodology upon which he formed his opinions.

Neither reliable nor helpful to a factfinder, Dr. Rakow's testimony and opinions are precisely the kind this Court should exclude before trial.

> ### A.   *Daubert* Does Not Allow Dr. Rakow to Invent New Definitions or Speculate

Federal Rule of Evidence 702 requires expert testimony to be based on sufficient facts or data, and to be the product of reliable methods and principles:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determinate a fact in issue;
> (b)   the testimony is based on sufficient facts or data;
> (c)    the testimony is the product of reliable principles and methods; and
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

Pursuant to the landmark Supreme Court decision *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny, expert testimony is admissible only if it is both relevant and reliable. *Id.* at 589.

The district court's decision to admit expert testimony under *Daubert* in a patent case follows the law of the regional circuit. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003). The Eleventh Circuit has recognized that "Rule 702 compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert scientific and technical evidence." *United States v. Abreu*, 406 F.3d 1304, 1306 (11th Cir. 2005) (*citing United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)).

The Eleventh Circuit has therefore adopted a "rigorous" three-part inquiry to determine the admissibility of expert testimony under Rule 702.  *Frazier*, 387 F.3d at 1260.  Under this rigorous three-party inquiry, this Court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005) (internal citations omitted).  These are three discrete requirement: qualifications, reliability of methodology, and helpfulness.  *See Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (although there is "some overlap" among these inquiries, they "are distinct concepts that courts and litigants must take care not to conflate.").  The proponent of the expert testimony carries a "substantial burden under Rule 702" to demonstrate that all of these prongs have been met.  *Cook v. Estate of Tessier*, 402 F.3d 1092, 1107 (11th Cir. 2005); *Bostick v. State Farm Mut. Auto. Ins. Co.*, 321 F.R.D. 414, 417 (M.D. Fla. 2017).

Here, Dr. Rakow's testimony and opinions do not meet at least two of the three requirements for admission under Rule 702 because they are not based upon a reliable methodology and are not helpful.

### B.   Dr. Rakow's Testimony and Opinions are Based on an Incorrect Claim Construction, and are Therefore not Helpful.

As the Federal Circuit makes clear, when an expert's testimony is based on an "incorrect understanding of the claim construction," the Court "must disregard the testimony." *Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011).  Yet, instead of using the construction of the claim term "coupled" to which the parties agreed, Dr. Rakow invented

10

his own brand-new definition that was never previously disclosed by Defendants. It appears that his noninfringement opinions are based upon this same brand-new and erroneous construction. Although the parties have agreed and informed this Court that "coupled" means "directly or indirectly attached," *see* D.I. 107 at 14, Ex. C at 59:3-12, Dr. Rakow opined – for the first time in this case – that two recited components are "coupled" if displacement of one component is "not independent" of displacement of the other component. *See* Ex. D at ¶¶ 56, 57, 60, 61, 62, 151, 157, 158, 160, 161, 162, 324, 329, 330, 336, 337. As explained by Dr. Kurfess, Dr. Rakow's understanding of "coupled" is not the same as the parties' agreed construction of "directly or indirectly attached" and is faulty. *See* Ex. J at ¶¶ 74-79.[5] Dr. Rakow provides no basis or support from the patents-in-suit or any extrinsic evidence for his proposed definition. This is not surprising since the patents make clear that the plain and ordinary meaning of the term is "directly or indirectly attached" and this is the construction the parties agreed upon. Dr. Rakow apparently just made up his definition out of whole cloth.[6]

The clearest explanation Dr. Rakow could proffer for his new understanding and definition of "coupled" is related to his analysis for claim 20 of the '536 patent, where Dr. Rakow vaguely opined "this body assembly is by definition coupled to the chassis, as

---

[5] Nor does Dr. Rakow even attempt to assert that his proposed construction of "coupled" is consistent with the plain and ordinary meaning of the term. Even if he did, Dr. Kurfess establishes that it is not the plain and ordinary meaning. Ex. J ¶¶ 75-76.

[6] Even if the parties had not agreed upon the construction of *coupled* as being directly or indirectly attached, the construction used by Dr. Rakow was never proposed by Defendants or disclosed in any of their previous contentions and Defendants have never contended that it is the plain and ordinary meaning of the term. *See, e.g.,* D.I. 107 at 14-15, As such, any argument in favor of Dr. Rakow's newly minted construction has been waived. Had Plaintiffs known this was going to be the construction proposed by Defendants, Plaintiffs would not have agreed to withdraw the request for the Court to construe the "coupled" terms.

