### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

PIERCE MANUFACTURING, INC. and
OSHKOSH CORPORATION,

     Plaintiffs,                     Case No.: 8:18-cv-00617-JSM-TGW

v.

E-ONE, INC. and REV GROUP, INC.,

     Defendants.

_____

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' *DAUBERT* MOTION TO
### EXCLUDE THE TESTIMONY AND OPINIONS OF JOSEPH F. RAKOW, Ph.D.

## I.     INTRODUCTION

Plaintiffs' motion to exclude the testimony of Dr. Rakow is premised on a series of false suppositions and hollow arguments. First, Plaintiffs contend that the entirety of Dr. Rakow's opinions in this case should be excluded because he allegedly applied a claim construction to "coupled"/"coupling" different from the agreed-upon construction. But there was no such agreement, only that the parties would apply the plain and ordinary meaning of the terms in question. And that is exactly what Dr. Rakow did. That his understanding of the plain and ordinary meaning of "coupled"/"coupling" differs from that of Plaintiffs' expert is not grounds to exclude his opinion. Moreover, there is no practical difference between the constructions applied by Defendants' expert or Plaintiffs' expert when their opinions are compared. Plaintiffs raise a series of hypotheticals regarding the alleged differences in construction, but those hypotheticals are found nowhere in the claims, products, or prior art at

issue.

Plaintiffs also attack Dr. Rakow's invalidity opinions as allegedly lacking a reliable scientific basis.  Plaintiffs' argument is premised on the assumption that Dr. Rakow's errata pages that were the subject of Plaintiffs' motion to strike, would be excluded from this case. But Plaintiffs did not prevail on their motion to strike, and their argument is thus misplaced. To the extent that Plaintiffs argue that the five pages of calculation in combination with the opinions expressed in Dr. Rakow's opening report are still inadequate, such argument goes to the weight of the evidence, not its admissibility.

Plaintiffs have failed to meet their burden to demonstrate that Dr. Rakow's opinions are contrary to the Court's *Markman* order or are otherwise unreliable.  Accordingly, for the reasons explained below, Plaintiffs' motion to exclude Dr. Rakow's expert testimony and opinions (Doc. 253) should be denied.

## II.     Legal Standard

When evaluating a party's challenge to an opponent's expert witness, the Court assumes the role of gatekeeper to ensure the reliability and relevance of the expert's testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  Rule 702 guides the inquiry, specifying that a qualified expert may testify as long as his opinion will aid the factfinder and is reliable, i.e., the opinion must stand on sufficient data, reliable methods, and the facts of the case.  *See id.*; Fed. R. Evid. 702.  Eleventh Circuit law grants a district court "substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant testimony is reliable." *Britt Green Trucking, Inc. v. FedEx Nat., LTL, Inc.*, 2014 WL 2861485,

at *6 (M.D. Fla. June 24, 2014) (quoting *United States v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999)).

Under *Daubert*, expert testimony should not be excluded if it offers something "beyond the understanding and experience of the average lay person." *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004); *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985). In determining whether expert testimony is admissible, courts should recognize a "liberal thrust [in] the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony." *U.S. v. Brown*, 415 F.3d 1257 (11th Cir. 2005). "It is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Rosenfield v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011); *see also Quiet Tech, DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333 (11th Cir. 2003). To the extent certain expert testimony may arguably be unhelpful, the proper remedy is not exclusion. Rather, "vigorous cross-examination [and] presentation of contrary evidence . . . are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see also Citizens Property Ins. Corp. v Simkar, LLC*, 813 F. Supp. 2d. 1356 (M.D. Fla. Sept. 26, 2011). Objections to an expert's methodology "go to weight and sufficiency, not admissibility." *Britt Green Trucking*, 2014 WL 2861485, at *7 (holding that an expert's proffered opinions satisfied the reliability requirement for admissibility).

Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in

cross-examination. *Kearney v. Auto-Owners Ins. Co.*, No. 8:06-cv-595-T-24TGW, 2007 U.S. Dist. LEXIS 80378, at *6 (M.D. Fla. Oct. 12, 2007). Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded. *Id.*

**III.   Dr. Rakow's Testimony and Opinions Are Reliable and Helpful and Satisfy the Admissibility Requirements**

**A.   Dr. Rakow Applied the Plain and Ordinary Meaning of the "Coupled" Terms, as Agreed Upon by the Parties**

Plaintiffs move to preclude the entirety of Dr. Rakow's opinions, based on his understanding of the terms "coupled," "coupling," or "rotatably coupling."[1] Doc. 253 at 8-16. But Plaintiffs rest their motion on the presumption that there is some established, enforceable construction of the "coupled" terms and that Dr. Rakow's opinions are somehow contrary to that established construction. Plaintiffs err on two counts. First, there is no agreed-upon definition for the "coupled" terms, and second, Dr. Rakow's opinions are not unreliable or excludable based on his understanding of and analysis regarding the "coupled" terms.

The Court issued a claim construction order construing four patent claim terms, none of which included the "coupled" terms. Doc. 158. Although the parties proposed competing constructions for the "coupled" terms in the Joint Claim Construction Statement, Doc. 107 at 14, they ultimately agreed that the plain and ordinary meaning governed and that the terms did not need construction by the Court. Doc. 154 at 2 ("After further discussion, the parties agree that each of [the 'coupled'] terms should be construed according to [their] plain and ordinary

---

[1] Herein after referred to as the "coupled" terms.

meaning, and therefore discussion of those terms at the upcoming claim construction hearing is unnecessary.").

But the parties, and certainly the Defendants, never conceded that only a single understanding of the plain and ordinary meaning of the "coupled" terms governed or that any particular definition should be adopted or endorsed as the governing construction. Following the Joint Claim Construction statement, the parties submitted their claim construction briefing. In particular, Defendants noted in their subsequent briefing that "Plaintiffs have shown no meaningful difference between 'linked or joined / linking or joining' and 'directly or indirectly attached[ing].' If two things are 'linked or joined,' they are necessarily either directly or indirectly attached to each other. Thus, it appears there is no substantive dispute between the parties as to the meaning of this term, and both parties have provided definitions that are consistent with the ordinary meaning of 'coupled.'" Doc. 148 at 25. The parties met and conferred prior to the *Markman* hearing and ultimately agreed that "each of [the 'coupled'] terms should be construed according to its plain and ordinary meaning, and therefore discussion of those terms at the upcoming claim construction hearing is unnecessary." Doc. 154 at 2. This is the only agreement reached jointly by the parties and presented to the Court. The Plaintiffs allege that the parties agreed upon the definition of that plain and ordinary meaning (Mot. at 3-5), but that is not the case. Plaintiffs' sole support for this assertion is their own counsel's concluding statements at the claim construction hearing. Mot. at 3 (citing Ex. C). Plaintiffs cannot point to an express agreement between the parties because one does not exist.

Plaintiffs now contend that Dr. Rakow's opinions should be struck because his understanding of the plain and ordinary meaning does not "comport with Plaintiffs proposed construction for these terms as directly or indirectly attached."  Mot. at 3.  But experts are permitted to introduce evidence and discuss the plain and ordinary meaning of terms to one skilled in the art when those terms are not construed.  A*pple, Inc. v. Samsung Electronics Co., Ltd.*, 12-cv-00630-LHK, 2014 U.S. Dist. LEXIS 22938 at *24, 2014 WL 660857 at *3 (N.D. Cal. Feb. 20, 2014) (citing *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009)) ("At trial, parties may introduce evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art, so long as the evidence does not amount to argu[ing] claim construction to the jury.").  And that is exactly what Dr. Rakow did.  He did not deviate from a Court-provided construction or some agreed-upon definition, but only explained the plain and ordinary meaning of terms not construed by the Court, advising the jury how one skilled in the art would interpret those terms.

