1                IN THE UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
2                        TAMPA DIVISION

3

4  PIERCE MANUFACTURING, INC., et al.,   )
                                         )
5                  Plaintiffs,           )
                                         )
6                                        ) Case No.
            vs.                          ) 8:18-CV-00617-JSM-TGW
7                                        )
                                         )
8  E-ONE, INC., et al.,                  )
                                         )
9                  Defendants.           )

10

11

12  _____

13                       MOTION HEARING
          BEFORE THE HONORABLE THOMAS G. WILSON
14            UNITED STATES MAGISTRATE JUDGE

                       NOVEMBER 13, 2019
15                        2:36 P.M.
                        TAMPA, FLORIDA
16  _____

17

18

19

20

21        Proceedings transcribed via courtroom digital
    audio recording by transcriptionist using computer-aided
22  transcription.
    _____
23

          DAVID J. COLLIER, RMR, CRR
24         FEDERAL OFFICIAL COURT REPORTER
         801 NORTH FLORIDA AVENUE, 7TH FLOOR
25           TAMPA, FLORIDA  33602

1   **APPEARANCES:**

2

3   **FOR THE PLAINTIFFS:**

4           *David Charles Willis*
            Rumberger, Kirk & Caldwell, PA
5           300 South Orange Avenue, Suite 1400
            P.O. Box 1873
6           Orlando, Florida  32802-1873
            (407) 872-7300

7

8           *Stephen Yang*
            Alston & Bird, LLP
9           90 Park Avenue, 12th Floor
            New York, New York  10016-1387
10          (212) 210-9510

11

12          *Scott J. Pivnick*
            Alston & Bird, LLP
13          One Atlantic Center, Suite 4900
            1201 West Peachtree Street
14          Atlanta, Georgia  30309-3424
            (404) 881-7000

15

16  **FOR THE DEFENDANTS:**

17

18          *David L. Luikart, III*
            Hill Ward Henderson, PA
19          101 East Kennedy Boulevard, Suite 3700
            P.O. Box 2231
20          Tampa, Florida  33602-5195
            (813) 222-8509

21

22          *Justin Loffredo*
            *Susan Tull*
23          Finnegan, Henderson, Farabow, Garrett & Dunner
            901 New York Avenue, NW
24          Suite 1100
            Washington, DC 20001
25          (202) 408-4000

```
 1                    P R O C E E D I N G S

 2                    – – – o0o – – –

 3          THE COURT:  This is a proceeding in Case Number

 4   8:18-CV-617-T-30 TGW, Pierce Manufacturing, Inc. and Oshkosh

 5   Corporation versus E-One, Inc. and REV Group, Inc.

 6          Would counsel identify themselves for the record

 7   and indicate who they represent.

 8          MR. WILLIS:  Good afternoon, Your Honor.  My name

 9   is David Willis.  I am with Rumberger, Kirk & Caldwell.

10   I represent the plaintiff in this case, Pierce Manufacturing

11   and Oshkosh Corporation.

12          MR. PIVNICK:  Good afternoon, Your Honor.

13   Scott Pivnick from Alston & Bird for the plaintiffs as well.

14          MR. YANG:  Good afternoon, Your Honor.

15   Steven Yang, also from Alston & Bird and also on behalf of

16   plaintiffs.

17          MR. LOFFREDO:  Good afternoon, Your Honor.

18   Justin Loffredo from Finnegan on behalf of the defendants in

19   this case, E-One, Inc. and REV Group, Inc.

20          MS. TULL:  Good afternoon.  Susan Tull, also with

21   Finnegan and also on behalf of the defendants, Your Honor.

22          MR. LUIKART:  Good afternoon, Judge.

23   David Luikart with Hill Ward Henderson, also for the

24   defendants.

25          THE COURT:  All right.  The plaintiff has filed a
```

1    motion to strike certain errata.  You may proceed.

2                MR. YANG:  Thank you, Your Honor.

3                Your Honor, before we start, we did prepare some

4    slides.  If I may approach the Court, I can hand them up.

5                THE COURT:  You what?

6                MR. YANG:  We did prepare some slides for this

7    hearing.  If I may approach, I can hand them up to

8    Your Honor.

9                THE COURT:  Okay.  Were you going to put them on

10   the screen, did you expect?

11               MR. YANG:  No, Your Honor, we're actually just

12   going to go through these slides.  We did not bring the

13   right equipment --

14               THE COURT:  Okay.

15               MR. YANG:  -- to put them on --

16               THE COURT:  All right.

17               MR. YANG:  -- the projector.

18               Your Honor, we're here today because defendant's

19   expert, Dr. Rakow, on the eve of his deposition, at

20   9:09 p.m., submitted a so-called errata.  And, Your Honor,

21   I'm on page -- slide number 2.  This errata has three parts.

22   First, Dr. Rakow corrected some typos in his opening expert

23   report which he had submitted two months before, but the

24   second and third parts are more problematic because they

25   come --

```
 1              THE COURT:  You have no problem with the
 2    corrections; is that right?
 3              MR. YANG:  That's correct, Your Honor.
 4              THE COURT:  Okay.
 5              MR. YANG:  We have no issues with the typos, but
 6    the second and third parts contained never seen before
 7    calculations that constitute new opinions, and that,
 8    Your Honor, we do have an issue with.
 9              These calculations relate to, first, what we call
10    the water tank calculations, and, second, the sideward tip
11    load calculations.  And the water tank calculations,
12    Your Honor, they are calculations that relate to Dr. Rakow's
13    opinion that the Hinsdale quint -- the water tank on the
14    Hinsdale quint can be increased from a 300 gallon tank to a
15    500-gallon tank.  And likewise the sideward tip load
16    calculations refer to calculations that are related to
17    Dr. Rakow's opinions that the ladder on the Hinsdale quint
18    can support a tip load of 750 pounds when fully extended in
19    the sideward orientation.
20              Your Honor, Dr. Rakow never included these
21    calculations in his July 26 opening expert report.  And I'm
22    now on page 3 of the slides I've just handed up.  On this
23    timeline --
24              THE COURT:  I have my own version, as a matter of
25    fact, because I printed out your Exhibits 8, 9 and 10.
```

1          MR. YANG:  Yes, Your Honor, Exhibits 8 and 9 are

2    the two --

3          THE COURT:  All right.

4          MR. YANG:  -- sets of calculations at issue in

5    this motion.

6          So, again, Dr. Rakow did not include those

7    calculations in his opening report which was submitted on

8    July 26th of this year, and that was the deadline by which a

9    party had to submit its expert report on issues on which

10   they bear the burden of proof.

11         THE COURT:  Well, let me interrupt.  So I think

12   your motion indicated 10 was at issue.  Is Exhibit 10 not at

13   issue?

14         MR. YANG:  Your Honor, if I may just have a

15   moment.

16         Exhibit 10, Your Honor, that is a portion of

17   Dr. Rakow's expert report, so that's not at issue for this

18   motion.  This motion is really about --

19         THE COURT:  Okay.  All right.

20         MR. YANG:  -- Exhibits 8 and 9.

21         THE COURT:  So what you want to strike are 8 and

22   9.

23         MR. YANG:  Correct, Your Honor.

24         THE COURT:  Okay.  And not 10.

25         MR. YANG:  Well, 10 is just the expert report, so

1    no, just 8 and 9 --

2             THE COURT:  Okay.

3             MR. YANG:  -- for this motion.

4             THE COURT:  All right.

5             MR. YANG:  The calculations in Exhibit 8 and 9

6    were never included in Dr. Rakow's opening expert report

7    which was due on July 26th.  And if I may refer Your Honor's

8    attention to the timeline on slide number 3, a month after

9    that, on August 26th, plaintiffs' expert, Dr. Kurfess,

10   submitted a rebuttal expert -- expert report rebutting

11   Dr. Rakow's opening expert report, and that again is the

12   deadline by which a party had to disclose its rebuttal

13   reports.

