UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PIERCE MANUFACTURING, INC.,
and OSHKOSH CORPORATION

    Plaintiffs,

v.                                            Case No.:  8:18-cv-617-TPB-TGW

E-ONE, INC. and REV GROUP, INC.,

    Defendants.
_____/

**ORDER DENYING "DEFENDANTS' RENEWED MOTION FOR
JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY,
TO ALTER OR AMEND THE JUDGMENT"**

This matter is before the Court on "Defendants' Renewed Motion for Judgment of a Matter of Law or, Alternatively, to Alter or Amend the Judgment" (Doc. 454).  Plaintiffs filed a response in opposition.  (Doc. 492).  The Court held a hearing to address this and other matters on December 6, 2021.  (Doc. 515).  Upon review of the motion, response, legal arguments, court file, and the record, the Court finds as follows:

**Background**

Plaintiffs Pierce Manufacturing, Inc. and Oshkosh Corporation brought this patent action against Defendants E-One, Inc. and REV Group, Inc., alleging infringement of patents for a particular fire truck design – a single rear axle quint

fire truck.[1] Plaintiffs specifically accused Defendants of infringing claims 1, 5, and 20 of U.S. Patent No. 9,597,536 (the "'536 patent"). (Doc. 426). Following trial, the jury returned a mixed verdict, finding Defendants liable for infringing claims 1 and 5, but finding claim 20 invalid as anticipated by the prior art Hinsdale Quint fire truck. For the infringement of claims 1 and 5, the jury returned a damages award of $1,287,854 in lost profits and $170,500 in reasonable royalties.

## Analysis

Pursuant to Fed. R. Civ. P. 50, "[j]udgment as a matter of law should not be granted if there was any legally sufficient basis for a reasonable jury to find in favor of' the nonmoving party." *Marlite, Inc. v. Eckenrod*, 537 F. App'x 815, 816 (11th Cir. 2013) (citing Pensacola Motor Sales, Inc. v. Eastern Shore Toyota, LLC, 684 F.3d 1211, 1226 (11th Cir. 2012)). In the Eleventh Circuit, courts "consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party … [and] in this light, [whether] there was any legally sufficient basis for a reasonable jury to find in favor of the nonmoving party." *Powell v. Home Depot, U.S.A. Inc.*, 663 F.3d 1221, 1228 (Fed. Cir. 2011) (quoting *Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1360 (11th Cir. 2010)).

### *Substantial Evidence Supports Jury Finding of REV's Liability*

Defendants first argue that REV Group should be excused from the jury's finding of willful infringement. The Court denied this portion of Defendants'

---

[1] For a more detailed explanation of the factual background of this case, see *Pierce Manufacturing, Inc. v. E-One, Inc.*, No. 8:18-cv-617-T-30TGW, 2020 WL 416268, at *1-2 (M.D. Fla. Jan. 27, 2020).

Motion at the hearing but addresses the rationale for that denial in this Order.  In seeking to overturn the jury's infringement finding as to REV Group, Defendants ignore the fact that they never sought a separate infringement liability finding in the jury verdict form for REV Group.  (Doc. 426 at 2-3).  If Defendants truly believed that REV Group was not directly liable, they should have requested a separate jury question on that issue.  Because they did not, REV Group waived any argument for a separate liability finding.

Even if REV Group had not waived this point, the jury heard substantial evidence to support the finding of willful infringement.  For example, Plaintiffs showed that REV Group both owned and operated the Hall-Mark RTC dealership that sold at least one of the infringing trucks.  Defendants' own witnesses admitted as much (Doc. 436 at 917:14-25, 917:11-918:22; Doc. 434 at 490:21-23).  This, and other evidence, support the jury's finding of direct infringement by REV Group. (*See, e.g.,* Doc. 429-2; Doc. 429-4; Doc. 429-7; Doc. 429-25; Doc. 430-22; Doc. 430-24; Doc. 429-31; Doc. 431-28; Doc. 434 at 449:25-450:1; 450:25-451:5; 453:22-454:12; 454:18-456:18; 555:7-11; 523:20-524:4; 462:18-463:4, 463:22-465:4, 490:15-491:1; Doc. 436 at 915:13-20).[2]  The motion is denied as to this ground.

