## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PIERCE MANUFACTURING INC., and
OSHKOSH CORPORATION,

      Plaintiffs,

v.                         Case No.: 8:18-cv-617-TPB-TGW

E-ONE, INC. and REV GROUP, INC.,

      Defendants.

_____

## ORDER DENYING "PLAINTIFFS' MOTION FOR ENHANCED DAMAGES"

This matter is before the Court on "Plaintiffs' Motion for Enhanced Damages." (Doc. 451). Defendants filed a response in opposition. (Doc. 489). The Court held a hearing to address this and other matters on December 6, 2021. (Doc. 515). Upon review of the motion, response, legal arguments, court file, and the record, the Court finds as follows:

### Background

Plaintiffs Pierce Manufacturing, Inc. and Oshkosh Corporation brought this patent action against Defendants E-One, Inc. and REV Group, Inc., alleging infringement of patents for a particular fire truck design – a single rear axle quint fire truck.[1] Plaintiffs specifically accused Defendants of infringing claims 1, 5, and 20 of U.S. Patent No. 9,597,536 (the "'536 patent"). (Doc. 426). Following trial, the jury returned a mixed verdict, finding Defendants liable for infringing claims 1 and

---

[1] For a more detailed explanation of the factual background of this case, see *Pierce Manufacturing, Inc. v. E-One, Inc.*, No. 8:18-cv-617-T-30TGW, 2020 WL 416268, at *1-2 (M.D. Fla. Jan. 27, 2020).

5, but finding claim 20 invalid as anticipated by the prior art Hinsdale Quint fire truck.  For the infringement of claims 1 and 5, the jury returned a damages award of $1,287,854 in lost profits and $170,500 in reasonable royalties.

## Analysis

In the pending motion, Plaintiffs ask the Court to enhance damages based on the nine factors set forth in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-27 (Fed. Cir. 1992).  Defendants argue that the case does not warrant enhanced damages.

Under 35 U.S.C. § 284, "the court may increase the damages up to three times the amount found or assessed." There is no rigid formula for enhancing damages under § 284, but courts may consider the following non-exhaustive list of factors, commonly called the *Read* factors: (1) whether the infringer deliberately copied the patentee's ideas or design; (2) whether the infringer, upon knowing of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's litigation behavior; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) remedial action taken by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct.  *Read*, 970 F.2d at 826-27.

Enhanced damages "are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016).  "A finding of willful infringement does not require the district court to

award enhanced damages." *Polora Eng'g, Inc. v. Campbell Co.*, 894 F.3d 1339, 1353 (Fed. Cir. 2018) (citing *Halo*, 579 U.S. at 106); *see also Global Tech LED, LLC v. Hilumz Int'l Corp.*, No. 2:15-CV-553-FTM-29CM, 2018 WL 11353996, at *5 (M.D. Fla. Dec. 21, 2018) (declining to enhance damages despite a finding of willfulness). However, where willfulness has been found, "a trial court should provide reasons for not increasing a damages award" under § 284. *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996).

### Read Factor 1: Whether the Infringer Deliberately Copied the Ideas or Design of Another

Plaintiffs contend the evidence presented at trial shows that Defendants' Metro 100 Quint is a deliberate copy of Plaintiffs' Ascendant quint. (Doc. 451 at 15-16). The jury's finding of infringement does not, by itself, imply copying. *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1351 (Fed. Cir. 2002) (explaining that copying "is of no import on the question of whether the claims of an issued patent are infringed."). And evidence from trial shows there are meaningful differences between the Ascendant and the Metro 100 Quint. For instance, the Ascendant has a 107-foot ladder with a horizontal reach of 100 feet and a rated capacity of 750 pounds. (Doc. 433, Trial Tr. at 241:24-242:22). In contrast, the Metro 100 Quint has a smaller 100-foot ladder with a 92-foot horizontal reach and 500-pound rated capacity. (Doc. 434, Trial Tr. at 450:19-24; Dkt. 436, Trial Tr. at 949:16-950:9). The Metro 100 Quint is thus not a copy of the Ascendant. Indeed, Plaintiffs stipulated to the Court before trial that they would not present a "copying" argument to the jury. (Doc. 339 at 4).

The Court disagrees with Plaintiffs' assertion that copying can be inferred from the fact that one of Defendants' employees took photographs of the Ascendant quint at a public trade show.  (Doc. 451 at 16).  Plaintiffs' own witnesses acknowledged that they, too, often photograph competitors' fire trucks at public trade shows and that there is nothing wrong with doing so.  (Doc. 434, Trial Tr. at 373:6-376:4).  Taking photographs at a trade show does not imply copying.

The Court finds that this *Read* factor does not favor enhancing damages.

