## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PIERCE MANUFACTURING, INC.,
and OSHKOSH CORPORATION

      Plaintiffs,

v.                         Case No.:  8:18-cv-617-TPB-TGW

E-ONE, INC. and REV GROUP, INC.,

      Defendants.

_____/

## ORDER DENYING "DEFENDANTS' MOTION FOR DAMAGES RESULTING FROM THE PRELIMINARY INJUNCTION"

This matter is before the Court on "Defendants' Motion for Damages Resulting from the Preliminary Injunction."[1]  (Docs. 444; 473).  Plaintiffs filed a response in opposition.  (Docs. 475; 484).  The Court held a hearing to address this and other matters on December 6, 2021.  (Doc. 515).  Upon review of the motion, response, legal arguments, court file, and the record, the Court finds as follows:

## Background

Plaintiffs Pierce Manufacturing, Inc. and Oshkosh Corporation brought this patent action against Defendants E-One, Inc. and REV Group, Inc., alleging infringement of patents for a particular fire truck design – a single rear axle quint

---

[1] The Court notes that this joint motion was filed on behalf of both Defendants and asserts undifferentiated damages on behalf of both even though REV Group was not subject to the injunction.  For this reason, the Court collectively refers to both Defendants throughout the motion unless it specifically means E-One.  However, because REV Group was not subject to the injunction, it would be appropriate to deny any recovery under the bond.

fire truck.[2]  Plaintiffs specifically accused Defendants of infringing claims 1, 5, and 20 of U.S. Patent No. 9,597,536 (the "'536 patent").  (Doc. 426).  Following trial, the jury returned a mixed verdict, finding Defendants liable for infringing claims 1 and 5, but finding claim 20 invalid as anticipated by the prior art Hinsdale Quint fire truck.  For the infringement of claims 1 and 5, the jury returned a damages award of $1,287,854 in lost profits and $170,500 in reasonable royalties.

## Analysis

### *Voluntary Dismissal of Claims Based on the '915 Patent*

To recover against an injunction bond, Defendants must prove that they were wrongfully enjoined.  *See Milan Express, Inc. v. Averitt Express, Inc.*, 254 F.3d 966, 981 (11th Cir. 2001).  In this case, Defendants have failed to establish that the injunction was wrongfully issued.  The Court entered the injunction based on two separate and independent claims – Claim 20 of the '536 Patent and Claim 20 of the '915 Patent (Docs S-44 at 7-9; Doc. 108) – and there has been no judicial determination on the validity or unenforceability of Claim 20 of the '915 Patent. This precludes any finding that the injunction was wrongfully issued.

"The focus of the 'wrongfulness' inquiry is whether, in hindsight in light of the ultimate decision on the merits after a full hearing, the injunction should not have issued in the first instance."  *Cont'l Cas. Co. v. Hardin*, No. 8:16-cv-322-17TGW, 2017 WL 9401125, at *3 (M.D. Fla. Mar. 14, 2017) (Wilson, MJ) (quoting

---

[2] For a more detailed explanation of the factual background of this case, see *Pierce Manufacturing, Inc. v. E-One, Inc.*, No. 8:18-cv-617-T-30TGW, 2020 WL 416268, at *1-2 (M.D. Fla. Jan. 27, 2020).

*Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith. Inc.*, 910 F.2d 1049, 1054 (2d Cir. 1990)).  Here, Defendants agreed to Pierce's voluntary dismissal without prejudice of all claims of the '915 Patent and agreed to dismiss and abandon Defendants' own invalidity and unenforceability (due to inequitable conduct) counterclaims related to the '915 Patent.  (Doc. 326).

The dismissal of a claim by a plaintiff, when consented to by the enjoined party, is not a determination of the merits and cannot render the plaintiff liable on the bond.  Charles A. Wright & Arthur R. Miller, 11A Fed. Prac. & Proc. Civ. § 2972 (3d ed.) ("dismissal of the action by the party who instituted it, if consented to by the other party, precludes proceeding against the bond"); *see also Mail Boxes Etc., Inc. v. PBC Servs., Inc.*, No. 4:06CV00188 GH, 2007 WL 841664, at *4 (E.D. Ark. Mar. 15, 2007) (finding that only a "voluntary dismissal of an injunction suit by a plaintiff without the consent of the defendant is a determination of the merits of a controversy so as to render the plaintiff and his sureties liable on the injunction bond").  Since there has never been an "ultimate decision on the merits after a full hearing" on the alleged invalidity and unenforceability of claim 20 of the 915 Patent, there can be no finding that the injunction was wrongfully issued.  As such, there cannot be any recovery against the bond.