*movement of one causes movement of the other*."   *See* Ex. D at ¶ 46 (emphasis added).   But

this a far cry from the proper construction of "directly or indirectly attached," not least because

Dr. Rakow's definition does nothing to establish how the two components are *attached*.  *See*

Ex. J at ¶ 76.   Indeed, as analogized by Dr. Kurfess, a person sitting on a truck would be

"coupled" to the chassis of that truck under Dr. Rakow's definition because the movement of

the chassis causes the movement of that person.   *Id.*   Yet, this cannot be the case under the

proper construction of "coupled," as that person is not directly or indirectly *attached* to the

chassis.  *Id.*   Consequently, Dr. Rakow's current definition of "coupled" is not just wrong, but

necessarily inconsistent with the construction to which the parties had agreed.   In addition to

being inconsistent, Dr. Rakow's current definition also cannot be reconciled with the

construction to which the parties had agreed, and cannot be an application of the correct

construction.   With his inconsistent understanding and definition of "coupled," Dr. Rakow

failed to apply the construction agreed to by the parties and should be stricken as unreliable

and not helpful to the jury or this Court.

Indeed, "[i]t is well-settled that an expert can offer an opinion on how a court's claim

construction should be applied to the facts of a case, but cannot offer an opinion that contradicts

or disregards a court's claim construction rulings."   *In re Maxim Integrated Prod., Inc.*, No.

12-244, 2015 WL 5311264, at *4 (W.D. Pa. Sept. 11, 2015).   Consequently, in such a scenario,

District Courts including those in this Circuit have consistently excluded expert opinions

applying the wrong claim construction.   *See, e.g., Abbott Point of Care, Inc. v. Epocal, Inc.*,

Civil Action No. CV-08-S-543-NE, 2012 U.S. Dist. LEXIS 196881, at *41 (N.D. Ala. Jan. 18,

2012) (excluding expert testimony that imposed an additional requirement to the construed

claim); *MarcTec, LLC v. Johnson & Johnson*, No. 07-cv-825-DRH, 2010 U.S. Dist. LEXIS 15789, at *12 (S.D. Ill. Feb. 23, 2010) ("This Court excluded expert testimony premised on this mischaracterization of the claim construction as inadmissible . . . because it did not address the requirements of the Court's claim construction and is irrelevant to the question of infringement."); *see also Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (finding no abuse of discretion where the district court excluded the expert opinion evidence as irrelevant because it was based on an impermissible claim construction).

Similarly, Dr. Rakow's testimony and opinions regarding invalidity of the patents-in-suit were based on an impermissible claim construction which, as explained by Dr. Kurfess, is inconsistent with the parties' agreed-upon construction. *See* Ex. J at ¶¶ 74-79. *See Abbott*, 2012 U.S. Dist. LEXIS 196881, at *44 ("[A]ny expert opinion that is inconsistent with the court's claim constructions should be excluded because the jury might be confused about which construction to follow.").  Dr. Rakow's noninfringement opinions are faulty and invite error for the same reason.

Moreover, that the proper construction for "coupled" was one agreed to by the parties, rather than one decided by the Court, does not change the inquiry, because if Dr. Rakow is allowed to proffer a different and inconsistent claim construction, he would present a clear risk of confusing the jury with his opinions, especially since Defendants had never previously disclosed this proposed construction and if he had, Plaintiffs would not have agreed to it. *See* D.I. 107 at 14-15; *see Cytologix Corp. v. Ventana Med. Sys.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) (finding it "improper" for the court to allow the parties, by agreement, to present conflicting claim constructions to the jury, because "[t]he risk of confusing the jury is high

when experts opine on claim construction before the jury even when, as here, the district court makes it clear to the jury that the district court's claim constructions control."). Where the parties already agreed on the construction for "coupled," Dr. Rakow cannot now present a different and inconsistent construction to the jury, or worse, present conflicting opinions based on this different and inconsistent construction. *See Abbott*, 2012 U.S. Dist. LEXIS 196881, at *36 (opining that decisions precluding expert testimony inconsistent with established claim constructions are "consistent with the courts' general disfavor for a party's attempts to alter a claim construction ruling through later testimony") (citing cases).