To the extent Plaintiffs disagree with Dr. Rakow's opinion regarding the plain and ordinary meaning of the "coupled" terms to one of ordinary skill in the art, Plaintiffs may cross-examine Dr. Rakow at trial and present evidence via their own liability expert.  Dr. Rakow's interpretation of the meaning of the previously undefined "coupled" terms does not rise to the level of claim construction which conflicts with the Court's prior pronouncement, as Plaintiffs assert.  The cases cited by Plaintiffs are inapposite to the present situation because there is no Court-issued construction of the "coupled" terms and Dr. Rakow did not proffer any opinions contrary to the *Markman* order.

Moreover, contrary to Plaintiffs' argument, Dr. Rakow's understanding and application of the "coupled" terms to the prior art is not presenting new, previously undisclosed, or inconsistent arguments. Mot. at 11-13. Indeed, Dr. Rakow's understanding of the plain and ordinary meaning of "coupled" is not substantially different from Plaintiffs' proposed understanding. Plaintiffs do not identify a single claim limitation where the difference in Dr. Rakow's understanding of the plain and ordinary meaning of the "coupled" terms resulted in a substantive difference in his opinions. Indeed, the only example they provide is whether "a person sitting on the truck would be 'coupled' to the chassis of that truck" (Mot. at 12), but none of the claim limitations have anything to do with people sitting on top of the truck. Moreover, applying either Dr. Rakow's or Dr. Kurfess's (Plaintiffs' expert) understanding of "coupled" to this hypothetical would achieve the same result. If the forces of friction or some other connective means were applied (e.g. straps), the person sitting on the truck would both be attached to the truck (either via friction or some connective means) and the person would accordingly move when the truck moved. If the person were not attached to the truck via some force or other connective means, they would not move with the truck but would instead fall or slide off of it when the truck moved. Simple common sense highlights the lack of substance underlying Plaintiffs' complaint. Indeed, Plaintiffs have not identified how Dr. Rakow's understanding changes the invalidity or noninfringement arguments of either party in this case. This is all much ado about nothing.

Plaintiffs' only other proffered example of a substantive dispute caused by the meaning of the term "coupled" likewise rings false on examination. Plaintiffs argue that Dr. Rakow's testimony somehow demonstrates that he knew that "coupled" must mean attached, and only

that.  Mot. at 15.  But the deposition testimony in question did not involve the word "attached" at all.  Dr. Rakow was asked "Are they [the outriggers] *mounted* to the top of the frame [in the Hinsdale Quint]?"  Ex. I to Mot. at 311:22-312:1 (emphasis added).  The cited question and answer do not use the claim term "coupled" or either party's understanding of the plain and ordinary meaning of that term.  The subsequent questions focused on whether Dr. Rakow could see where the outriggers mounted to the frame in a particular photograph that was marked as an exhibit.  *Id.* at 312:13-22.  This portion of Dr. Rakow's deposition does not support Plaintiffs' motion.

Plaintiffs' manufactured dispute regarding these claim terms is irrelevant.  Dr. Rakow did not opine that the infringement of the accused products turned on the "coupled" terms or their definition.  Similarly, Plaintiffs' own expert, Dr. Kurfess, admitted that the Hinsdale Quint embodied each and every limitation of the '915 patent except the 750-pound tip load limitation.  Doc. 250-3 at 152:22-155:2; *see also id.* at 159:13-21.  Dr. Kurfess further admitted that the Hinsdale Quint discloses each of the "coupled" limitations in his deposition.  *Id.* at 155:3-10,  155:11-156:2,  156:3-19,  158:6-15.   Thus,  even  under  Plaintiffs'  expert's understanding of these terms, the asserted claims are still invalid.

Plaintiffs' arguments regarding the "coupled" terms ignore the procedural history of the case.  Because the "coupled" terms have been accorded their plain and ordinary meaning (by agreement of the parties), Dr. Rakow is entitled to assign those terms his understanding as a skilled artisan, which is exactly what he did.  Dr. Rakow's understanding does not contradict any construction of this Court and further does not alter the outcome of any opinion that either he  or  Plaintiffs'  expert  proffered.    The  difference  in  opinion  between  Plaintiffs'  and

Defendants' expert as to a skilled artisan's understanding of the plain and ordinary meaning of the "coupled" terms should be explored via cross-examination and the proffer of counter-evidence, not excluded via Court order.