14            In that report plaintiffs' expert, Dr. Kurfess,

15   identified a number of issues and deficiencies with

16   Dr. Rakow's opening report, and among them is Dr. Kurfess's

17   opinion that Dr. Rakow's conclusions in his opening report

18   that the claims are invalid, they were just conclusory

19   because they did not contain any analysis.

20            Three days after that, on August 29th, Dr. Rakow

21   submitted, without leave of court, a corrected opening

22   report.  In that corrected opening report Dr. Rakow managed

23   to address some deficiencies, some of the issues identified

24   in Dr. Kurfess's rebuttal report, but again, he did not

25   include the calculations that are in Exhibits 8 and 9.

```
 1              Within the next few weeks expert witnesses in this
 2    case were deposed.  On September 13th Mr. Saulsbury, another
 3    expert of defendants, was deposed, and on September 15th
 4    Dr. Kurfess, plaintiffs' expert, was deposed.  In those
 5    depositions both experts testified that Dr. Rakow's opening
 6    expert report needed the calculations, he needed to include
 7    those to support his opinion that the patent claims were
 8    invalid, but it wasn't really until September 25th, again,
 9    at 9:09 p.m., one day before Dr. Rakow's deposition, 60 days
10    after the original deadline by which Dr. Rakow had to submit
11    his opening expert report, it's not until then that
12    Dr. Rakow submits these -- this so-called errata which
13    contained the new calculations, and these really are new
14    opinions by Dr. Rakow.
15              And of course on September 27th, one day after
16    Dr. Rakow's deposition, discovery -- expert discovery in
17    this case closed.
18              So as we make -- as plaintiffs make clear in their
19    motion to strike, these calculations, these new opinions by
20    Dr. Rakow are untimely under Rule 26, and I'm on page --
21    slide number 4, Your Honor.  They're untimely and they
22    should be struck under Rule 27 -- 37.  All the relevant
23    factors, all the relevant considerations in this case favor
24    striking Dr. Rakow's errata.
25              In response, in their opposition, defendants
```

1    provided three excuses for these new opinions.  And I'm on

2    slide number 5, Your Honor.  These three excuses are, one,

3    defendants argue that this errata -- these new opinions are

4    somehow timely under Rule 26.  They then argue that to the

5    extent they're not timely, they were substantially justified

6    because they respond to some alleged new arguments made by

7    plaintiffs and their expert.  And finally, as their third

8    excuse, defendants argue that, again, to the extent his new

9    opinions are not timely, they created no prejudice.  But,

10   Your Honor, none of it is true.

11           Going to the first excuse -- and I'm on slide

12   number 7, Your Honor -- defendants argue that under Rule 26,

13   under Rule 26(a)(2)(B), there are these default deadlines,

14   and the new opinions Dr. Rakow put in on the eve of his

15   deposition were timely under those default deadlines.

16           Well, Your Honor, what they do not -- what

17   defendants do not include in their opposition and they do

18   not cite is that under Rule 26(a)(2)(B) these default

19   deadlines apply only if there is no stipulation or court

20   order.  We have a court order in this case, we have a case

21   management order.  In that case management order we have

22   clear deadlines for the submission of expert reports.

23   Plaintiffs abided by those deadlines, defendants did not.

24   So to the extent Rule 26 does provide any default deadlines,

25   they do not apply in this case.

 1          And defendants also argue -- and I'm on page --
 2    slide number 8.  Defendants also argue that these
 3    calculations, these new opinions constitute additions or
 4    changes under Rule 26 and they're allowed to supplement
 5    their report with these additions or changes, but again what
 6    they do not cite to in their opposition is that these
 7    additions or changes under Rule 26, if they can be
 8    supplemented, they have to be supplemented in a timely
 9    manner, and they must contain information -- additional or
10    correct information that has not otherwise been known by the
11    parties.
12          In this case, and by defendants' own admission,
13    and this is on page number 6 of defendants' opposition,
14    these calculations by Dr. Rakow, these new opinions were
15    based on information that they've had, that they've had
16    before the July 26th deadline.  There's simply nothing new
17    here.  And, Your Honor, this is a very important fact,
18    because all the cases to which defendants cite in support of
19    their position -- and I'm on slide number 9.  All the cases
20    they've cited, the Courts allowed the supplementation
21    because those supplementations were based on new
22    information.  That's the case in the Drielak case (sic) and
23    on slide number -- on slide number 10 in the Fletcher case.
24    Again, the supplementation was based on information that was
25    not available before the original deadline.

1          Also notable in the Fletcher case, Your Honor, the

2     defendants in that case wanted to supplement their expert

3     reports, and before they did so they repeatedly put

4     plaintiffs on notice, they informed plaintiffs that a

5     supplementation was -- a supplementation was necessary, it

6     was forthcoming, in the original expert reports, they

7     reminded them again by e-mail after the expert reports were

8     submitted, and they again reminded plaintiffs during

9     deposition that a supplementation would be forthcoming.

10          In this case, however, defendants did not provide

11     any notice or warning to plaintiffs, to this Court, they did

12     not seek leave to file a new report, they did not seek to

13     extend the expert discovery in this case, they simply

14     provided these new opinions at 9:09 p.m. before Dr. Rakow's

15     deposition and it was a complete surprise.

16          Finally, defendants cite the Eleventh Circuit

17     case -- and this is on slide number 11 -- they cite an

18     Eleventh Circuit case, Guerrera (sic), but in that case the

19     Eleventh Circuit actually affirmed the exclusion of the

20     supplemental report.  In that case the District Court

21     allowed the party to submit a supplemental report based on,

22     again, new information, but this -- but the District Court

23     ultimately excluded that report because the party seeking

24     the supplementation took too long, took more than five weeks

25     since receiving the information to provide the

1 supplementation.

2       And if I may direct this Court's attention to page

3 number 12, slide number 12, we're looking at the timeline

4 again.  In this case defendants took much longer than five

5 weeks.  They had this information well before July 26th, the

6 deadline to submit opening expert reports.  Even then they

7 waited until the rebuttal reports came in a month later,

8 they waited until all the depositions were completed, and

9 they waited until 9:09 p.m. on September 25th, so 60 days, a

10 full 60 days after the submission of opening reports to

11 provide these new calculations.

12       So Rule 26 simply does not allow defendants to

13 submit at this eleventh hour new opinions for the opening

14 expert reports, 60 days after the deadline and two days --

15 less than two days before the close of expert discovery.

16       Defendants then argue that to the extent these new

17 opinions were not timely, they were substantially justified

18 because they respond to new arguments raised by plaintiffs.

19 This is also not true.

20       The water tank calculations and the sideward tip

21 load calculations, defendants knew these calculations were

22 necessary well before they submitted their expert reports,

23 and on slide number 14 --

24       THE COURT:  No, I don't think they did, otherwise

25 somebody would have done it.

1          MR. YANG:  Well, Your Honor, and that's exactly

2     our argument, they should have done it because they

3     didn't --

4          THE COURT:  I know.  Your position is, hey, my

5     expert pointed out the deficiencies in your expert's report

6     and here we're buttressing it by putting in this new stuff.