### *Jury's Award of Lost Profits*

Defendants next challenge the jury's award of lost profits based on their finding of willful infringement.  Over the course of more than a week, the jury heard

---

[2] Defendants also argue in their Motion about vicarious liability, but that has no bearing on this case.  Plaintiffs never asserted vicarious liability at trial, and the jury never decided that issue.

evidence that, but for Defendants' infringement, Plaintiffs would have made sales of its own patented Ascendant fire trucks. The evidence included explanations of why there were no acceptable non-infringing alternatives to the patented technology. Following trial, the jury agreed there were no commercially acceptable non-infringing alternatives and awarded lost profits for certain sales of fire trucks that infringe claims 1 and 5 of the asserted patent. (Doc. 426). Defendants now challenge Plaintiffs' entitlement to any lost profits, not the actual amount awarded.

<u>Metro 100 Quints with Smaller Tank</u>

Defendants' motion is based exclusively upon the jury's verdict that one of the three asserted claims of the 536 Patent (claim 20) is invalid. Based upon that finding, Defendants argue for the first time that Metro 100 Quints with water tanks of less than 500 gallons were acceptable non-infringing alternatives to Plaintiffs' patent-practicing Ascendant Quint with 500-gallon water tanks, and that Plaintiffs failed to establish at trial that those smaller water tank Metro 100 Quints were not acceptable non-infringing alternatives. Defendants have, therefore, waived their right to offer new evidence on this topic after trial, or to otherwise argue post-trial that such an alternative should be considered.

In any event, even if the M100 Sub is considered, Plaintiffs presented substantial evidence to support a finding that Plaintiffs were entitled to lost profits. To establish entitlement to lost profits, Plaintiffs did not need to specifically discuss or address every truck that a purchaser could have purchased in lieu of the patented invention. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir.

1995). Plaintiffs needed only to show that there was a reasonable probability the sales would have been made but for the infringement. *See id.* When the patentee has established the reasonableness of this inference, it has carried its burden on lost profits due to the infringing sales. *Id.* The burden then shifts to the infringer to show that the inference is unreasonable. *Id.*

Plaintiffs met their burden and presented substantial evidence that there was a lack of acceptable non-infringing substitutes and that there was a reasonable probability that the sales would have been made "but for" Defendants' infringement. The jury necessarily agreed with this as they awarded lost profits. As a result, the burden shifted to Defendants to identify—during trial—any additional alleged non-infringing alternatives, such as the M100 Sub, and establish that the alternatives were available, non-infringing, and commercially acceptable. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286 (Fed. Cir. 2017). Defendants failed to carry their burden.

At trial, Defendants did not offer any evidence to show that a customer who wanted an Ascendant with a 500-gallon water tank would have accepted a smaller water tank. Defendants' expert, Mr. Schoettelkotte, was specifically asked what trucks he contended were non-infringing substitutes, and Mr. Schoettelkotte identified only trucks with shorter ladders: the HR 100 Quint and trucks from other manufacturers. (Doc. 437 at 1333:16-25). He never identified a Metro 100 Quint with a smaller water tank as an alternative, and he never explained why smaller water tanks would be acceptable to customers, particularly customers that specified

larger ones. (Doc. 437 at 1336:20-1337:4, 1337:5-1350:6 (discussing HR 100), 1350:7-1358:3 (discussing other third party trucks, not the Metro 100 Quint with a smaller water tank). At no point in his testimony did Mr. Schoettelkotte (or any other witness) say that a Metro 100 Quint with a smaller water tank would have been an acceptable non-infringing substitute for the Ascendant, and Defendants never introduced evidence to support the existence of a Metro 100 Quint with a 480- or 490-gallon tank. In fact, at trial, Plaintiffs introduced Defendants' own PowerPoint presentations that highlighted the importance and desirability of larger water tanks to customers.

Defendants knew that they were asserting that claim 20 was invalid and so Defendants also knew that if they succeeded, a sub-500-gallon water tank Metro 100 Quint could arguably have been identified and asserted as an acceptable non-infringing alternative. But they chose not to offer any evidence at trial to support this argument. As such, Defendants waived it. Regardless, substantial evidence supports the jury's verdict because the evidence actually presented at trial establishes that a smaller water tank Metro 100 Quint would not have been an acceptable non-infringing alternative. The motion is denied as to this ground.

Trucks with Smaller Water Tanks

Claims 1 and 5 both require tanks of at least 500 gallons. Substantial evidence supports Plaintiffs' assertion at trial, and the jury's finding, that customers who specify a 500-gallon water tank would not find a truck with a tank with less than 500 gallons to be acceptable. The mere existence of a competing

product does not make that product an acceptable substitute. *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986). A product lacking the advantages of the patented product, for example, "can hardly be termed a substitute 'acceptable' to the customer who wants those advantages." *Id.* at 901-02 (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1162 (6th Cir. 1978)).