### Read Factor 2: Whether the Infringer, When It Knew of the Patent Protection, Investigated the Scope of the Patent and Formed a Good-Faith Belief that the Patent was Invalid or Not Infringed

The evidence shows that Plaintiffs put Defendants on notice of the alleged infringement of the '536 patent via a letter dated June 13, 2017, from Michael Moore to James Salmi, E-One's Director of Aerial Product Development.  (Doc. 434, Trial Tr. at 443:8).  Mr. Salmi responded in writing several days later, stating that under his understanding of the claim term "tip load," which he understood to mean rated capacity, the Metro 100 Quint did not infringe claim 20 – the only asserted claim at that time – because the claim required "a tip load of at least 750 pounds," whereas "the Metro 100 Quint has a tip load of 500 pounds."  (Doc. 474-2).  He further elaborated that if "tip load" were interpreted "so as to encompass a truck having a tip load (rated capacity) of 500 pounds, claim 20 would encompass one or more prior art trucks, thereby rendering claim 20 invalid."  (*Id.*)

Plaintiffs argue that Mr. Salmi's lay opinion regarding the meaning of "tip load" does not show a good faith belief of non-infringement or invalidity because Mr.

Salmi is "neither a patent attorney nor an expert." (Doc. 451 at 13). The Court disagrees. *Halo*, 579 U.S. at 111-12 (explaining that, "without being 'wanton' or 'reckless,'" a scientist, engineer, or technician working for an accused infringer may reasonably decide an accused product does not infringe a patent or that the patent is invalid) (Breyer, J., concurring); *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 281 F. Supp. 3d 1087, 1093-95 (D. Nev. 2017) (on remand from the United States Supreme Court, declining to enhance damages where defendant relied on the opinion of its engineer who "had 30 years of experience in and knowledge of the relevant field"); *Omega Patents v. CalAmp*, 920 F.3d 1337, 1352 (Fed. Cir. 2019) (vacating and remanding the court's enhanced damages award where a senior director of the accused infringer analyzed the patent and should have been permitted to testify concerning the infringer's state of mind and his conclusions regarding infringement and validity).

Mr. Salmi's lack of training in patent law and the fact that he was not proffered or qualified as an expert in this case are irrelevant to deciding whether Defendants had a good-faith belief of non-infringement or invalidity. With more than 30 years of relevant experience in the fire truck industry (Doc. 434, Trial Tr. at 482:11-17, 498:12-15), Mr. Salmi qualifies as a person of ordinary skill in the art, which is the person the '536 patent is directed to. *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) ("[T]he patent specification is written for a person of skill in the art . . ."). Moreover, evidence presented at trial shows that the term "tip load" is sometimes used in the industry

to refer to rated ladder capacity, consistent with Mr. Salmi's stated understanding. (*See* Doc. 434, Trial Tr. at 337:17-20; 338:20-339:3; 544:25-546:6).

Also, as Defendants point out, the jury's finding that claim 20 is anticipated by a prior art fire truck vindicates Mr. Salmi's belief that if "tip load" were construed more broadly than rated capacity, "claim 20 would encompass one or more prior art trucks, thereby rendering claim 20 invalid." (Doc. 489 at 8). This underscores the reasonableness of Mr. Salmi's opinion, which he conveyed in his responsive letter to Mr. Moore.

Defendants also assert that although the jury found willful infringement, it did so without knowledge of the parties' pretrial dispute over the meaning of the term "tip load." (*Id.* at 9-10). Because of that, Defendants argue, "the jury had no way to assess whether E-One's pre-litigation understanding of 'tip load' was objectively reasonable." (*Id.* at 10). The Court agrees. Because claim construction is an issue reserved solely for the court, the jury was not instructed on the relevant legal principles that would have allowed it to assess whether Mr. Salmi's lay understanding of "tip load" was reasonable. On the other hand, considering the evidence now of record and the competing arguments presented by the parties during the *Markman* phase of this case (Docs. 107, 144, 148), the Court finds that Mr. Salmi's lay understanding of "tip load" was not unreasonable, even though it ultimately did not prevail as the adopted construction in this case.

The Court finds that this *Read* factor does not favor enhancing damages.

### *Read Factor 3: Infringer's Behavior as a Party to the Litigation*

Plaintiffs argue that Defendants prolonged the litigation by not conceding infringement, refusing to refine their invalidity case until the eve of trial, opposing Plaintiffs' requests to construe the phrase "configured to," and unsuccessfully challenging the preliminary injunction.  (Doc. 451 at 19-22).

This was a hard-fought case on both sides.  The Court does not perceive Defendants' behavior in this case as being improper or as unnecessarily prolonging the litigation.  The Court is also not convinced that Defendants were obligated to concede infringement before trial, particularly given the parties' lingering disagreement over the meaning of "configured to." Plaintiffs have not shown that Defendants' remaining litigation positions were unreasonable.

The Court finds that this *Read* factor does not favor enhancing damages.

### *Read Factor 4: Infringer's Size and Financial Condition*

Defendants do not dispute that E-One is of modest size and sound financial condition, but they argue that the size and financial condition of E-One's parent, REV Group, Inc., is irrelevant because Plaintiffs "failed to prove that REV is personally or vicariously liable for any infringing acts."  (Doc. 489 at 18).  The Court disagrees and has denied Defendants' corresponding motion concerning REV Group, Inc.'s liability.

The Court finds that this *Read* factor favors enhancing damages.