### *Proximate Cause of Damages*

Even if Defendants were legally entitled to recover some amount of damages against the bond, their claim still fails.  Defendants are not automatically entitled to the full bond amount.  Defendants must prove that their damages were

proximately caused by an erroneously issued injunction. *Milan*, 254 F.3d at 981. Defendants have failed to do so.

On April 8, 2020, after the trial was continued due to the pandemic, the Court lifted the injunction and permitted E-One to resume sales of the infringing truck (the Metro 100 Quint).  (Doc. 358).  Yet, Defendants chose not to sell the Metro 100 Quint and instead voluntarily continued selling a version with a shorter ladder (the HR 100 Quint).  That choice shows that the injunction was not the proximate cause of Defendants' alleged damages.

At trial, Defendants' witnesses testified that no need to resume selling the Metro 100 Quint existed because Defendants' customers loved the HR 100 Quint. *See* (Doc. 436 at 934:18-24; *see also* 932:16-933:2, 934:14-17; 934:24-25; 941:10-21 (describing how HR 100 won 50 percent of bids when up against the Ascendant)). Defendants' expert, Mr. Schoettelkotte, testified at length about the acceptability of the HR 100 Quint to Defendants' customers.  *See* (Doc. 437 at 1338:8-1346:25).  This sworn testimony by Defendants' own witness makes it clear that Defendants did not actually suffer any damage as a result of the injunction being in place.

Defendants also argue that they lost other sales of Metro 100 Quints and will continue to do so in the future.  However, this is not based on trial testimony; it is speculation that contradicts the trial testimony of Defendants' witnesses.  For example, Defendants do not identify a single customer to whom they allegedly lost a sale.  Instead, Defendants just assume that customer demand would exist, that they would be in competition for every sale, and that they would lose sales solely because of the shorter ladder.  In contrast, Defendants spent the entire trial telling the jury

that the opposite was true.  (Doc. 436 at 934:24-25; 941:10-21).  Similarly, while Defendants now argue that their sales dropped because of the Court's injunction and the introduction of the HR 100 Quint, Defendants told the jury that their only drop in sales was due to COVID-19.  (Doc. 436 at 940:17-25).

If Defendants believed they were losing millions of dollars as a result of the injunction, they would have resumed selling the Metro 100 Quint when the injunction was lifted.  The fact that they did not, coupled with the fact that Defendants are contradicting the story they told at trial, shows that the damages Defendants now claim against the bond were not proximately caused by the injunction, precluding any recovery.

***Damages After the Injunction Was Lifted***

Defendants also overreach by seeking to recover under the bond for damages sustained after the injunction was lifted in April 2020.  *See Nat'l Collegiate Athletic Ass'n v. Murphy*, No. 14-06450 (FLW), 2020 WL 7074398, at \*6 (D.N.J. Dec. 3, 2020) (noting that neither Rule 65 nor the court's inherent authority allows recovery against the bond for damages incurred after the preliminary injunction expires).  Even if proximately caused, Defendants may not recover for future advertising and marketing expenses, future lost sales, or redesign costs for any HR 100 Quint delivered after the injunction was lifted.

***Damages More Than the Bond Amount***

The Court set the bond in this case at the exact amount requested by E-One. (Doc. 128 at 1 (proposing that bond be set at $539,852); Doc. 142 at 8).  Yet, Defendants now ask for more than five times that amount.  That request is legally

untenable.  An injunction bond provides security for "costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  The Supreme Court has recognized that "[a] party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond."  *W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber*, 461 U.S. 757, 770 n.14 (1983).  Numerous courts have since held that this holding "suggest[s] that an injunction bond represents the upper limit of damages for which a wrongfully enjoined party can recover."  *See, e.g.*, *Delta T, LLC v. Kale Fans Am. S.A. De C.V.*, No. 6:20-cv-170-Orl-40EJK, 2020 WL 1674328, at *5 (M.D. Fla. Feb. 25, 2020); *Transonic Sys., Inc. v. Non-Invasive Med. Techs. Corp.*, 75 F. App'x 765, 779 (Fed. Cir. 2003).  Recognizing that recovery for a wrongful injunction is limited to the bond, district courts in the Eleventh Circuit have noted that "the bond is treated by most courts as a contract by which the amount posted is the consideration or 'price.'"  *See Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 297 F.R.D. 633, 635 (N.D. Ala. 2014); *see also Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989); *Nokia Corp. v. Interdigital, Inc.*, 645 F.3d 553, 559 (2d Cir. 2011).  Recovery in excess of the bond is contrary to the tradeoff provided by Rule 65.