Nor can Defendants argue that Dr. Rakow's definition of "coupled" constitutes his opinion on "how [the] court's claim construction should be applied to the facts of a case." *In re Maxim Integrated Prod.*, 2015 WL 5311264, at *4. As discussed above and explained by Dr. Kurfess, Dr. Rakow's definition of "coupled" is necessarily inconsistent with that agreed to by the parties, "directly or indirectly attached," as Dr. Rakow offered no explanation on how the components are *attached* to each other. *See* Ex. J at ¶¶ 74-79. Indeed, the parties also represented to this Court that as part of their agreed-upon construction for "coupled," the concept of attachment, or "bolted" as represented to the Court, is necessarily included. *See* Ex. C at 59:3-12 (emphasis added):

> I would just clarify that, yes, our construction includes the frame, and I also would like to point out that the parties had originally briefed the "coupling" term but the parties have agreed now that that does not need to be argued, and the parties agree that "coupling" could be directly or indirectly coupling, and so the ladder assembly
> Doesn't have to be directly ***bolted*** onto the frame, it can go through intermediate pieces of the fire truck, but the chassis does include the frame, the engine, the front cab, all those things that we talked about, Your Honor.

14

Moreover, Dr. Rakow's own testimony makes clear that his definition of "coupled" cannot be an application of the correct construction and cannot be reconciled with the correct construction, as he did not know whether the relevant components in the prior art are in fact "attached" to each other as required by the asserted claims.  For example, claims 6 and 16 of each patent-in-suit require that a pair of outriggers be "coupled" to the chassis.  With respect to the Hinsdale Rosenbauer, one of the prior art products Dr. Rakow analyzed, Dr. Rakow had no idea how the outriggers of the Hinsdale Rosenbauer were coupled to the Hinsdale Rosenbauer:

> Q. Okay. Are they mounted to the top of the frame?
>
> A. I don't -- I don't have that specific level of detail. They do extend and retract in a horizontal direction, and I would say that those outriggers extend from opposing lateral sides of the chassis on that vehicle. You can see it from the outside of the vehicle and it's very much like what I have on the left side of figure 4 here, but I don't -- I don't have the interior details particular to that housing and -- and frame rail on that vehicle.

*See* Ex. I at 311:15-312:12.  But Dr. Rakow did understand that the asserted claims require that the outriggers be *attached*.  Indeed, when asked the same question but about the fire apparatus disclosed in the patents-in-suit, Dr. Rakow understood that the recited outriggers are "*attached . . . to the frame rails.*"  *See* Ex. I at 308:10-309:21 (emphasis added).  As Dr. Rakow clearly did not know whether components of the prior art are in fact *attached* to each other, it cannot be said that his newly-created definition of "coupled" is just an application of its proper construction.

Similarly, to the extent Defendants argue that Dr. Rakow's reliance on the incorrect

claim construction standard is harmless because Plaintiffs had admitted that certain components in the prior art are "coupled" to each other, such argument does not change the fact that Defendants carry the burden of proving invalidity by clear and convincing standard, that Dr. Rakow applied the *wrong* standard throughout his invalidity and noninfringement analysis, and that Dr. Rakow did not know how the components in the prior art were coupled to each other.  *See, e.g.*, Ex. D at ¶¶ 46, 56, 57, 60, 61, 62, 151, 157, 158, 160, 161, 162, 324, 329, 330, 336, 337.  Dr. Rakow clearly should have known of the agreed-upon construction but still affirmatively chose to use a different construction and must be held to that choice. Furthermore, as Dr. Rakow recognizes, Plaintiffs did not admit to a number of Defendants' request "under Defendants' apparent interpretation."  *Id.* at 22 n. 17.

Having done no analysis on how the relevant components are "coupled" to each other as the parties have defined that term, Dr. Rakow cannot competently testify how the prior art anticipates or renders obvious the asserted claims using the proper and correct claim constructions.  Nor can he opine on the noninfringement of the claims using an improper claim construction.  Instead of being helpful, Dr. Rakow's testimony, premised on a new, different, and incorrect claim construction, will accomplish the opposite and necessarily confuse the jury and this Court.  This Court should consequently exclude Dr. Rakow's testimony and opinions on invalidity and noninfringement.  *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014) (where the Court based its analysis on an incorrect claim construction, noting that "[t]his error, alone, would require reversal and remand.").

### C.    Dr. Rakow's Testimony and Opinions are Unreliable.

Dr. Rakow's testimony and opinions in his opening report on validity are also

unreliable because he opined that the asserted claims of the patents-in-suit are invalid without relying upon any analysis, calculations, or methodology. Also, the little information he did manage to disclose at the eleventh hour, after his opening's report was repeatedly criticized by Plaintiffs' and even Defendants' expert as unreliable, does not render his opinions reliable under Fed. R. Evid. 702 and *Daubert*.