### B.    Dr. Rakow's Testimony and Opinions Are Reliable

Plaintiffs further move to strike the entirety of Dr. Rakow's opening report based on his allegedly unsupported and unreliable opinions related to the Hinsdale Quint.  As an initial matter, Plaintiffs' motion is staggeringly overreaching, given that the majority of Dr. Rakow's opinions in his opening report address subject matter other than the Hinsdale Quint or claims beyond those identified in Plaintiffs' motion.  Dr. Rakow's opening report included opinions on written description and enablement as well as multiple other prior art references.  Even with respect to the Hinsdale Quint, the contested opinions address only two limitations, namely whether it would be obvious to enlarge the water tank on the Hinsdale Quint and whether the ladder meets the 90-foot sideward reach limitation.  Plaintiffs' motion improperly sweeps these unrelated and unobjected-to opinions into the scope of their requested relief.

Plaintiffs' complaints regarding the substance of Dr. Rakow's opinion that it would be obvious to include a 500-gallon water tank on the Hinsdale Quint or that the ladder can be extended in a sideward position are equally without merit.  Dr. Rakow inspected and tested the Hinsdale Quint in person.  Doc. 251-1.  Based upon this detailed inspection and testing, as well as supporting documentation regarding the Hinsdale Quint, other technical documentation, and the opinions of other industry experts, Dr. Rakow provided a thorough and well-supported opinion that the claims, a 500-gallon water tank and a ladder extended in a sideward position, are obvious in view of the Hinsdale Quint.  Doc. 251-2, ¶¶ 87-92.  He also provided detailed

calculations supporting his analysis.  Doc. 254-10; Doc. 254-11.  To the extent Plaintiffs disagree with Dr. Rakow's analysis or find his calculations lacking, they should cross-examine him accordingly at trial.  These complaints do not support precluding Dr. Rakow's invalidity opinions.

Plaintiffs' motion to preclude these opinions rests predominantly on Plaintiffs' unsuccessful motion to strike the errata to his opening report.  Indeed, Plaintiffs even refer to this errata as providing "analysis, methodology, or calculation for his opinion that the asserted claims are invalid."  Mot. at 18.  But Plaintiffs did not prevail on their motion to strike and the additional calculations and analysis provided in the errata are part of Dr. Rakow's invalidity opinions.  Doc. 266.

Perhaps anticipating that they would not prevail on their Motion to Strike, Plaintiffs further contend that Dr. Rakow's errata is unreliable such that his invalidity opinions should still be struck. Mot. at 20-21.  According to Plaintiffs, Dr. Rakow did not adequately explain the import or application of his calculation and his opinions are suspect because his methodology cannot be tested and is not generally accepted in the scientific community (among other *Daubert* factors).  Mot. at 21.  But Dr. Rakow's calculations are exactly that—mathematical formulas based on well-known scientific and engineering principles utilizing the figures and numbers at issue in this case.  Plaintiffs only need to "do the math" to test these calculations.  And Dr. Rakow's calculations expressly tie into the claim limitations at issue in this case, discuss the known dimensions and variables, provide the calculations, perform those calculations, and then explain how those calculations support his conclusions.  To the extent Plaintiffs believe Dr. Rakow should have provided additional detail or they wish to "test" his

10

calculations, they may question him accordingly on cross-examination.  Plaintiffs have pointed to nothing that warrants exclusion of Dr. Rakow's opinions and testimony; therefore, those opinions should not be struck for lack of proper methodology.