7     That's the way it looks like it happened.

8          MR. YANG:  Well, Your Honor, that's not entirely

9     true because even before our expert identified these

10    deficiencies plaintiffs had put defendants on notice of

11    these kind of deficiencies before July 26th, before the

12    opening expert reports were due, as early as actually

13    October of last year, October of 2018.  And I'm on slide

14    number 14.  There's a timeline there, Your Honor.

15         THE COURT:  Well, how could you put their expert

16    on notice of a deficiency in his report?

17         MR. YANG:  Well, because back in October

18    plaintiffs had informed defendants that to the extent they

19    have invalidity arguments that are not supported by

20    analysis, that are not supported by the kind of analysis

21    similar to the calculations they're now trying to submit,

22    those kind of analyses would be deficient.  Plaintiffs put

23    defendants on notice in writing in response to one of their

24    interrogatories which called for plaintiffs' responses to

25    their invalidity contentions, and plaintiffs made that very

1    clear to them.  They made it very clear.  And actually I

2    have the language on slide number 15, Your Honor.

3    Plaintiffs told them that simple additions and subtractions,

4    which, again, are very similar to the kind of analysis --

5                THE COURT:  Okay.

6                MR. YANG:  -- Dr. Rakow --

7                THE COURT:  I'm not sure if you were here at the

8    beginning of this thing --

9                MR. YANG:  I was not, Your Honor.

10               THE COURT:  -- but I was, and at that time

11   I didn't quite understand what was so unique about this

12   invention, and it was sort of mysterious to me how a person

13   skilled in the art could take the invention and come up with

14   this vehicle and -- because it doesn't tell you where you

15   put stuff.  And the answer I got, and I don't remember whose

16   side it was, but we could go back and listen to the tape,

17   and I said this the last time, it was it's just trial and

18   error, you just move it around and see if it works.  That's

19   the answer I got at the beginning of this thing.  Okay.

20               Well, more recently, and this sort of confirms it,

21   what I heard last time when I raised the same deficiency is,

22   no, the people skilled in the art make calculations, like

23   physics, and they can determine where things go.

24               So at the be -- I'm telling you, at the first

25   hearing I was told, hey, you just try -- move it around and

```
1    see if it works.  So the fact that you're saying, hey, that
2    it's sort of conclusory and you haven't supported your
3    calculations, I'm not sure that everybody got it.  Well, I
4    didn't get it because I was told differently.
5              MR. YANG:  Well, Your Honor --
6              THE COURT:  And then -- that was the last time.
7    And then the calculations that Dr. Rakow has now provided
8    sort of confirms what I subsequently was informed, hey,
9    these people skilled in the art can do calculations to find
10   out where this stuff ought to go.  All right.  Well, that
11   made sense.  Now you're talking about an invention.  But --
12   so this wasn't -- this wasn't a case at the beginning where
13   everybody was thinking, okay, we -- we need to be more
14   precise about our calculations.  At the beginning it was,
15   hey, who needs calculations?  You just try it and see if it
16   works.  Um.  Okay.  That was what I took away from it,
17   because -- because I'm telling you, when I read -- when
18   I read the patent -- and this is not the first patent case
19   I've had, but when you read the patent, sometimes you say,
20   what are they talking about, I can't understand it.  This
21   one was, hey, this is -- I've had one, like a golf cart or
22   something that was really simple too.  Okay.  Read this one,
23   it's simple, I get it, except what's so special about it?
24   Because it doesn't say how you make this thing so it won't
25   tip over.  And so I got the answer, hey, you just try it and
```

1  see if it works.

2          Well, then at the last hearing that pronouncement

3  was disavowed and said, no, you have to make calculations,

4  like physics calculations, and you can get it.  Okay.  Now

5  you're talking business.  Now, okay, that sounds like an

6  invention.

7          And then what Dr. Rakow did was he did some

8  calculations and sort of confirmed what I've been told

9  subsequently, that that's what makes this unique is you have

10 to know where to put this stuff, not just, you know, throw

11 hoses in here and put a water tank there.

12         So at the beginning nobody was talking about

13 precise calculations.  Your guys might have been, but

14 I wasn't even told that.  So if they didn't get it either,

15 I'm not surprised.

16         MR. YANG:  Well --

17         THE COURT:  So I'm not buying that, okay, we told

18 them a long time ago in October, that's not a persuasive

19 argument, so go on to something that's better than that.

20         MR. YANG:  I understand, Your Honor.  If I may

21 just clarify one thing.

22         Plaintiffs received these patents and defendants

23 are now arguing that these patents are invalid.

24         THE COURT:  I understand.

25         MR. YANG:  In order to do that, they carry a very

1  high -- a very high burden.  They carry the burden and have

2  to establish invalidity by clear and convincing evidence.

3  So they needed to show that you have the prior art but you

4  also have --

5       THE COURT:  Okay.  But that --

6       MR. YANG:  -- the calculation --

7       THE COURT:  That's sort of beside the point of

8  what we're talking about, is that -- the issue here is, hey,

9  is it acceptable for them to slip in these calculations at

10 nine o'clock the day before his deposition.

11      MR. YANG:  Yes, Your Honor.

12      THE COURT:  That's the focus of this.

13      Now, I'll just note this, it seems to be what's

14 going on now recently is people file things really late in

15 the day before a hearing or deposition, to the point where

16 I now have -- and you may have seen it, maybe haven't done

17 it yet.  Whenever I now set a hearing, I now have a legend

18 that says belated submissions are disfavored and if you

19 submit something after 5:00 -- or I think it's four o'clock

20 the day before the hearing, it will be disregarded.  The

21 reason I do that is because everybody is filing this stuff

22 at the last minute, which is unfair.

23      So I don't have any problem with you complaining,

24 hey, wait a minute, we're about to take this guy's

25 deposition, we get this stuff at nine o'clock at night, that

1    isn't fair.  I understand that.

2              MR. YANG:  Your Honor, I think that's --

3    Your Honor has hit the nail on the head and that's what

4    we're dealing with.  We're dealing with a disclosure the

5    night before the deposition at 9:09 p.m.  Plaintiffs were

6    not able to meaningfully prepare.

7              THE COURT:  I understand.  I got it.

8              MR. YANG:  Your Honor, I understand that this is

9    really about the late disclosure, but again, the point we

10   wanted to make, plaintiffs wanted to make, was that even

11   though defense may not or claim that they may not have known

12   that they needed to perform the calculations, the fact

13   remains that in their interrogatory responses plaintiffs

14   told them, and I quote, defendants failed to provide

15   meaningful reasons to combine the references and ignore that

16   he had difficulty with simply adding --

17             THE COURT:  Well --

18             MR. YANG:  -- or subtracting various elements.

19             THE COURT:  -- I'm not interested in that, but

20   your expert was the guy that said, hey, you're -- these

21   answers are deficient because they don't give any

22   calculations, and it looks to me like in response to that

23   they did some that -- the night before his deposition.

24   That's the way it looks like, is that your expert called him

25   out on his inadequacies, okay, and then it looks like he's

1  trying to remedy that.  That's what it looks like.

2          MR. YANG:  And, Your Honor, that's what plaintiffs

3  are trying to clarify.

4          THE COURT:  Well, you're not going to --

5          MR. YANG:  It's not the first time though.

6          THE COURT:  They got to go around me -- around

7  leading you, I'm telling you that.  If you want to go down a

8  different path, go right ahead.

9          MR. YANG:  Okay.  All right.

10          So plaintiffs' expert, to make clear, in the

11  rebuttal -- in his rebuttal, reports that Dr. Rakow's

12  opinions were deficient, but again, this is not new, this

13  is -- this cannot be the first time that defendants knew

14  this.  And again, moving on, even before the July 26th --

15  just before the July 26th deadline for submitting expert

16  reports -- and again, the expert report on which defendants

17  carried a high burden to establish invalidity --

18          THE COURT:  Okay.  So then if that's the only

19  problem then you go to trial and your expert gets on and

20  shows why their expert report is deficient.  That's all you

21  have to do.