Defendants assert that Plaintiffs failed to put on any evidence that the size of water tanks is important. The Court disagrees. Plaintiffs introduced substantial evidence to support a finding that trucks with smaller water tanks would not be acceptable to customers who wanted the patented features. Lisa Barwick, Pierce's Vice President of Marketing, testified that fire departments "may have a preference when it comes to the size of the water tank that's on the vehicle." (Doc. 433 at 219:1-3). She explained that certain departments want a larger water tank because they may not have a robust hydrant system in their city. (Doc. 433 at 197:10-11). She testified that when departments are purchasing a single rear axle quint configuration fire truck, water tank capacity is one of the most important considerations. (*Id.* at 219:8-14). She also talked about customers' desire for single rear axle quints with "the largest water capacity possib[le] on [the] truck." (*Id.* at 226:5-8; Doc. 434 at 338:9-19).

Ms. Barwick described how Pierce emphasized the 500-gallon water tank in marketing the Ascendant and how important the larger tank size was to customers. (Doc. 433 at 231:2-16; 235:24-236:10; Doc. 429-33; Doc. 431-12). She also testified that other trucks on the market could not compete with the Ascendant because they

do not offer all the patented features and instead make compromises like smaller water tanks. (Doc. 434 at 402:6-17). And the inventor, Mike Moore, explained the importance of larger water tanks to departments because they "extend the suppression capabilities of a truck," which "saves lives and saves property." (Doc. 436 at 1026:9-11).

Plaintiffs also elicited testimony from Defendants' own witnesses to support a finding that trucks with smaller water tanks would not be acceptable. Mr. Salmi, E-One's Director of Aerial Development, testified about the importance of the 500-gallon tank to customers, and how E-One had highlighted the 500-gallon water tank on the Ascendant as being one of its key features. (Doc. 434 at 446:13-23, Doc. 429-3 at 4). He also testified that E-One repeatedly advertised the Metro 100's 500-gallon water tank as a key feature and that the size of the water tank can be important to customers. (Doc. 434 at 454:2-12, 546:10-19; Doc. 429-2 at 17). Likewise, Defendants' expert, Alan Saulsbury, emphasized that fire departments' needs "drive[] the size of the tank" on each firetruck. (Doc. 436 at 998:10-24). There was, therefore, substantial evidence presented by the parties about the importance of water tank size and that departments who want a larger tank would not be willing to compromise and accept a smaller tank. (Doc. 436 at 1026:9-11).

Mr. Carter, Plaintiffs' damages expert, also addressed the importance of the 500-gallon tanks on the patented Ascendant, explaining that customers looking to purchase an Ascendant with a 500-gallon water tank would not accept a smaller water tank. (Doc. 435 at 607:14-623:23). Mr. Carter's trial testimony dealt with the

importance of water tank size, and he included a slide where he highlighted that the trucks that Defendants had actually identified as alleged non-infringing alternatives would not be acceptable alternatives. One of the reasons for this is that they had smaller water tanks. (Doc. 435 at 613:18-615:10; Doc. 454-2 at 3).

Plaintiffs presented substantial evidence to meet their burden to establish that trucks with smaller water tank sizes would not be acceptable. The burden then shifted to Defendants to identify trucks that would have been available and acceptable. *See Mentor Graphics Corp.,* 851 F.3d at 1286 (after a plaintiff puts forward evidence that no acceptable alternative product was available on the market, the burden shifts to the defendant to show the availability of acceptable non-infringing alternatives). Yet, Defendants never identified the Metro 100 Quint with a smaller water tank.

The only evidence that Defendants points to in support of their arguments regarding the "acceptability" of the M100 Sub are two sales of Metro 100s with smaller than 500-gallon water tanks to fire departments. (Doc. 454 at 16). Yet Defendants failed to establish at trial that either of those departments wanted a truck with a 500-gallon tank but were willing to accept a smaller water tank. Without this evidence, or any other evidence supporting Defendants' position, there is no evidence that the trucks would have been acceptable non-infringing alternatives. *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142-43 (Fed. Cir. 1991). As such, there was nothing for the jury to rely upon to find these two trucks to be an acceptable non-infringing alternative. Instead, substantial evidence supports the

jury's finding that no acceptable non-infringing alternatives were available, and that an award of lost profits was warranted. The motion is denied as to this ground.

Consequently, "Defendants' Renewed Motion for Judgment of a Matter of Law or, Alternatively, to Alter or Amend the Judgment" is **DENIED**.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>16th</u> day of February, 2022.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**