***Read Factor 5: Closeness of the Case***

The Court finds this was a close case that resulted in a split verdict. Although the jury found infringement and awarded damages to Plaintiffs, it also found that Defendants proved by clear and convincing evidence that claim 20, the broadest claim in this lawsuit, is invalid as anticipated.  (Doc. 426 at 5).  This finding allows E-One to reenter the market with its original Metro 100 Quint with full horizontal aerial ladder extension, so long as the water tank is less than 500 gallons.  (Doc. 489 at 4).

Despite finding that Defendants willfully infringed the '536 patent (Doc. 426 at 4), the jury awarded less than half the damages Pierce requested.  (*Compare* Doc. 426 at 7 (awarding $1,287,854 in lost profits and $170,500 in reasonable royalty) *with* Doc. 474-1 (Plaintiffs requesting up to $3,615,903 in loft profits and $341,000 in a reasonable royalty)).  The jury determined that those amounts were "adequate to compensate [Plaintiffs] for the infringement."  (Doc. 438, Trial Tr.  at 1569:5-6).  Moreover, the jury's finding that claim 20 of the '536 patent is invalid means the preliminary injunction in this case was improperly granted since it was not based on any claims that ultimately succeeded at trial.  (Doc. S-44 at 7; Doc. 108 at 3; Doc. 426 at 5).  These are the hallmarks of a close case, with both sides winning some issues but losing others. *See Modine Mfg. Co. v. Allen Grp., Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990) (declining to enhance damages where willfulness was "'sufficiently close on the evidence'").

The Court finds that this *Read* factor does not favor enhancing damages.

**Read Factor 6: Duration of the Infringer's Misconduct**

The time between Plaintiffs' June 13, 2017, notice letter and when Defendants stopped selling the infringing Metro 100 Quint was approximately eighteen months.  (Doc. 142; Doc. 143; Doc. 451 at 25).  In *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, the court found that a sixteen-month infringement period was "relatively short . . . [and] does not favor enhancement," No. 8:06-cv-1790-T-33AEP, 2009 WL 3064800, at *10 (M.D. Fla. Sept. 22, 2009).  The Court reaches the same conclusion here with respect to Defendants' eighteen-month period of infringement.

The Court finds this *Read* factor does not favor enhancing damages.

**Read Factor 7: Remedial Action by the Infringer**

Plaintiffs contend Defendants did not take any remedial action when they learned of the '536 patent.  (Doc. 451 at 25).  Defendants assert that they took substantial remedial action by ceasing and never reinstating their Metro 100 Quint fire truck after the Court entered the preliminary injunction, even after the Court dissolved the preliminary injunction when the original trial date was postponed due to COVID-19.  (Doc. 489 at 19).  Defendants also note that they designed and introduced a replacement fire truck called the HR 100 Quint with a limited horizontal ladder reach to avoid alleged infringement of the '536 patent claims.  (*Id.*).  The Court agrees with Defendants that this conduct amounts to appropriate remedial action under the circumstances.

The Court finds this *Read* factor does not favor enhancing damages.

***Read Factor 8: Infringer's Motivation for Harm***

Plaintiffs argue that by launching the Metro 100 Quint, Defendants sought to break into a new market that Plaintiffs created, and that Defendants were therefore financially motivated to harm Plaintiffs. (Doc. 451 at 26-27). Defendants respond that their introduction of the Metro 100 Quint was driven solely by a desire to meet customer demand, not a motivation to harm Plaintiffs. (Doc. 489 at 19-20). Plaintiffs have not identified any evidence showing that Defendants harbored animus toward or sought to harm Plaintiffs. Rather, the only evidence appears to be a normal desire to compete in a specialized, niche fire-truck market. This type of routine economic incentive does not constitute a motivation to harm as envisioned in *Read* factor 8. *See Hako-Med USA*, 2009 WL 3064800, at *11 (deciding *Read* factor 8 did not favor enhancement because competitive behavior between the only competitors in a specialized, niche market was expected).

The Court finds this *Read* factor does not favor enhancing damages.

***Read Factor 9: Whether the Infringer Tried to Conceal its Misconduct***

Plaintiffs do not assert that Defendants tried to conceal their sales or marketing of the infringing Metro 100 Quints. To the contrary, the evidence shows that E-One publicly launched the accused Metro 100 Quint at a large industry trade show attended by many players in the marketplace, including Plaintiffs. (Doc. 434, Trial Tr. at 468:14-16, 496:5-20). This does not suggest any attempt on the part of Defendants to conceal the accused conduct.

The Court finds that this *Read* factor does not favor enhancing damages.

## <u>Conclusion</u>

The Court finds that *Read* factors 1-3 and 5-9 do not favor enhancement, but that *Read* factor 4 favors enhancement. Considering all the evidence in this case, the jury's split verdict and its award of less than half of Plaintiffs' requested damages, the litigation behavior of the parties, the closeness of the case, and a careful evaluation of the *Read* factors, the Court concludes that this case does not warrant an award of enhanced damages under 35 U.S.C. § 284.

It is therefore **ORDERED**, **ADJUDGED**, and **DECREED** that "Plaintiffs' Motion for Enhanced Damages" (Doc. 451) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>16th</u> day of February, 2022.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**