### Bad Faith Exception for Excess Recovery

Defendants claim that "courts recognize an exception" to Rule 65's limitation of liability "when the party who obtained the preliminary injunction exhibited bad faith in doing so." (Doc. 444 at 7). Defendants have not cited a single case involving Rule 65 where a court has allowed recovery above the bond amount or recognized a

"bad faith" exception to the limitation of the bond. *See Coyne-Delany Co. v. Cap. Dev. Bd. of State of Ill.*, 717 F.2d 385 (7th Cir. 1983); *Nat'l Collegiate Athletic Ass'n*, 2020 WL 7074398, at *6 n.11 (explaining that *Coyne* does not create a "bad faith" exception); *Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc.*, 925 F.2d 6, 10 (1st Cir. 1991) (declining to award excess damages because "liability is limited to the terms of the bond," absent a separate state law claim allowing it). The Court is unaware of any authority that would allow excess damages under Federal Rule of Civil Procedure 65 – especially where Defendants did not seek such relief before trial, the jury made no finding of "bad faith," and Defendants have not asserted a separate claim for bad faith (or anything else that would allow for excess recovery). *See Milan*, 254 F.3d at 982-83 (defendants could not recover on Alabama state law claim seeking excess damages due to wrongfully entered injunction where defendants had failed to plead the claim or present the claim to the jury); *Atl. Sec. Bank v. Adiler S.A.*, 760 So. 2d 258, 261 (Fla. 3rd DCA 2000).

Even if such a bad faith exception existed, Defendants have not shown that the injunction was secured in bad faith. Defendants do not argue that Pierce asserted the '536 Patent in bad faith or that seeking an injunction based upon the '536 Patent constituted bad faith. They base their bad faith argument on the '915 Patent, a patent Defendants agreed could be dismissed without prejudice, including their counterclaims of invalidity and unenforceability due to inequitable conduct. If Defendants truly believed that Plaintiffs obtained the injunction in bad faith based upon the '915 Patent, they should not have agreed to dismiss their claims and should have presented that evidence at trial. Because Defendants agreed to drop their

claims and failed to present them to the jury, Defendants' argument is waived. Even if it was not, the Court does not find persuasive any of Defendants' arguments that Plaintiffs acted in bad faith. Defendants' arguments on this point border on frivolous.

### *Mitigation of Damages*

In the Eleventh Circuit, "[a]n award of damages pursuant to an injunction bond rests in the sound discretion of the district court." *Absolute Activist Value Master Fund Ltd. v. Devine*, No. 2:15-cv-328-FtM-29MRM, 2019 WL 4594589, at *3 (M.D. Fla. Sept. 23, 2019) (citing *City of Riviera Beach v. Lozman*, 672 F. App'x 892, 895 (11th Cir. 2016)). "Good reasons to deny recovery of all or a portion of the alleged damages would be that the damages sought were unreasonable in amount or that a party failed to mitigate them." *Nokia Corp. v. Interdigital, Inc.*, 645 F.3d 553, 559 (2d Cir. 2011). Courts in this Circuit also consider plaintiffs' good faith in seeking the injunction as one factor (when coupled with others) in favor of discharging plaintiffs from any obligation under the bond. *Absolute Activist*, 2019 WL 4594589, at *3.

Here, even if Defendants could show that any of their alleged damages were proximately caused by the injunction, the Court exercises its discretion to deny any recovery under the bond. Defendants failed to mitigate their damages by selling the Metro 100 Quint once the injunction lifted. *See Coyne*, 717 F.2d at 392 ("A good reason for not awarding [damages under Rule 65] would be that the defendant had failed to mitigate damages"). Further, the amount Defendants seek is unreasonable (nearly 5.5 times the bond amount the Defendants themselves told the Court was

appropriate).  Defendants were also found to have willfully infringed Plaintiffs'
patent.  Finally, Defendants agreed to dismiss all claims and counterclaims related
to the '915 Patent.  All of these reasons support an exercise of discretion to preclude
any recovery under the bond.

Accordingly, "Defendants' Motion for Damages Resulting from the
Preliminary Injunction" is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>16th</u> day of
February, 2022.


_____
**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**