        **1.**      **Dr. Rakow's Opening Report Fails to Disclose any Meaningful Analysis, Methodology, or the Requisite Calculations.**

Dr. Rakow's opening report is full of unsupported speculations not based on any reliable methods or procedures. Consequently, his opinions disclosed in that report are precisely the type *Daubert* mandates must be excluded. *See Daubert*, 509 U.S. at 589-90 ("The subject of an expert's testimony must be scientific knowledge. The adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation.") (internal quotes omitted).

In his opening report, Dr. Rakow opined that the Hinsdale Rosenbauer anticipated or rendered obvious the asserted claims. Yet, Dr. Rakow provided no analysis, no methodology, and no calculations on the Hinsdale Rosenbauer, which would need to be re-engineered to accommodate a larger tank and the extra weight, and whose ladder assembly has to counterbalance a tip load of 750 pounds when the ladder assembly was extended 90 feet horizontally off the side of the apparatus, to show that the Hinsdale Rosenbauer could have in fact anticipated or rendered obvious the asserted claims. *See* Ex. J at ¶¶ 114-121. As made clear by Dr. Kurfess and Defendants' expert Mr. Saulsbury, such analysis and calculations are

not only necessary for Dr. Rakow's analysis, but they are complicated and not the kind that a POSA could have readily understood or assumed, as they "would take days to put together." *See* Ex. J at ¶¶ 113, 115-128; Ex. K at 149:14-15; *see also* 149:10-150:17, 155:2-12, 81:19-182:18, 208:21-209:6.   Indeed, as early as October 2018, Plaintiffs had notified Defendants that Defendants' invalidity theory, which were similar to Dr. Rakow's opinions and lacked any meaningful analysis and calculations, were not sufficient.  *See* Ex. N at 5-6.

It was not until September 25, 2019 – two months after the original submission deadline for opening reports, two weeks after Plaintiffs' experts' depositions, and less than 12 hours before Dr. Rakow's deposition – that Dr. Rakow tried to add new calculations under the guise of an "errata" to his opening report.  *See* Exs. L, M.  As admitted by Dr. Rakow, this "errata" is the first time that he provided *any* analysis, methodology, or calculation for his opinion that the asserted claims are invalid, and that he performed the calculations in his "errata" after being "***motivated***" by Dr. Kurfess's criticism on the lack of calculations.  *See, e.g.*, Ex. I at 140:12-143:14 (emphasis added).  As discussed at length in Plaintiffs' pending motion to strike, D.I. 230, Dr. Rakow's "errata" should be stricken entirely, and Defendants should not be allowed to rely on any information in Dr. Rakow's "errata" in any motion, at any hearing, or at trial.

Without this "errata," Dr. Rakow's opinions are based on nothing – no calculations, analysis, or methodology that existed at the time Dr. Rakow wrote his opening report.  Indeed, Dr. Rakow simply speculated that the Hinsdale Rosenbauer *could* invalidate the asserted claims.  More importantly, Defendants did not even ask this Court for leave from the scheduling order to offer Dr. Rakow's untimely "errata" in an attempt to prove that he thinks

he speculated correctly.[7]

Indeed, in forming his opinions in his opening report Dr. Rakow never conducted any analysis or calculations as to how the Hinsdale Rosenbauer would actually be modified to accommodate a larger tank or if its axles could support the additional weight, even though it had only a 300-gallon tank and the asserted claims recite a 500-gallon tank. *See* Ex. D at ¶¶ 115-120. Nor did Dr. Rakow demonstrate how a POSA would be able to make these modifications with any reasonable expectation of success. *Id*. at ¶¶ 114, 121.

Similarly, Dr. Rakow speculates that a POSA would know that larger tanks are desirable, that he or she would recognize that he or she would have to lighten other components on the truck, and that weight would have to be shifted on the truck. *Id.* at ¶¶ 87-98. But he never identified what actual components would be lightened or by how much; he only asserted that they *could* be lightened. *Id.* Dr. Rakow also did not identify the weight capacity of the axles on the Hinsdale Rosenbauer or whether these axles could support the weight of the larger water tank and the modified components. *Id.* Finally, Dr. Rakow did not demonstrate just how the ladder assembly on the Hinsdale Rosenbauer could counterbalance a tip load of 750 pounds when the ladder assembly was extended 90 feet horizontally off the side of the apparatus, opining only that the ladder can be extended 90 feet horizontally off the side of the truck and making no mention of the weight it could support at that extension and orientation. *Id*. at ¶¶ 107-111, 138-139, 248-249, 263-264. Dr. Rakow also conceded he never measured how much weight could be supported in the sideward position. *See* Ex. I at 108:15-22. So, Dr. Rakow did not even offer an opinion about supporting 750 pounds, let alone one that had

---

[7] Because if *Daubert* means anything, it means that experts are not allowed to speculate.

been validated by tests, calculations, or sound scientific methodology.