Moreover, Dr. Rakow's analysis regarding the Hinsdale Quint met the *Daubert* standard even without calculations provided in his errata pages.  In his opening report, with respect to the obviousness of increasing the water tank size of the Hinsdale Quint, Dr. Rakow explained that the water tank can be placed "before, or above, the pump in order to shift weight allocation from the rear axle to the front axle," and he provided an example of a 2000 Rosenbauer firetruck with a water tank above the pump.  Doc 251-2, ¶¶ 92-93.  Dr. Rakow also cited fire industry expert, Alan Saulsbury, regarding increasing water tank capacities to 500-gallons on a single-rear-axle chassis in the 1980 to 2000 era.  *Id.*, ¶ 95.  He further disclosed that increased water load could be balanced "by reducing the weight of other components (e.g., the engine)," as well as "the cab size and equipment allowance, or designing the body or available compartmentation so that they reduce weight." *Id.*, ¶ 97.  Dr. Rakow explained that before the alleged invention, there were many prior art quint firetrucks with at least 500-gallon water tanks.  *Id.*, ¶¶ 87, 89.  He further explained that it was also known to allow firetruck purchasers to select a water tank size as part of the customization process, relying on Pierce's own documents and witnesses.  *Id.*, ¶¶ 87-90.  These opinions provide a reasoned and supported analysis that meets the standards of Rule 702 and *Daubert*.

Turning to Dr. Rakow's analysis of claims 5 and 15 of the '536 and '915 patents, he correctly opined that the Hinsdale Quint satisfies these dependent claims because its ladder was successfully extended horizontally to at least 90 feet off the side of the truck without

tipping over.  Doc. 244-1 at 109:5-15; Doc. 251-2, ¶ 108.  He explained that based on the plain language of the claims, claims 5 and 15 require only that the ladder be "extensible to the horizontal reach of at least 90 feet when the ladder assembly is oriented in the sideward position."  Doc. 250-1 at 15:9-10; Doc. 250-2 at 14:59-60; Doc. 251-2, ¶ 108.  When he inspected the Hinsdale Quint, Dr. Rakow observed the ladder extended to 90-feet when oriented in the sideward position.  Doc 251-2, ¶¶ 107-111.  Dr. Rakow relied on his physical inspection when opining that this limitation was met (*id.*), providing a supported and reliable opinion that should not be precluded under *Daubert*.

Dr. Rakow's invalidity opinions and testimony are reliable and helpful to the trier of fact because they are based upon extensive skill and knowledge; extensive document review and independent investigation to learn the facts of this case; and physical inspections, tests, measurements, and mathematical calculations of several highly relevant prior art apparatus.  In their Motion, Plaintiffs do not dispute that Dr. Rakow is qualified as an expert in the field.  Based on his experience, inspection, and the industry customs and practice, Dr. Rakow should be allowed to offer opinions concerning the invalidity of the asserted patents.  Such opinions are well within his expertise and are helpful and necessary to provide the trier of fact with an understanding of the prior art apparatus.

In complaining about the detail provided in Dr. Rakow's report, Plaintiffs provide a criticism that goes to the weight and not the admissibility of his opinions.  What matters, ultimately, is whether the prior art apparatus embodies the elements of the asserted claims.  In this regard, Dr. Rakow explained in detail why this is so, and his opinions are ultimately reliable and helpful to the finder of fact.

## IV.     CONCLUSION

For the reasons explained above, Defendants respectfully request that the Court deny

Plaintiffs' motion to exclude.


Dated: November 20, 2019                          Respectfully submitted,

                                                   */s/ David L. Luikart*

James R. Barney (*pro hac vice*)                   David L. Luikart III
Susan Y. Tull (*pro hac vice*)                     Florida Bar Number 021079
Justin E. Loffredo (*pro hac vice*)                HILL, WARD & HENDERSON, P.A.
Anthony J. Berlenbach (*pro hac vice*)             101 East Kennedy Blvd., Suite 3700
FINNEGAN, HENDERSON, FARABOW                       Post Office Box 2231
  GARRETT & DUNNER, LLP                            Tampa, Florida 33601
901 New York Avenue, NW
Washington, DC 20001-4413
202-408-4000
james.barney@finnegan.com
susan.tull@finnegan.com
justin.loffredo@finnegan.com
anthony.berlenbach@finnegan.com

*Counsel for E-One, Inc. and REV Group, Inc.*

13369149v1                                  13