22          MR. YANG:  But now we have these new

23  calculations --

24          THE COURT:  I know.

25          MR. YANG:  -- that have come into the record, and,

1  Your Honor, the problem is that plaintiffs' expert does not
2  have an opportunity to respond.
3           THE COURT:  Okay.  All right.  I understand that.
4           MR. YANG:  Right.  And this goes towards the
5  prejudice that this has caused and it's continued to cause.
6           So again --
7           THE COURT:  Do you want to address their argument
8  that, hey, you raised a new issue in here, because we didn't
9  realize that a 90-foot ladder had to have a 750-pound weight
10  at the end?
11           MR. YANG:  Yes, I would, Your Honor, and -- well,
12  first of all, this whole argument regarding -- defendants
13  call it a new claim construction because, like Your Honor
14  said, they claim that they did not know claims 5 and 15 had
15  the requirement that the ladder be able to support
16  750 pounds.
17           Your Honor, first of all, again, before the
18  deadlines for expert report that's on May 31st, plaintiffs
19  specifically told defendants that one of their other prior
20  art products did not satisfy the requirements of those
21  claims because its ladder could not carry 750 pounds when
22  it's in the sideward orientation.
23           Now, plaintiffs response to that is, well --
24  defendants' response to this is that, well, plaintiffs never
25  said the same thing about the Hinsdale quint, but,

1    Your Honor, that's a red herring because --

2         THE COURT:  Let's get to the -- the point.  When I

3    read this thing, I'm thinking, hey, it's a 90-foot ladder

4    extended, it's got a 750-pound at the end, I thought it was

5    that simple, and when I saw the claim construction stuff

6    that you all put out there, you guys thought it was

7    necessary to do a Markman hearing just because it's a patent

8    case.  The things to be construed seemed so obvious I didn't

9    understand why you're plugging Judge Moody with it, and I

10   always understood in this case that it was a 90-foot ladder

11   extended sideways and a 750-pound weight at the end, namely

12   two big firemen and some heavy guy they're rescuing, and it

13   doesn't tip over.  That's how I read it.

14        MR. YANG:  And, Your Honor, that is the correct

15   reading of those particular claims.  And again, those claims

16   were not part of a Markman hearing in this case because, at

17   least for plaintiffs, we're with Your Honor that that is the

18   plain and ordinary --

19        THE COURT:  Yeah, so I'm not -- okay.  I'll let

20   them talk about that, but I didn't see this as some new

21   claim.

22        MR. YANG:  If I may just make one point regarding

23   their argument that this is a new claim construction.  They

24   argue that they did not think claims 5 and 15 had the

25   requirement of 750 pounds.  Now, the Federal Circuit, and

```
 1   I want to quote the Federal Circuit, it's the Monsanto case

 2   at 503 F.3d at page 1357, the Federal Circuit has made clear

 3   that a claim in dependent form, which is claims 5 and 15,

 4   shall be construed to incorporate by reference all the

 5   limitations of the claims to which it refers.  So,

 6   Your Honor, Your Honor's reading and plaintiffs'

 7   understanding of claims 5 and 15 is not controversial, it's

 8   how the claims are supposed to be read.  This is

 9   established.  There is no new claim construction here.  This

10   is, again, argument --

11              THE COURT:  Go on to something else.

12              MR. YANG:  Okay.

13              THE COURT:  Because I'm with you and I'll let them

14   respond to that.

15              MR. YANG:  Okay.  And, Your Honor, if I may

16   address the prejudice issue here.

17              Now --

18              THE COURT:  I understand.  Let's get to the point.

19              MR. YANG:  Okay.

20              THE COURT:  Their proposal is, okay, you can take

21   Dr. Rakow's deposition.

22              MR. YANG:  Right.

23              THE COURT:  And, um, what's the problem with that?

24              MR. YANG:  Well, Your --

25              THE COURT:  Because the -- the general notion is
```

1    you don't want to strike experts' testimony, it's just a bad

2    idea --

3          MR. YANG:  I understand that, Your Honor.

4          THE COURT:  -- and it's unfair, and we're talking

5    about a situation where the trial is a ways away.

6          MR. YANG:  Well, Your Honor, it's -- it's a little

7    bit more complicated than simply taking Dr. Rakow's

8    deposition.  Well, first of all, there's clearly prejudice

9    because the plaintiffs received this information less than

10   12 hours before Dr. Rakow's deposition.

11         THE COURT:  I understand.  I'm with you.

12         MR. YANG:  Okay.

13         THE COURT:  Okay.

14         MR. YANG:  But even if plaintiffs are to depose

15   Dr. Rakow, these again are new opinions that he has

16   provided.  In addition to the deposition of Dr. Rakow --

17         THE COURT:  Okay.  If they're no good then your

18   expert can say otherwise and you can challenge him at a --

19   at another deposition.

20         MR. YANG:  Well, right, but the problem is that in

21   addition to the deposition, because these are expert

22   opinions, the plaintiffs' expert, Dr. Kurfess, now has to

23   respond, so we're looking at another rebuttal report by

24   plaintiffs' expert after that, and I'm sure defendants will

25   want to depose Dr. Kurfess.

```
1              THE COURT:  Well, maybe they won't get to.
2              MR. YANG:  Well --
3              THE COURT:  The point is -- here's -- here's the
4    point.  And we're sort of short-circuiting their response.
5    Yeah, I think it was inappropriate for them to slap this on
6    at nine o'clock the night before his deposition.  All right.
7    What do we do about it?  That's -- that's where I am.
8              MR. YANG:  Your Honor --
9              THE COURT:  And they've -- they've proposed that
10   you take his deposition, and you said, no, we don't want to.
11             MR. YANG:  So, Your Honor --
12             THE COURT:  But here's -- I'm sort of trying to
13   save you guys from yourself, because if this goes -- if his
14   additional calculations that -- that cure what appears to be
15   a real significant deficiency in his report is stricken, um,
16   okay, and you win, they've got a strong argument on appeal
17   based on the principle that you don't go around striking
18   experts' reports without a real solid basis and without the
19   opportunity to correct that problem.  Here it seems to me
20   that we are -- you're in a position to correct the problem.
21             MR. YANG:  Your Honor, if I may respond --
22             THE COURT:  Yeah.
23             MR. YANG:  -- to the opportunity to correct.  I'm
24   not sure that's the case because we're at a point in this
25   case where we've already submitted summary judgment
```

1   briefing --

2           THE COURT:  Yeah, I know you have.

3           MR. YANG:  -- Daubert briefing --

4           THE COURT:  And so here's the point.  Was -- were

5   these Exhibits 8 and 9 referred to in the summary judgment

6   motions?

7           MR. YANG:  Your Honor, I do not believe they were.

8   Defendants did submit summary judgment briefing on

9   invalidity based on the Hinsdale quint, but I do not believe

10  these exhibits were mentioned in their brief.

11          THE COURT:  Based on what, the Hinsdale --

12          MR. YANG:  The Hinsdale quint.

13          THE COURT:  Okay.  You can see what I thought of

14  that.