Dr. Rakow's report of speculations cannot be admissible under *Daubert*. *See Rink*, 400 F.3d at 1291 (11th Cir. 2005) (stating that a court must "ensure that [such] speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation of expert testimony") (internal citations omitted); *Cooper v. Marten Transport, Ltd.*, 539 Fed. App'x 963, 965 (11th Cir. 2013) (holding that the district court did not abuse its discretion in excluding expert testimony as unreliable when a biomechanical engineer based his opinion on his own learning and thinking about the case and not on any independent testing or processes of elimination). Having conducted no analysis or calculations, and having disclosed no methodology, for his invalidity opinions in his opening report, Dr. Rakow's testimony and opinions related to the Hinsdale Rosenbauer cannot be admissible, especially as Dr. Kurfess and Mr. Saulsbury confirmed that such analysis and calculations are necessary for Dr. Rakow's opinions.

## 2.     Dr. Rakow's "Errata" is Unreliable.

But even if this Court does not strike Dr. Rakow's "errata" in its entirety, Dr. Rakow's testimony and opinions still cannot satisfy the stringent requirements of Rule 702 and *Daubert*. It is not sufficient that Dr. Rakow's testimony and opinions contain *some* support – rather, "[w]hen evaluating the reliability of scientific expert opinion, the trial judge must assess 'whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue.'" *Frazier*, 387 F.3d at 1262 (quoting *Daubert*, 509 U.S. at 592-93). *Daubert* sets forth several factors that should be considered in determining reliability, including: "(1) whether the

expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." 509 U.S. at 590.  These factors are not exhaustive and might not apply in every case.  *Frazier*, 387 F.3d at 1262. It is left to the district court to ensure that the expert's testimony is supported by "appropriate validation – *i.e.* 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590.

Even if Dr. Rakow may rely on his "errata," the analysis and calculations in his "errata" are less than bare-bones.  *See* Exs. L, M.  Indeed, in each Exhibit L and Exhibit M, Dr. Rakow's calculations and analysis comprise some general mathematical formulas, accompanied by a number of figures and pictures.  Missing from these exhibits are even the most rudimentary explanations as to the meaning of the calculations, the relevance of the figures and pictures, and most importantly, the significance of the analysis described in these exhibits and how they support Dr. Rakow's opinions that the Hinsdale Rosenbauer allegedly invalidates the asserted claims.  More importantly, missing altogether from Dr. Rakow's opening report and his "errata" is *any* of the factors *Daubert* held should be considered in determining reliability.  It is unclear if Dr. Rakow's methodology, to the extent he had one, (1) can be or has been tested, (2) subjected to peer review and publication, (3) has any potential rate of error, or (4) is generally accepted in the scientific community.  *Daubert*, 509 U.S. at 590.  In fact, neither Defendants nor Dr. Rakow has ever explained just *what* Dr. Rakow's methodology is, and neither provided any explanation or information on its reliability.  *See* Ex. I at 373:17-375:16; 375:21-376:22 (testifying on cross-examination that the "errata" are just "calculations" and

again failing to explain their significance").

Because *Daubert* requires that the expert's conclusions be supported by good grounds, the expert must show "good grounds for each step in the analysis—[meaning] that any step that renders the analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *McClain v. Metabolife*, 401 F.3d at 1245 (internal quotes omitted); *see also Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344 (11th Cir.2003) ("[A]n expert's failure to explain the basis for an important inference mandates exclusion of his or her opinion."). Thus, the evidence must be sound and thoroughly explained. *Id.* As discussed above, Dr. Rakow provided no information, let alone good grounds, for his purported methodology. Moreover, according to Dr. Rakow's testimony, the calculations and analysis disclosed in his eleventh-hour "errata" seemed to have been motivated by Dr. Kurfess's opinions, further undermining the reliability of Dr. Rakow's testimony and opinions. *See* Ex. I at 140:12-143:14.