15          MR. YANG:  Right.  Sorry, Your Honor, I didn't

16  catch the -- but, Your Honor, if we just look at the case

17  schedule here -- and I know the defendants make the argument

18  that trial is still four months away, but the parties are

19  not just sitting here waiting for trial.  In the meantime

20  they have to prepare for trial.  In addition to the summary

21  judgment briefing, and I believe the responses are coming up

22  next week, the parties have to submit a joint final pretrial

23  statement by the end of February.  In addition to that --

24          THE COURT:  Big deal.  That's in every case.  I'm

25  not -- that doesn't knock me over, that, oh, my God, you

1  can't take some guy's deposition because we got a pretrial

2  statement coming up in two months or three months.  That

3  isn't -- that isn't going to work.

4          MR. YANG:  Well, Your Honor, it would be extremely

5  difficult.  Again, we're talking about two depositions, two

6  reports, and again, plaintiffs' expert --

7          THE COURT:  You got a big team working on all this

8  stuff, just like they have a big team working on all their

9  stuff.  I understand this is a big case in terms of the

10 significance of it.  All right.  And so you have a lot of

11 lawyers working on it.  Okay.  I think somebody could take a

12 deposition.

13         MR. YANG:  Well, it's not just the lawyers,

14 Your Honor, it's also plaintiffs' expert, Dr. Kurfess.

15 Again, he has a very limited availability --

16         THE COURT:  Okay.

17         MR. YANG:  -- to the point --

18         THE COURT:  Let me tell you what I -- what I say

19 to that, because this comes up a lot, oh, my expert isn't

20 available.  No, your expert wants to get a whole lot of

21 money, I'm sure he's charging you a whole lot, and you say,

22 because I've said first, you got to be ready by this date,

23 otherwise you don't get your money, and guess what, the

24 experts show up.  So I hear that argument from time to time,

25 it seems to me they can accommodate it, especially when it's

1    this far out, so that's where I'm headed, and -- and so if
2    you have some stronger argument why that doesn't work, let
3    me know.
4          MR. YANG:  Your Honor, we understand, of course,
5    we'll have to check with our expert, and this is an expert
6    who had to be deposed on Sunday during expert discovery
7    because of --
8          THE COURT:  Had to be deposed on what?
9          MR. YANG:  On a Sunday.  That was the only day --
10         THE COURT:  On Sunday?
11         MR. YANG:  -- that he was available.  Correct,
12    Your Honor.  He had to be deposed on a Sunday.  He has other
13    commitments in this -- in his other matters in his other
14    role in his job, and again, he relied -- as we did, he
15    relied on the deadlines --
16         THE COURT:  Well, pick a --
17         MR. YANG:  -- in this case.
18         THE COURT:  Pick a day that there aren't any good
19    games or something like that.  As I'm saying, I've heard
20    that before, but we're not talking about your deposition --
21    your expert getting deposed, we're talking about their
22    expert getting deposed.
23         MR. YANG:  Well, Your Honor, that's my point.
24    It's not just their expert being deposed, it's our expert
25    having to rebut to these new opinions.

1          THE COURT:  Well, wait.  They haven't even asked

2    for that yet.  Why are you thinking that's -- he'll have to

3    rebut it in the sense that he'll have to look at the

4    deposition of Dr. Rakow --

5          MR. YANG:  Um-hum.

6          THE COURT:  -- and maybe supplement his report,

7    but that doesn't have to be done on Sunday, it can be done

8    at eleven o'clock at night, I mean, or nine o'clock at night

9    when you -- they decide to send their stuff.

10          MR. YANG:  We understand, Your Honor, and again,

11   we're not saying that he's not available, I mean, but this

12   all just goes towards the prejudice that this late

13   submission has caused.

14          THE COURT:  Let me hear from them, because that's

15   where we're -- that's where I am.  I'm thinking it was

16   unacceptable to flop this on you at nine o'clock at night

17   the day before the deposition, and it's really significant,

18   no question about it, and so the question is then is it

19   stricken or do we give them a chance to remedy the problem,

20   because as I say, if it's that this stuff is stricken and

21   there's this big hole in the report and you -- and -- and

22   they lose, they've got a strong argument on appeal, because

23   the argument is you don't go around -- you like to try the

24   case on the merits, and if you strike that you're not trying

25   it on the merits.

1     MR. YANG:  Your Honor, if I may just say one more

2  thing about the importance.

3     THE COURT:  Go ahead.

4     MR. YANG:  I understand that, of course, we want

5  to try cases on the merits.  These are new opinions.

6     THE COURT:  Well, I understand.

7     MR. YANG:  Right.

8     THE COURT:  But you would just as soon try it

9  without his new stuff.  If you want to try it on the merits,

10  just say, okay, yeah, right, we'll withdraw our motion to

11  strike --

12     MR. YANG:  But, Your Honor --

13     THE COURT:  -- and then we go.

14     MR. YANG:  Your Honor, realistically, we're not

15  sure if we can remedy this problem, but regarding the

16  importance, these are the opinions their expert has

17  testified that he did not think were necessary in his

18  opening expert reports.

19     THE COURT:  Okay.  And, guess what, you can bring

20  all this out when you -- when you cross-examine him at

21  trial, right?  I mean, this is -- this is impeachment stuff.

22     MR. YANG:  Well, again, Your Honor, that still

23  goes towards the significance.  This was a choice that

24  defendants had made.  This is a choice that Dr. Rakow has

25  made.  They chose --

```
1              THE COURT:  I understand.
2              MR. YANG:  -- not to include --
3              THE COURT:  I understand.
4              MR. YANG:  -- that information.
5              THE COURT:  Okay.  It was a bad idea.  Okay.  But
6    he corrected it before his deposition.  Now, not much before
7    his deposition, and not sufficient time for you -- for you
8    to confer with your expert and come up with questions to ask
9    him about it, so, yeah, that's -- that's the problem.
10   I mean, I know what the problem is, and the question is,
11   okay, what do we do about it.  We got two choices, strike
12   the -- strike those two exhibits or you get a chance to take
13   his deposition, a supplemental deposition.  You've already
14   done it once, or twice for all I know.  So -- so that's
15   where we are.
16             So let me hear from them what they propose and
17   then you can comment on that.
18             MR. YANG:  Okay.  Thank you, Your Honor.
19             MR. LOFFREDO:  Good afternoon, Your Honor.
20             I -- we disagree, defendants disagree with their
21   arguments, but we wish to move on to the point the Court
22   raised on prejudice and turn to the proposed resolution, if
23   that's okay with Your Honor.
24             THE COURT:  Well, if you have something that you
25   can convince me that what I've been saying is wrong, you can
```

1  go ahead, but I read the stuff and -- for example, that this

2  is a new argument, and I'm not buying that.  I thought all

3  along this involved a 90-pound -- a 90-foot ladder with

4  750 pounds at the end, so to say that, okay, now they've

5  brought that up for the first time, that's what I thought it

6  was about, as well as the other little features of this

7  vehicle, but they're not any -- and the single axle.

8          So, as I'm saying, I thought that's what this case

9  was about, the ability to have 750 pounds at the end of a

10 ladder that's 90-foot long -- 90 feet long and doesn't tip

11 over.

12         MR. LOFFREDO:  Yes, Your Honor, and we would agree

13 with that with respect to the independent claims but not the

14 dependent claims filed at 15, which require the ladder in

15 the sideward position.

16         But I can, if Your Honor would like, move on to

17 the --

18         THE COURT:  Okay.  Go.

19         MR. LOFFREDO:  -- issue of prejudice and

20 resolution.