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999), the Supreme Court upheld the trial court's exclusion of an expert's testimony, where the expert utilized a test for which the Court found no indication in the record that other experts in the industry use the same test, and found no articles or papers validating the test. Dr. Rakow's methodology, if any, suffers from the same type of defect as that in *Kumho Tire*, and should similarly be excluded. *See also Banta Props., Inc. v. Arch Specialty Ins. Co.*, No. 10-61485-CIV, 2011 U.S. Dist. LEXIS 152930, at *11 (S.D. Fla. Dec. 23, 2011) ("The Court finds that Mellinger's methodology fails to satisfy the *Daubert* standard. Mellinger essentially created a scientific formula, took raw data gathered by an uncritical eye, ran it through a spreadsheet, and came to a calculation on

22

which windows and doors were damaged.  There is no evidence that Mellinger's technique has been tested or peer reviewed.").

### III.    CONCLUSION

Dr. Rakow's testimony and opinions regarding the invalidity and noninfringement of the asserted claims, as provided in his opening and rebuttal reports, must be excluded.  Because he did not use the agreed-upon claim construction, the caselaw requires this Court to disregard his testimony.  And because there were no analysis, calculations, or methodology in support of his testimony and opinions on validity, Dr. Rakow has failed to follow the scientific method. Dr. Rakow's unsupported speculation cannot be "fixed" a few hours before his deposition – to the extent not stricken by this Court in its entirety, his untimely efforts fall far short of the reliability requirements set forth in Fed. R. Evid. 702 and *Daubert*.  Consequently, Dr. Rakow's testimony and opinions are unreliable, can provide no help to the jury or the Court, and can serve to only confuse the fact finder.  Such testimony and opinions must be excluded.

### IV.    LOCAL RULE 3.01(G) CERTIFICATION

Pursuant to Local Rule 3.01(g), Plaintiffs' counsel conferred with Defendants' counsel regarding Plaintiffs' current motion.  Counsel for Defendants does not agree to the relief sought in Plaintiffs' motion.

DATED: October 30, 2019

s/David C. Willis

DAVID C. WILLIS, ESQUIRE
Florida Bar No. 0477435
E-mail:  dwillis@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 South Orange Avenue, Suite 1400
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133

- and -

STEVE D. BERLIN, ESQUIRE
Florida Bar No. 823511
E-mail:  sberlin@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
100 North Tampa Street, Suite 2000
Tampa, FL  33602-5830
Phone: 813-472-7511
Fax:     813-221-4752

- and -

JOSHUA M. WEEKS, ESQUIRE
*Admitted Pro Hac Vice*
Georgia Bar No. 545063
E-mail:  Joshua.Weeks@alston.com
LINDSAY C. CHURCH, ESQUIRE
*Admitted Pro Hac Vice*
Georgia Bar No. 651190
E-mail:  Lindsay.Church@alston.com
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street, Suite 4200
Atlanta, GA  30309-3424
Phone: 404-881-7000
Fax:     404-881-7777

- and -

TODD B. BENOFF, ESQUIRE
*Admitted Pro Hac Vice*
California Bar No. 192983
E-mail:  Todd.Benoff@alston.com
ALSTON & BIRD LLP
333 South Hope Street
16th Floor
Los Angeles, CA  90071-3004
Phone: 213-576-1000
Fax:     213-576-1100

- and -

THOMAS W. DAVISON, ESQUIRE
Florida Bar No. 55687
E-mail:  Tom.Davidson@alston.com
SCOTT J. PIVNICK, ESQUIRE
*Admitted Pro Hac Vice*
D.C. Bar No. 455195
E-mail:  Scott.Pivnick@alston.com
ALSTON & BIRD LLP
The Atlantic Building
950 F Street NW
Washington, DC  20004-1404
Phone: 202-239-3300
Fax:     202-239-3333

- and -

STEPHEN YANG, ESQUIRE
New York Bar No. 5123492
E-mail:  Stephen.Yang@alston.com
*Admitted Pro Hac Vice*
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016-1387
Phone: 212-210-9510
Fax:     212-210-9444

***Attorneys for Pierce Manufacturing Inc.
and Oshkosh Corporation***

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of October, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:  None.

s/David C. Willis
DAVID C. WILLIS, ESQUIRE
Florida Bar No. 0477435
E-mail:  dwillis@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
300 South Orange Avenue, Suite 1400
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133

***Attorney for Pierce Manufacturing Inc. and Oshkosh Corporation***

26

12823162.v1