21         THE COURT:  Go ahead.

22         MR. LOFFREDO:  So, um, Your Honor is entirely

23 correct, the disclosure of the errata and the calculations

24 were the night before his deposition, and realizing that,

25 after his deposition, which was already extended to

1  eight hours for each technical expert in the case, so

2  defendants were able to depose plaintiffs' technical expert

3  for eight hours and in turn plaintiffs were able to depose

4  Dr. Rakow for eight hours, but since they were not able to

5  cover the calculations during that time and they were served

6  the night before, we proposed a supplemental deposition, and

7  this deposition would be at plaintiffs' convenience and to

8  cover exactly Dr. Rakow's analysis in those two

9  conclusion -- or calculation sheets, and any questions -- at

10 that point the errata was also in play, and so questions

11 that they had about his errata as well.  And so we think

12 that that reduces and actually eliminates the prejudice to

13 plaintiffs, to the extent that there was any, from his

14 submission the night before his deposition.

15         And I would note that Dr. Rakow would be -- would

16 be up first at trial, since it would be defendants' burden

17 to prove invalidity, and so their expert would rebut, and so

18 their expert will have an opportunity to address all his

19 opinions expressed at trial, and we would, of course, get to

20 ask him questions on cross-examination.

21         THE COURT:  Yeah, but he didn't want to start

22 responding to something that he's heard for the first time,

23 so -- and I understand that, but that -- that's a

24 significant point, but at this point they haven't had a

25 chance to really cross-examine Dr. Rakow about these new

1  opinions, so it seems to me that's --

2          MR. LOFFREDO:  Right.

3          THE COURT:  Either that or strike the Exhibits 8

4  and 9.

5          MR. LOFFREDO:  Right, which is why we wanted to

6  give them the opportunity to cross-examine Dr. Rakow

7  specifically about those exhibits, and given the four and a

8  half months left until trial, we thought that that was a

9  fair compromise.

10          THE COURT:  Anything -- suppose the exhibits are

11  stricken, what do you have to say about that?

12          MR. LOFFREDO:  Well, we would disagree,

13  Your Honor, because, I guess, of the other substantive

14  issues we've raised in our opposition, to the extent that

15  they're -- they're not timely, and I would just note that

16  defendants did note in their opposition that timeliness --

17  they thought that the --

18          THE COURT:  Yeah.  Forget that.  Your timeliness

19  argument is no good.

20          MR. LOFFREDO:  Okay.  Well --

21          THE COURT:  And even if -- even if I thought that

22  somehow you could extend the thing past the date for the --

23  expert discovery was to close at the end -- by rebuttal

24  reports.  There was nothing like sur rebuttal reports.

25  I went back and copied out the case management order.

1        So -- but even -- even assuming that somehow you

2  could say that you could supplement it somehow, plopping it

3  in at nine o'clock the night before is unacceptable.

4  There's no way that they can be prepared for that, because

5  we're talking -- you know, it's not as if it's some -- he's

6  got just a few words about something that you can ask about.

7  It's some complicated calculations.

8        So -- and maybe these guys are all engineers and

9  they understand all that stuff, but I look at it and, man,

10  that's really complicated and you need some preparation to

11  have your expert examine it, discuss it, think about it,

12  maybe do his own calculations and say it's way off-base, you

13  can't have a 300 -- you know, a 300-gallon water tank

14  replaced with a 500-gallon water tank and nothing happens,

15  for example.

16        So the timing of it was just awful.  I mean,

17  forget that it was late.  I'm finding it's late, but even if

18  it weren't late, plopping it in on people at nine o'clock at

19  night and -- was it sent by e-mail?  How was it -- how was

20  it delivered?

21        MR. LOFFREDO:  Yes, it was e-mailed, Your Honor.

22        THE COURT:  Okay.  And as far as you know it was

23  delivered.  I mean, because I'm telling you, I'm seeing it

24  more and more, I'm getting this stuff and -- I had finished

25  preparing for a hearing, I'd gone home, it was eight o'clock

1  at night, I went home.  Okay.  Here comes some guy filing

2  multi -- a hundred and some pages for the next day's hearing

3  at ten o'clock at night.  Come on.  That kind of stuff is

4  just not acceptable.  And so I understand that they weren't

5  prepared to deal with it.  So where I am is, okay, either

6  those two things are stricken or they take your expert's

7  deposition, that -- and so their argument is, wait a minute,

8  we're prejudiced, we can't really get ready, and so, um,

9  these two things ought to be stricken.  What do you say to

10 that?

11          MR. LOFFREDO:  Well, we disagree, Your Honor --

12          THE COURT:  Well, I understand you disagree.

13          MR. LOFFREDO:  -- because we --

14          THE COURT:  Yeah.  Duh.

15          MR. LOFFREDO:  So the prejudice is eliminated by

16 the fact that we're making Dr. Rakow available for a

17 continued deposition at plaintiffs' convenience.

18          THE COURT:  Okay.  And that's all we're talking

19 about is Dr. Rakow being deposed.  You're not saying, okay,

20 now we get a chance to come back and depose their expert?

21          MR. LOFFREDO:  No, Your Honor.

22          THE COURT:  Okay.

23          MR. LOFFREDO:  And so it would be -- the prejudice

24 would be reduced because they would -- or eliminated because

25 they could redepose Dr. Rakow about his opinions and then

1    they would be able to have Dr. Kurfess respond, obviously

2    Cross Dr. Rakow on those opinions at trial and then

3    Dr. Kurfess, their --

4          THE COURT:  How does that work now?  After

5    Dr. Kurfess reads the deposition of Dr. Rakow, the

6    supplemental, then what happens?

7          MR. LOFFREDO:  Um, and then --

8          THE COURT:  Nothing?

9          MR. LOFFREDO:  Defendants are open to having

10   Dr. Rakow submit a rebuttal report as one option or also

11   open to cross-examining Dr. -- I'm sorry, Dr. Kurfess submit

12   a rebuttal report as an option or cross-examining

13   Dr. Kurfess on whatever opinions he may have after --

14         THE COURT:  Well, that's -- see, that's their

15   gripe, is, wait a minute, now we're going to go through all

16   this additional stuff that you've caused and so we are

17   prejudiced by that.

18         MR. LOFFREDO:  Okay.  And to eliminate that, what

19   we propose is just deposing -- or offering Dr. Rakow up for

20   a supplemental deposition and that's it, so --

21         THE COURT:  Okay.

22         MR. LOFFREDO:  -- plaintiffs wouldn't have to put

23   together another rebuttal report for Dr. Kurfess, he

24   wouldn't be redeposed, we would just address whatever

25   opinions he may have, Dr. Kurfess, about Dr. Rakow's

1   supplemental opinions on the calculations and we would

2   address those at trial.

3           THE COURT:  Okay.  So you're prepared to do that.

4           MR. LOFFREDO:  Yes.  Yes, Your Honor.

5           THE COURT:  Take Rakow's deposition and that's it.

6           MR. LOFFREDO:  Yes, Your Honor.

7           THE COURT:  Okay.  All right.  Anything more you

8   want to say?

9           MR. LOFFREDO:  Um, I could discuss the -- the

10  merits, but if Your Honor is --

11          THE COURT:  No, I'm sort of there.

12          MR. LOFFREDO:  -- done, I can sit down.

13          THE COURT:  Let me hear what -- okay.  Let me hear

14  what they have to say to that approach.

15          MR. LOFFREDO:  Thank you, Your Honor.

16          MR. YANG:  One moment, please, Your Honor.

17          THE COURT:  Okay.

18          MR. YANG:  Your Honor, so as far as we understand,

19  the defendants' proposal is that --

20          THE COURT:  Well, the proposal was that they take

21  your expert's deposition too, stuff like that, and I'm

22  saying, hey, wait a minute, hold it, then it looks like

23  you're prejudiced.

24          MR. YANG:  Right.

25          THE COURT:  So he is now saying, okay, he's

1    prepared to go with just a supplemental deposition of

2    Dr. Rakow.

3              MR. YANG:  So we would be left in a situation

4    where Dr. Rakow has these new opinions but plaintiffs'

5    expert cannot rebut them.

6              THE COURT:  Of course he can.  He's going to get

7    on the witness stand.  Here's the point at this -- if it's

8    done that way, they're in a box.  They sort of created this

9    problem themselves and they're trying to get out of it, but

10   they're -- the way they're proposing it is, okay, they're

11   not going to know what your expert is going to say until

12   after their expert has already testified.

13             MR. YANG:  To that point, so plaintiffs would

14   maintain that in that case defendants would have to waive

15   any objections at that time to the scope of Dr. Kurfess's

16   opinions, because if that is the first opportunity

17   Dr. Kurfess gets to rebut these new opinions --

18             THE COURT:  No.  No.  No.  No.  He -- if he --

19   okay.  If he's there, because he only works on Sundays,

20   I understand that, but if he's saying, oh, my God, it's

21   Sunday, I need something to do, let me prepare a

22   supplemental report to their expert, they don't -- that's

23   fine with them.  If you want to do that, fine.

24             I'm thinking they got themselves in this box by

25   not doing this in a proper way.  They're prepared to help

1  get themselves a little bit out of the box by letting you

2  take their expert's deposition on these specific items,

3  that's all.  I mean, it's not a new deposition by any means.

4  And then the next thing you know is these two guys are

5  testifying at trial and Rakow goes first, as has been

6  pointed out.  That's putting themselves in a sort of

7  difficult position.  But if Dr. Kurfess is saying, oh, my

8  God, it's Sunday so during halftime of some game I'm going

9  to be writing a report because I want to respond to what

10  this guy is saying, I'm sure they don't have any objection

11  to getting a supplemental report.

12           MR. YANG:  I guess that's the clarification we're

13  seeking.  So we would depose Dr. Rakow but Dr. Kurfess has

14  the option of submitting an expert report?

15           THE COURT:  Sure.  Of course.

16           MR. YANG:  And I guess that's the --

17           THE COURT:  No, it's -- we're going to set the

18  ground rules now.  If that's -- if that's what you want to

19  do, you want him to submit a supplemental report on whatever

20  Dr. Rakow says, fine.

21           MR. YANG:  Right.

22           THE COURT:  I'll agree to that.  But if you don't

23  want to do that, then the remedy will be that you guys take

24  Dr. Rakow's deposition, period.

25           MR. YANG:  I understand, Your Honor, and,

1  of course, if we need to do another report, that goes

2  towards our previous argument that --

3          THE COURT:  If you need to, okay.

4          Now, but I want to -- because you're sort of going

5  down a road I don't understand, but if you want to, I will

6  provide that you still have a right to submit a supplemental

7  report by your expert by some certain date.

8          MR. YANG:  No, Your Honor, we do not want to,

9  because that's additional burden that we will have to incur.

10          So at trial if Dr. Kurfess is testifying for the

11  first time in response to --

12          THE COURT:  He's a re -- he's a re -- no, he's a

13  rebuttal expert.

14          MR. YANG:  Understood, Your Honor.

15          THE COURT:  He will be able to testify in rebuttal

16  to whatever their expert said and would be limited to that.

17          MR. YANG:  That is the clarification we're

18  seeking.  I understand that.

19          THE COURT:  But to some extent, and this is what

20  I've been saying, is the defendants have put themselves in

21  this bad position by -- I'm not blaming you guys, but

22  Dr. Rakow, it seems to me, should have been paying attention

23  better than he did and put in some information like this.

24  He didn't.  I mean, okay, I'm really exonerating you all

25  because the thing is he's the expert and he should have been

1    alert to I need to put this stuff in.  Well, he didn't, and

2    then their expert says, hey, there's this big hole in his

3    report, and then they say, oh, my God, let's fill it with

4    this stuff.  Now, it happens to be at nine o'clock at night,

5    but that's -- that's the way it went down.

6            So they put themselves -- again, your expert did,

7    maybe you can cut his pay or something, but he put you in

8    this bad position and now in order to get out of the hole

9    that he put them in they're prepared to say, okay, you can

10   take his deposition about this supplemental information,

11   period, and that's it, and then -- so you won't know -- or,

12   rather, they won't know what your expert is going to say in

13   response to what he's just testified to, which is a

14   difficult position for them, but if you want to -- if you

15   want to help them out by having your expert do a

16   supplemental report, heck, nobody is going to care.

17           MR. YANG:  And, Your Honor, that was the

18   clarification we're seeking.  Of course we do not wish to

19   have our expert incur the burden to prepare another expert

20   report, but if that's --

21           THE COURT:  Well, he'd be happy to do it because

22   I'm sure he's getting a paid a whole lot.

23           MR. YANG:  Um -- but, Your Honor --

24           THE COURT:  It would have to be on a Sunday during

25   halftime or something.

1      MR. YANG:  Your Honor, so regarding these holes,

2  again, it is plaintiffs' position and plaintiffs maintain

3  that --

4      THE COURT:  Well, now, listen, we've gotten it

5  wound down.  I don't need to hear you restate your position.

6  The point is we have now come up with a procedure to remedy

7  the problem that their expert has created.  If you wish,

8  I'll give you the opportunity to submit a supplemental

9  report from your expert.  Why you'd want to, I don't know,

10  but if you want to, fine with me.  I'm sure it's fine with

11  them.

12      MR. YANG:  Your Honor, at this point we do not

13  wish to submit another expert report, but if this Court is

14  inclined to let these late calculations in, the plaintiffs

15  would like to request that all fees and expenses incurred --

16  they have to incur regard -- in connection with deposing

17  Dr. Rakow again, that has to be expensed by defendants, who,

18  again, caused this issue.  They knew that there were holes,

19  they chose to ignore this Court's orders and they left these

20  holes in, and now they want to fill these holes at the last

21  minute.  So to the extent plaintiffs have to incur

22  additional expenses, time, that expense, Your Honor, should

23  be incurred by defendants who caused this whole issue.

24      THE COURT:  Okay.  What do you say to that?

25      MR. LOFFREDO:  Defendants disagree because we've

```
1   sort of had some costs here, we've incurred these costs
2   because of the motion to strike and the briefing on the
3   motion and traveling here and going through the hearing when
4   this is the remedy that defendants offered at the meet and
5   confer just a few days after the deposition of Dr. Rakow.
6              THE COURT:  Okay.  What do you say to that?
7              MR. YANG:  Well, Your Honor, we do not believe
8   this is a -- we still do not believe this is a workable
9   remedy.  As made clear in our motion, in our briefing, we
10  still believe the appropriate remedy in this case, given the
11  fact that they have chosen to ignore these opinions --
12             THE COURT:  Yeah.  Okay.  Their expert fouled up
13  and you're going to put it to them.  Okay.  At the time they
14  offered this remedy, so, no, it's not going to be at their
15  expense, because if it were, I'd only -- I'd find that only
16  one of your team members would show up so they don't have to
17  pay for four or five lawyers, but, no, I'm buying that, that
18  they offered this on the spot --
19             MR. YANG:  But, Your Honor, if I may respond to
20  that, even if they offered on the spot, even if we had
21  accepted at the time, the plaintiffs should still not be
22  forced to incur these expenses because, again, we're here
23  because defendants failed --
24             THE COURT:  I understand that.
25             MR. YANG:  -- to disclose these opinions.
```

```
 1            THE COURT:  But they recognized the problem at the
 2    time and offered to remedy it and you guys didn't accept it.
 3    It seems to me that it was a reasonable proposal, and as a
 4    consequence you all decided to file the motion to strike,
 5    you all required this hearing to be conducted, so, no, I'm
 6    not going to impose costs on them.
 7            So -- so I'm going to grant the motion to -- I'm
 8    going to deny the motion to strike, provided, however, that
 9    defendants' expert, Dr. Rakow, will be made available for
10    deposition on these two particular exhibits, because that's
11    what you focused on in your motion, so Exhibit 8 and 9.
12    The depositions will be limited to -- they could go on for a
13    long time on those -- those things though.  I mean, it's
14    quite a substantial piece of information.
15            So the deposition is limited to that.  And is
16    there going to be some issue with respect to timing?
17    Because here's -- here's the way it works, just so you know.
18    Okay.  If I thought you all could work it out, fine, fine
19    with me, or if you think you can't work out the date for it
20    then I'd just pick a date, and it's typically a family
21    member's birthday or something like that, just arbitrarily
22    pick it, so that there isn't any dispute about it, but if
23    you all can agree on some mutually convenient time that
24    Dr. -- and I didn't hear that Dr. Rakow is only available on
25    Sundays, so -- but maybe you got a whole weeks' worth of
```

```
 1    stuff out of him to schedule it.
 2              MR. YANG:  Your Honor, I mean, I would like to
 3    think the parties can work this one out.
 4              THE COURT:  Pardon?
 5              MR. YANG:  The details.
 6              THE COURT:  Okay.  Well, you know, you do, that's
 7    why I'm throwing that Draconian thing, is because -- or it
 8    could be -- it might be Valentine's Day.  I mean, I pick
 9    things like that.
10              MR. YANG:  Although, I guess, the one caveat,
11    Your Honor, given the briefing and given the upcoming
12    deadlines, the only caveat is plaintiffs would like to
13    request that the deposition be completed by December 15th.
14              THE COURT:  What do you say to that?
15              MR. LOFFREDO:  That should -- that should be
16    workable, Your Honor.  We already have a few dates that
17    Dr. Rakow is available and they're all before December 15th.
18              THE COURT:  Okay.  So I'll just provide that you
19    shall make Dr. Rakow available for deposition no later than
20    December 15th, and his deposition will be limited to the
21    matters set out in Exhibits 8 and 9 to the motion.
22    Actually, it was -- it was to that -- I think it was to the
23    affidavit that was attached, but we know what we're talking
24    about is 8 and 9, right?
25              MR. LOFFREDO:  Yes.
```

```
1              MR. YANG:  Yes, Your Honor.

2              THE COURT:  Okay.

3              MR. LOFFREDO:  Your Honor, in terms of length for

4    the continued deposition, does Your Honor have a length in

5    mind?  If not, defendants --

6              THE COURT:  Yeah, I'm not going to -- well, what

7    do you propose?  Because there's a lot of stuff in there, it

8    looks like to me.  I have no clue.  But do you have any

9    thought on that?

10             MR. YANG:  Your Honor, we need our expert to,

11   of course, review these calculations, we need to prepare for

12   the calculations.  I mean, at this point we cannot put a

13   time limit on this deposition.  Plaintiffs would propose

14   that we have the standard seven hours, but, of course,

15   plaintiffs will strive to not burden Dr. Rakow any more than

16   necessary.

17             THE COURT:  What do you say to that?

18             MR. LOFFREDO:  We would say that defendants

19   certainly don't believe they would need close to seven

20   hours.  We propose two hours.  Dr. Rakow had already been --

21             THE COURT:  Nah.

22             MR. LOFFREDO:  -- deposed for --

23             THE COURT:  No, you're not in the ballpark, so --

24   because that looks like really complicated stuff, so, um,

25   I'll say five hours.  Five hours seems appropriate.
```

 1              MR. LOFFREDO:  Thank you, Your Honor.

 2              THE COURT:  And I expect that you all want to get

 3    out of there on December 15th.  You probably have shopping

 4    to do or something.

 5              Okay.  So I'm denying the motion to the extent it

 6    asks that these exhibits be stricken, but providing further

 7    that the defendants shall make Dr. Rakow available for a

 8    deposition on Exhibits 8 and 9 that shall last no greater

 9    than five hours.

10              MR. PIVNICK:  Your Honor, if I could just ask for

11    one change.  Could we also ask about 10, which is the other

12    errata that was served on there?  We weren't moving to

13    strike -- it was in our motion to strike.

14              THE COURT:  Yeah, I know.  Yeah.

15              MR. PIVNICK:  But we weren't really focusing on it

16    today because it's just typos.

17              THE COURT:  Well, I thought they weren't -- didn't

18    have any objection to it.  I thought you didn't have any

19    objection to it.  I asked that.

20              MR. PIVNICK:  Yeah, we -- but we would still like

21    the opportunity to ask about it at the deposition.

22              THE COURT:  But I thought it was his report -- it

23    was his report.

24              MR. PIVNICK:  It is.  It's corrections to his

25    report, Your Honor.  It's corrections to one section of his

```
 1   report.
 2              THE COURT:  You mean the typos?
 3              MR. PIVNICK:  Correct.  I mean, I think it will be
 4   like all of ten minutes of a deposition, but I would at
 5   least like to be able to authenticate, verify what he was
 6   doing with those.  So it was included in our motion to
 7   strike.
 8              THE COURT:  Yeah, I know.
 9              MR. PIVNICK:  We just weren't focusing on that
10   today.
11              THE COURT:  But then -- but then what you
12   indicated, well, that wasn't really a focus of it, and when
13   I asked here, it was, no, that's not an issue.
14              MR. PIVNICK:  Because it's not as controversial as
15   the other two.  The other two we thought should definitely
16   be stricken.  This one is just typos.
17              THE COURT:  Yeah, but 10, which I have here, that
18   goes on for a long time, so if I include 10 --
19              MR. PIVNICK:  I do want to say --
20              THE COURT:  -- I don't know how --
21              MR. PIVNICK:  I do want to say changes to the text
22   that was in 10 as compared to what was in the original
23   report.
24              THE COURT:  Was it a typo or something else?
25              MR. PIVNICK:  Well, I believe it was just typos
```

```
 1   and changing cross-references, and that is what I would like

 2   to explore in a deposition, is just what was changed between

 3   the original report and the corrected part, which is

 4   Exhibit 10.

 5            THE COURT:  What do you say to that?

 6            MR. LOFFREDO:  Your Honor, assuming it's limited

 7   to just the few typographical changes, we're fine with that.

 8            THE COURT:  Okay.  They're -- okay.  So you may

 9   inquire with respect to Exhibit 10 about the changes in the

10   report.

11            MR. PIVNICK:  Thank you, Your Honor.

12            THE COURT:  All right.  Anything further we

13   need -- anything more we need to address?

14            MR. YANG:  That's all from plaintiffs, Your Honor.

15            THE COURT:  Okay.  All right.  Court will be in

16   recess.

17                          - - - - -

18            (Proceedings concluded at 3:45 p.m.)

19                          - - - - -

20

21

22

23

24

25
```

1               C E R T I F I C A T E

2

3           This is to certify that the foregoing transcript

4  of proceedings taken in a motion hearing in the United

5  States District Court is a true and accurate transcript of

6  the proceedings taken by me in machine shorthand from a

7  digital audio recording and transcribed by computer under my

8  supervision, this the 27th day of November, 2020.

9

10

11                              /S/ DAVID J. COLLIER

12

13                              DAVID J. COLLIER

14                              OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25